ORAL ARGUMENT NOT YET SCHEDULED

**Case No. 13-5228**

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**TRUMPETER SWAN SOCIETY, et al.**
**Appellants,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, et al.**
**Appellees**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**REPLY BRIEF OF APPELLANTS**

---

William J. Snape, III
   (DC Bar No. 455266)
CENTER FOR BIOLOGICAL
DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: 202-536-9351
Facsimile: 415-436-9683
billsnape@earthlink.net

Adam F. Keats (CA Bar No. 191157)
CENTER FOR BIOLOGICAL
DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: 415-436-9682 x304
Facsimile: 415-436-9683
akeats@biologicaldiversity.org

Dated: March 18, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ............................................................... ii

GLOSSARY ..................................................................................... iii

STATUTES AND REGULATIONS ................................................. iii

INTRODUCTION ............................................................................... 1

SUMMARY OF ARGUMENT ........................................................... 2

ARGUMENT ..................................................................................... 3

      I.   EPA Has No Discretion to Decide that a Petition is "Not Cognizable" 3

      A.   EPA's Argument Ignores TSCA's Plain Language and Negates the Requirement of *De Novo* Review of Petitions by District Courts ....... 4

      B.   Under TSCA, Trumpeter Swan Society Must Have Its Day in Court. 7

      C.   TSCA's 60-Day Time Limit Serves to Ensure that *De Novo* Judicial Review of Petitions for Rulemaking is Timely and Current ............. 10

II.  EPA Abused Whatever Discretion It May Have Had ................................... 12

      A.   The Agency's Response to a Petition is Irrelevant in Determining Whether it is the Same as a Previous Petition ................................... 12

      B.   Whether Information Could or Should Have Been Included in a Petition is Irrelevant in Determining Whether it is the Same as a Previous Petition ............................................................................... 14

CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Doe v. United States*
   821 F.2d 694 (D.C. Cir. 1987)............................................................. 5, 6, 11
*Environmental Defense Fund v. Reilly*
   (1990), 909 F.2d 1497 ...................................................................5
*ICC v. Brotherhood of Locomotive Eng'rs*
   482 U.S. 270 (1987) ......................................................................... 5, 14
*Kappos v. Hyatt*
   566 U.S. ___, 132 S. Ct. 1690 (2012) ......................................................15
*Nat'l Bank of Davis v. Office of Comptroller of Currency*
   725 F.2d 1390 (1984) ......................................................................6
Southwestern Bell Tel. Co. v. FCC
   180 F.3d 307 (D.C. Cir. 1999).............................................................6
*Taylor v. Sturgell*
   553 U.S. 880 (2008) .......................................................................8
*United States v. First City Nat'l Bank*
   386 U.S. 361 (1967) .......................................................................5, 7
*Walker v. EPA*
   802 F.Supp.1568 (S.D. Texas 1992) ............................................ 9, 13

## STATUTES

12 U.S.C. § 1818(h)(2)........................................................................6
15 U.S.C. § 2620(b)(4)............................................................ 4, 5, 7, 9
28 U.S.C. § 2344 ...........................................................................5
5. U.S.C. § 701 .............................................................................6

# GLOSSARY

**Abbreviation**

APA          Administrative Procedures Act

EPA          Environmental Protection Agency

TSCA        Toxic Substances Control Act

# STATUTES AND REGULATIONS

Except for the statutes contained in the Addendum attached to this Reply, all applicable statutes and regulations are contained in the Opening Brief of Appellants, the Brief for Defendants-Appellees, and the Joint Brief of Intervenor-Appellees.

# INTRODUCTION

In 2012, the Trumpeter Swan Society, along with over 100 other organizations, submitted a petition to the Environmental Protection Agency ("EPA") seeking the regulation of lead in bullets and shot under the Toxic Substances Control Act ("TSCA") in order to protect wildlife and people from the harmful effects of lead poisoning. The Trumpeter Swan Society had never before submitted a petition to EPA. In response, EPA stated by letter that the agency did not consider the petition to be cognizable under TSCA because the agency determined that the petition was substantially the same as a petition submitted in 2010 by different petitioners. The agency based this opinion on the fact that the petition sought regulation of lead in bullets and shot, something EPA had previously concluded it had no authority to do, and thus any petition seeking any kind of regulation of lead in bullets and shot would be substantially the same as the 2010 petition.

EPA subsequently argued before the district court that the court had no jurisdiction to hear the Trumpeter Swan Society's action seeking *de novo* review of its petition as provided for in TSCA. The district court accepted the agency's argument and as a result the Trumpeter Swan Society's petition has not been considered on the merits by any court of law. This raises the primary question posed by this appeal: can EPA's denial of one TSCA petition – and the failure of

those petitioners to seek judicial review of that petition – act to prevent a district court from reviewing a subsequently-filed petition under TSCA?  More specifically, when a statute mandates *de novo* review of a petition for rulemaking, in what circumstances, if any, may an agency make a determination or take an action that will deprive the court of jurisdiction to exercise that *de novo* review?

The answer to these questions must be that EPA possesses no authority to deprive a district court of its jurisdiction to exercise its *de novo* review of a petition for rulemaking under TSCA.  TSCA's plain language is clear that all that is required for a petitioner to take advantage of this unusual right of *de novo* review is to satisfy the few requirements for the submittal of a petition described in TSCA and to file an action in district court within 60 days of the agency's denial of that petition or within 60 days of the agency's failure to act.  Here, the Trumpeter Swan Society has satisfied all that TSCA asks of it, and its petition for rulemaking – concerning an issue that has never been considered by a district court, let alone afforded the *de novo* review mandated by TSCA – should be considered on its merits.

## SUMMARY OF ARGUMENT

TSCA's plain language requires EPA to either grant or deny a petition for rulemaking.  If the agency either denies a petition or ignores it, TSCA's plain language affords a petitioner the right to seek *de novo* review of that petition from

a district court.  EPA does not have the discretion to impose on petitions for rulemaking burdens greater than those already described in TSCA, as the statute's plain language makes clear that petitioners must be afforded *de novo* review of their petitions.  Because EPA's interpretation of TSCA does not comport with the statute's plain language, it must be rejected and Petitioner's petition for rulemaking must be considered by the agency.

Even if the agency has some discretion to determine what is and what is not a cognizable petition before any court review, the facts of this case demonstrate that Petitioners' submission was indeed a petition, different from those before it, that required agency and judicial review.  EPA's contrary conclusion was an abuse of whatever discretion is may have possessed.

## ARGUMENT

## I.    EPA Has No Discretion to Decide that a Petition is "Not Cognizable"

EPA argues that it must be accorded the discretion to determine whether a petition is "cognizable" in the first place because only that would "preserve[] the meaning in and function of Section 21's 60-day limitations period for seeking review of a petition."  EPA Opp. at 16.  Without this discretion, EPA argues, a petitioner who "failed to seek judicial review after EPA denied an earlier petition could obtain that review simply by filing a subsequent identical petition."  *Id*. at

18-19.  EPA's argument is flawed.  First, it ignores and negates TSCA's plain language that provides for *de novo* review of petitions for rulemaking by a district court.  Second, EPA's argument deprives petitioners – and petitions for rulemaking – of their day in court as required by TSCA.  Third, EPA errs in its interpretation of the purpose of TSCA's 60-day time limit, failing to recognize the relationship of that provision of TSCA to the rest of the scheme of the statute.

A.      **EPA's Argument Ignores TSCA's Plain Language and Negates the Requirement of *De Novo* Review of Petitions by District Courts**

TSCA provides petitioners seeking agency rulemaking under TSCA with the extraordinary right to have the merits and substance of their petitions reviewed *de novo* by a district court if their petition is denied or even simply ignored by EPA. 15 U.S.C. § 2620(b)(4).  It ensures this *de novo* review by limiting the actions the agency can take in response to a petition for rulemaking: the agency can either grant, deny, or ignore a petition, and nothing else.  15 U.S.C. §§ 2620(b)(3), 2620(b)(4)(A).  Petitioners may then seek *de novo* review of their petition by a district court.  15 U.S.C. § 2620(b)(4)(B).  TSCA is explicit that a court in such a proceeding shall review *the petition itself*, not the agency's decision on the petition, stating that relief shall be granted if the petitioner demonstrates by a preponderance of evidence that "there is a reasonable basis to conclude that the

issuance of such a rule or order is necessary to protect" human health or the environment.  15 U.S.C. § 2620(b)(4)(B)(ii); *Environmental Defense Fund v. Reilly* (1990), 909 F.2d 1497, 1502 ("The petitioner must 'be provided an opportunity to have such petition considered by the court in a de novo proceeding,' and the disposition appropriate is set forth in careful detail…").  Under long-established principles of *de novo* review, the district court is required to review the petition without regard to the actions taken by the agency; the court looks at the petition anew, as if filed before the court itself.  *Doe v. United States*, 821 F.2d 694, 697-698 (D.C. Cir. 1987) ["De novo means here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion."]; *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967) ["*de novo*" …mean[s] to us that the court should make an independent determination of the issues"].  "Section 21 thus is a comprehensive as well as an unusual remedy open to petitioners denied promulgation of new rules." *Environmental Defense Fund v. Reilly*, *supra,* 909 F.2d at 1503.[1]

---

[1] EPA attempts to apply principles applicable to requests for reconsideration of agency actions to the present case, arguing that the law in this Circuit makes clear that such requests for reconsideration cannot act to subvert a statute of limitation. EPA Brief at 26-28.  EPA's argument is inapplicable to the facts here, as neither EPA nor the cases it cites consider petitions for rulemaking under statutes that provide for *de novo* review of such petitions.  For example, *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270 (1987), concerns 28 U.S.C. § 2344, which

By interpreting TSCA as providing it with the ability to determine whether a submission to the agency is a petition in the first place, EPA ignores the whole point of *de novo* review: the reviewing court does not look to the lower tribunal's (in this case, the agency's) actions or interpretations at all; the court looks at the petition anew and judges it on its merits. *Doe v. United States*, *supra*, 821 F.2d at 697-698. It simply does not matter whether the agency interprets a petition to be a resubmittal of a previous petition or a new petition, as the agency has no authority, and is granted no deference, to constrain a district court's jurisdiction to review a petition for rulemaking *de novo*.

Here, the District Court made exactly this mistake: it deferred to the agency's interpretation of the term "petition" in TSCA, deciding that "EPA's decision to treat the 2012 submission as a petition for reconsideration was

_____

provides for the right of a petitioner to "petition to review the order" by the agency, with the standard rules of agency deference in place. 482 U.S. at 277. Similarly, *Nat'l Bank of Davis* concerns a plaintiff's request for judicial review of a cease and desist order issued by an agency, review of which is statutorily under the Administrative Procedures Act and the normal deferential standards of review that apply to that statute. *Nat'l Bank of Davis v. Office of Comptroller of Currency,* 725 F.2d 1390, 1391 (1984); 12 U.S.C. § 1818(h)(2); 5. U.S.C. § 701 *et. seq.* Finally, *Southwestern Bell Tel. Co. v. FCC* concerns an agency's denial of a petition for review, an action again reviewable by a court only under the Administrative Procedures Act and its deferential standard of review. 180 F.3d 307, 311 (D.C. Cir. 1999). These cases all stand for the proposition that a request for rehearing or reconsideration of an agency order does not act to restart the statute of limitations in place on that order; none of the cases speak to the facts here, which involve a petition for rulemaking that is statutorily accorded *de novo* review by a district court.

persuasive under *Skidmore*," and that "the court also notes that an agency, quote, 'has broad discretion to determine when and how to hear and decide matters that come before it.' End quote…" Transcript, pp. 71 and 77 (citation omitted). The District Court thus confused the normal discretion it must give to agency decision-making (whether under *Chevron* or *Skidmore*) with TSCA's plain language that a court must review a petition *de novo*, without any discretion given to the agency's actions or decisions. Under the plain language of TSCA, the District Court was required to "make an independent determination of the issues" raised in the 2012 Petition, without any deference to any action taken by the agency. *United States v. First City Nat'l Bank*, *supra*, 386 U.S. at 368.

## B. Under TSCA, Trumpeter Swan Society Must Have Its Day in Court

EPA argues that TSCA's unusual standard for judicial review of petitions for rulemaking (*see* 15 U.S.C. § 2620(b)(4)(B)) could restrict the agency from arguing that a court should not consider the merits of petition for rulemaking due to the agency's opinion that the petition was a mere resubmission of a prior petition. EPA Opp. at 22-23. In its mind, EPA must be afforded the discretion to determine a petition for rulemaking is not cognizable because TSCA's *de novo* standard of review prevents the reviewing court from doing so. As discussed above, this interpretation defeats the purpose of *de novo* review of petitions for rulemaking,

ignoring the statute's explicit requirement that the agency be afforded *no discretion* in its actions related to any petition for rulemaking. Moreover, it improperly deprives petitioners from having their day in court. TSCA's *de novo* standard of review not only encourages judicial review of petitions for rulemaking but in fact anticipates that courts may play an active role in forcing a recalcitrant agency to act on significant threats to the health of people and the environment. Granting the agency the power to determine whether a petition may get to the reviewing court in the first place turns this statutory regime on its head.

Perhaps most importantly, EPA's fears are misplaced: the agency would not be prevented in a court proceeding from arguing that a petition for rulemaking was "essentially a resubmission of a prior petition," since the doctrines of issue and claim preclusion would still apply in such an action. Thus, courts would not be burdened with successive proceedings reviewing successive petitions for rulemaking, as EPA (or any intervenor) could move for dismissal based on *res judicata* for issues and/or claims that had been previously adjudicated. *Taylor v. Sturgell*, 553 U.S. 880 (2008), 892-895 [describing federal common law regarding nonparty exclusion]; *Id*. at 903-904 [the risk of coordinated repeat lawsuits does not justify "departure from the usual rules governing nonparty preclusion" because *stare decisis* and "human tendency not to waste money" adequately guard against such a contingency].

It is true that EPA could be subject to repeated identical petitions for rulemaking. But this is a small burden, as the agency could summarily deny identical or substantially similar petitions on that basis, or *even simply ignore them*. 15 U.S.C. §§ 2620(b)(3), 2620(b)(4)(A). This is no greater a burden than would be placed on EPA under its current interpretation of its authority – in the present case it was still required to review the 2012 Petition and determine how and whether to respond. The only difference is that EPA would have to decide whether to formally deny a petition based on its similarity to previous petitions or whether to ignore it. In either event, petitioners could then avail themselves of the right to *de novo* review of their petitions as afforded them by TSCA, and EPA could then avail itself to the right to seek dismissal of the action based on issue or claim preclusion if either doctrine applied. 15 U.S.C. § 2620(b)(4)(A). The fact is, in the nearly 40 years since TSCA was enacted, the "problem" of repeat petitions is virtually non-existent, with only two petitions for rulemaking ever being rejected or ignored by EPA on that basis, with the 2012 Petition being one. *See Walker v. EPA*, 802 F.Supp.1568, 1573 (S.D. Texas 1992). EPA's efforts to deprive Plaintiffs' petition for rulemaking its *de novo* review by a district court is not an effort to protect the sanctity of TSCA, but rather to subvert it. TSCA provides citizens with the extraordinary right of *de novo* review of petitions for rulemaking and EPA does not have the discretion to void that right.

**C.** **TSCA's 60-Day Time Limit Serves to Ensure that *De Novo* Judicial Review of Petitions for Rulemaking is Timely and Current**

EPA argues that by filing the 2012 Petition, Petitioners sought to "evade" or "circumvent" TSCA's 60-day time limit for seeking judicial review of a petition. EPA Opp. at 3 (ECF p. 15); *see also* EPA Opp. at 15, 28 (ECF pp. 27, 40). This argument incorrectly presupposes that the purpose of TSCA's 60-day time limit is to function as an "important constraint on a party's ability to embroil the courts and EPA in repetitive litigation." EPA Opp. at 28-29 (ECF p. 40-41). But, as discussed above, by providing for *de novo* review of petitions for rulemaking, even when the agency completely ignores the petition, TSCA demonstrates that it weighs a petitioner's access to the courts greater than any burden that might be placed on the agency. And given the doctrines of issue and claim preclusion, there is no need for EPA to be concerned about repetitive litigation. Considering these principles and the context of this plain language, the purpose of the statute's 60-day time limit is far more practical than what is claimed by EPA: it ensures that the court's *de novo* review of a petition for rulemaking will be based on the most current and updated facts, evidence, public comments, and agency expertise. TSCA *wants* courts to review petitions for rulemaking, but wants to make sure that any petition being reviewed by a court is current, and not stale. *See*, *e.g.*, *Doe v.*

*United States*, *supra*, 821 F.2d at 697-698 [*de novo* review requires "a fresh, independent determination"]. Only this construction gives effect to all of TSCA's provisions – including its embrace of citizen participation in the rulemaking process, its provision for *de novo* review of citizen petitions, and its express dictate that EPA must either grant, deny, or ignore a petition for rulemaking.

In light of these core principles, TSCA's intent regarding the potential for repeated petitions becomes clear: the agency must review submitted petitions for rulemaking and either grant, deny, or ignore them. Petitioners can then seek *de novo* review of denials (or failures to either grant or deny) and have their rejected petitions reviewed under an unusually specific standard of review. If the petitioner fails to file their action within 60 days, they must submit a new petition to the EPA, affording the agency (and the public) the opportunity to submit and consider any new or different information or arguments not considered in the prior review and ensuring that any subsequent court review will be based on the most current scientific evidence and facts. The agency could then grant, deny, or ignore this and any subsequent petitions as it sees fit. The petitioner in any of these subsequent actions could then seek *de novo* review before a district court of their petition, where the doctrines of claim and issue preclusion would ensure that the courts would not be burdened with repeated actions seeking judicial review of petitions.

## II.    EPA Abused Whatever Discretion It May Have Had

In their Opening and Opposition briefs, the parties have extensively briefed their arguments regarding the specific facts of the 2010 Petition and the 2012 Petition, and whether EPA's determination that the 2012 was "substantially the same" as the 2010 Petition, and as such Plaintiffs will avoid unnecessarily repeating those arguments in this Reply.  However, Plaintiffs do wish to highlight one point: what makes one petition different from another is what is contained in the petition itself, not how the agency would respond to the petition, and not what information could have been included in either petition but was not.

### A.    The Agency's Response to a Petition is Irrelevant in Determining Whether it is the Same as a Previous Petition

EPA determined that the 2012 Petition was "substantially the same" as the 2010 Petition, stating that the differences between the petitions were "a distinction without a difference" given the agency's opinion that it lacked any authority under TSCA to regulate lead in bullets and shot at all.  Docket No. 27-5 at p. 1.[2]  In so doing, EPA negated an essential difference between the two petitions: the significantly different relief the two petitions requested.  While the 2010 Petition sought a blanket ban on all lead in bullets and shot (Docket 27-2 at p. 2), the 2012

_____

[2] Plaintiffs wish to bring the Court's attention to a typographical error in their Opening Brief: a citation to this same document contained on Page 15 (ECF page 25) incorrectly cites to Docket 27-4, rather than the proper Docket 27-5.

Petition explicitly only sought an agency rulemaking to "adequately protect wildlife, human health, and the environment against the unreasonable risk of injury from bullets and shot containing lead used in hunting and shooting sports, which have the potential to cause harmful lead exposure to wildlife and humans." Docket 27-4 at p. 67.

EPA claims that it "properly considered whether there were *material* differences between the two submissions" when it compared the differences between the two petitions through the lens of its prior finding regarding its lack of authority to regulate lead bullets and shot. EPA Opp. at 42 (ECF p. 52) (emphasis in original). But this reasoning fails to counter Petitioners' argument that any determination of whether one petition is different from another must be based on the content of the petitions, not the agency's response. *Walker v. EPA*, 802 F.Supp. at 1573, n6 (S.D. Texas 1992). The fact is that the 2012 Petition is not based on mere "superficial alterations" or "irrelevant or cumulative evidence" (EPA Opp. at 42 (ECF p. 54) but rather seeks objectively different rulemaking than what was sought in the 2010 Petition. *Compare* Docket No. 27-2 at p.7 *with* Docket No. 27-4 at p.67. But EPA's narrow focus on its own theory of its authority prevents it from recognizing or considering that fact.

**B.      Whether Information Could or Should Have Been Included in a**

**Petition is Irrelevant in Determining Whether it is the Same as a**

**Previous Petition**

EPA's dismissal of the legislative history information contained in the 2012

Petition as information that "could and should have been discussed in the original

petition" misses the point of this inquiry.  EPA Opp. at 43 (ECF p. 55).  Whether

something could have or should have been included in one petition has absolutely

no bearing on a determination that a subsequent petition is the same or not; the

question is only whether the information was actually in both petitions.  EPA's

reliance on *Brotherhood of Locomotive Eng'rs* is misplaced, as that case concerned

a petition for reconsideration of an agency order – it did not concern the question

of whether a particular submission was a new petition or a petition for

reconsideration in the first place.  *ICC v. Brotherhood of Locomotive Eng'rs*,

*supra*, 482 U.S. at  276.  Moreover, the reasoning of *Brotherhood* does not

comport with TSCA, considering its provision for *de novo* review of petitions.  As

the Supreme Court recently ruled in a patent case, concerning a statute with a

similar *de novo* standard of review, new evidence may be considered in a *de novo*

hearing regardless of whether it could or should have been presented in the first

instance before the agency.  *Kappos v. Hyatt*, 566 U.S. ___, 132 S. Ct. 1690, 1699-

1670 (2012) [*de novo* hearing "is not limited to considering only new evidence that could not have been presented" before the agency].

Thus, the presence of new information in the 2012 Petition should be considered a factor in assessing whether the 2012 Petition is sufficiently different from the 2010 Petition or not, regardless of whether it could or should have been included in some prior petition. The legislative history information contained in the 2012 Petition was not cited or referenced in either the 2010 Petition or EPA's denial of that petition and yet it is directly relevant to the question of EPA's authority to regulate lead bullets and shot, which was the sole basis for the denial of the 2010 Petition. To punish the Trumpeter Swan Society and the nearly 100 other petitioners for the 2010 petitioners' supposed omissions or errors is both unnecessary and improper: the question in this specific inquiry is whether the 2012 Petition contains new information not contained in the 2010 Petition, and nothing more.

## CONCLUSION

For the above reasons and those described in Petitioners' Opening Brief, Petitioners respectfully request that this Court grant their relief.

Petitioners are cognizant that because of EPA's procedural posture regarding the 2012 Petition, neither the agency nor the public was provided with the

opportunity to fully review and comment on its merits. Thus, while TSCA's provision for *de novo* review would suggest that remand to the District Court for ruling on the merits of the Petition may be appropriate (and the parties have already invested substantial effort in their briefs arguing these merits), Petitioners believe that the District Court's *de novo* review would greatly benefit from full review by the agency, after full solicitation and consideration of comments from the public. As described above, the purpose of TSCA's 60-day limit on the filing of an action in district court is to ensure that the subsequent *de novo* review is based on the freshest facts, evidence, and arguments possible. Petitioners thus seek remand to the District Court with instructions that the District Court order EPA to comply with TSCA's requirement that the agency formally either grant or deny the Petition.

DATED: March 18, 2014        BY: ___/s/_____

                                        Adam Keats
                                        Attorney for Appellants

## CERTIFICATE REGARDING WORD LIMITATION

Counsel hereby certifies that, in accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the foregoing Reply Brief of Petitioners contains 3,938 words, as counted by counsel's word processing system.


DATED: March 18, 2014      BY: ___/s/_____
                                                     Adam Keats
                                                     Attorney for Appellants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 18, 2014, I electronically transmitted the documents described below to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants listed below.

**Reply Brief of Appellants**

**For Appellees Environmental Protection Agency and Lisa P. Jackson:**

Jennifer Scheller Neumann                  John David Gunter, II
Jennifer.neumann@usdoj.gov              David.Gunter2@usdoj.gov
efile_app.enrd@usdoj.gov                  efile_eds.enrd@usdoj.gov

**For Appellees National Shooting Sports Foundation, Inc.:**

Roger R. Martella, Jr.                      Christopher L. Bell
rmartella@sidley.com                      cbell@sidley.com

**For Appellees American Battery Recyclers:**

Michael Steven Snarr                       Robert N. Steinwurtzel
msnarr@bakerlaw.com                      rsteinwurtzel@bakerlaw.com

**For Appellees Safari Club International and National Rifle Association, Inc.**

Anna Margo Seidman
aseidman@safariclub.org

DATED: March 18, 2014          BY:  ___/s/_____
                                              Adam Keats

# ADDENDUM

# STATUTES AND REGULATIONS

# ADDENDUM TABLE OF CONTENTS

12 U.S.C. § 1818............................................................................ ADDENDUM 2

28 U.S.C. § 2344............................................................................ADDENDUM 26

## 12 U.S.C. § 1818

§ 1818.  Termination of status as insured depository institution

(a) Termination of Insurance.

  (1) Voluntary termination. Any insured depository institution which is not--

    (A) a national member bank;

    (B) a State member bank;

    (C) a Federal branch;

    (D) a Federal savings association; or

    (E) an insured branch which is required to be insured under subsection (a) or (b) of section 6 of the International Banking Act of 1978,

  may terminate such depository institution's status as an insured depository institution if such insured institution provides written notice to the Corporation of the institution's intent to terminate such status not less than 90 days before the effective date of such termination.

  (2) Involuntary termination.

    (A) Notice to primary regulator. If the Board of Directors determines that--

      (i) an insured depository institution or the directors or trustees of an insured depository institution have engaged or are engaging in unsafe or unsound practices in conducting the business of the depository institution;

      (ii) an insured depository institution is in an unsafe or unsound condition to continue operations as an insured institution; or

      (iii) an insured depository institution or the directors or trustees of the insured institution have violated any applicable law, regulation, order, condition imposed in writing by the Corporation in connection with the approval of any application or other request by the insured depository institution, or written agreement entered into between the insured depository institution and the Corporation,

    the Board of Directors shall notify the appropriate Federal banking agency with respect to such institution (if other than the Corporation) or the State banking supervisor of such institution (if the Corporation is the appropriate Federal banking agency) of the Board's determination and the facts and circumstances on which such determination is based for the purpose of securing the correction of such practice, condition, or violation. Such notice shall be given to the appropriate Federal banking agency not less than 30 days before the notice required by subparagraph (B), except that this period for notice to the appropriate Federal banking agency may be reduced or eliminated with the agreement of such agency.

    (B) Notice of intention to terminate insurance. If, after giving the notice required under subparagraph (A) with respect to an insured depository institution, the Board of Directors determines that any unsafe or unsound practice or condition or any violation specified in such notice requires the termination of the insured status of the insured depository institution, the Board shall--

      (i) serve written notice to the insured depository institution of the Board's intention to terminate the insured status of the institution;

(ii) provide the insured depository institution with a statement of the charges on the basis of which the determination to terminate such institution's insured status was made (or a copy of the notice under subparagraph (A)); and

(iii) notify the insured depository institution of the date (not less than 30 days after notice under this subparagraph) and place for a hearing before the Board of Directors (or any person designated by the Board) with respect to the termination of the institution's insured status.

(3) Hearing; termination. If, on the basis of the evidence presented at a hearing before the Board of Directors (or any person designated by the Board for such purpose), in which all issues shall be determined on the record pursuant to *section 554 of title 5, United States Code*, and the written findings of the Board of Directors (or such person) with respect to such evidence (which shall be conclusive), the Board of Directors finds that any unsafe or unsound practice or condition or any violation specified in the notice to an insured depository institution under paragraph (2)(B) or subsection (w) has been established, the Board of Directors may issue an order terminating the insured status of such depository institution effective as of a date subsequent to such finding.

(4) Appearance; consent to termination. Unless the depository institution shall appear at the hearing by a duly authorized representative, it shall be deemed to have consented to the termination of its status as an insured depository institution and termination of such status thereupon may be ordered.

(5) Judicial review. Any insured depository institution whose insured status has been terminated by order of the Board of Directors under this subsection shall have the right of judicial review of such order only to the same extent as provided for the review of orders under subsection (h) of this section.

(6) Publication of notice of termination. The Corporation may publish notice of such termination and the depository institution shall give notice of such termination to each of its depositors at his last address of record on the books of the depository institution, in such manner and at such time as the Board of Directors may find to be necessary and may order for the protection of depositors.

(7) Temporary insurance of deposits insured as of termination. After the termination of the insured status of any depository institution under the provisions of this subsection, the insured deposits of each depositor in the depository institution on the date of such termination, less all subsequent withdrawals from any deposits of such depositor, shall continue for a period of at least 6 months or up to 2 years, within the discretion of the Board of Directors, to be insured, and the depository institution shall continue to pay to the Corporation assessments as in the case of an insured during such period. No additions to any such deposits and no new deposits in such depository institution made after the date of such termination shall be insured by the Corporation, and the depository institution shall not advertise or hold itself out as having insured deposits unless in the same connection it shall also state with equal prominence that such additions to deposits and new deposits made after such date are not so insured. Such depository institution shall, in all other respects, be subject to the duties and obligations of an insured depository institution for the period referred to in the first sentence from the date of such termination, and in the event that such depository institution shall be closed on account of inability to meet the demands of its depositors within such period, the Corporation shall have the same powers and rights with respect to such depository institution as in case of an insured depository institution.

(8) Temporary suspension of insurance.

(A) In general. If the Board of Directors initiates a termination proceeding under paragraph (2), and the Board of Directors, after consultation with the appropriate Federal banking agency, finds that an insured depository institution (other than a savings association to which subparagraph (B) applies) has no tangible capital under the capital guidelines or regulations of the appropriate Federal banking agency, the Corporation may issue a temporary order suspending deposit insurance on all deposits received by the institution.

(B) Special rule for certain savings institutions.

(i) Certain goodwill included in tangible capital. In determining the tangible capital of a savings association for purposes of this paragraph, the Board of Directors shall include goodwill to the extent it is considered a component of capital under section 5(t) of the Home Owners' Loan Act [*12 USCS § 1464(t)*]. Any savings association which would be subject to a suspension order under subparagraph (A) but for the operation of this subparagraph, shall be considered by the Corporation to be a "special supervisory association".

(ii) Suspension order. The Corporation may issue a temporary order suspending deposit insurance on all deposits received by a special supervisory association whenever the Board of Directors determines that--

(I) the capital of such association, as computed utilizing applicable accounting standards, has suffered a material decline;

(II) that such association (or its directors or officers) is engaging in an unsafe or unsound practice in conducting the business of the association;

(III) that such association is in an unsafe or unsound condition to continue operating as an insured association; or

(IV) that such association (or its directors or officers) has violated any applicable law, rule, regulation, or order, or any condition imposed in writing by a Federal banking agency, or any written agreement including a capital improvement plan entered into with any Federal banking agency, or that the association has failed to enter into a capital improvement plan which is acceptable to the Corporation within the time period set forth in section 5(t) of the Home Owners' Loan Act [*12 USCS § 1464(t)*].

Nothing in this paragraph limits the right of the Corporation or the Comptroller of the Currency to enforce a contractual provision which authorizes the Corporation or the Comptroller of the Currency, as a successor to the Federal Savings and Loan Insurance Corporation or the Federal Home Loan Bank Board, to require a savings association to write down or amortize goodwill at a faster rate than otherwise required under this Act [*12 USCS §§ 1811* et seq.] or under applicable accounting standards.

(C) Effective period of temporary order. Any order issued under subparagraph (A) shall become effective not earlier than 10 days from the date of service upon the institution and, unless set aside, limited, or suspended by a court in proceedings authorized hereunder, such temporary order shall remain effective and enforceable until an order of the Board under paragraph (3) becomes final or until the Corporation dismisses the proceedings under paragraph (3).

(D) Judicial review. Before the close of the 10-day period beginning on the date any temporary order has been served upon an insured depository institution under subparagraph (A), such institution may apply to the United States District Court for the District of Columbia, or the United States district court for the judicial district in which the home office of the institution is located, for an injunction setting aside, limiting, or suspending the enforcement, operation, or effectiveness of such order, and such court shall have jurisdiction to issue such injunction.

(E) Continuation of insurance for prior deposits. The insured deposits of each depositor in such depository institution on the effective date of the order issued under this paragraph, minus all subsequent withdrawals from any deposits of such depositor, shall continue to be insured, subject to the administrative proceedings as provided in this Act [*12 USCS §§ 1811* et seq.].

(F) Publication of order. The depository institution shall give notice of such order to each of its depositors in such manner and at such times as the Board of Directors may find to be necessary and may order for the protection of depositors.

(G) Notice by Corporation. If the Corporation determines that the depository institution has not substantially complied with the notice to depositors required by the Board of Directors, the Corporation may provide such notice in such manner as the Board of Directors may find to be necessary and appropriate.

(H) Lack of notice. Notwithstanding subparagraph (A), any deposit made after the effective date of a suspension order issued under this paragraph shall remain insured to the extent that the depositor establishes that--

(i) such deposit consists of additions made by automatic deposit the depositor was unable to prevent; or

(ii) such depositor did not have actual knowledge of the suspension of insurance.

(9) Final decisions to terminate insurance. Any decision by the Board of Directors to--

(A) issue a temporary order terminating deposit insurance; or

(B) issue a final order terminating deposit insurance (other than under subsection (p) or (q)); shall be made by the Board of Directors and may not be delegated.

(10) Low- to moderate-income housing lender. In making any determination regarding the termination of insurance of a solvent savings association, the Corporation may consider the extent of the association's low- to moderate-income housing loans.

(b) Cease-and-desist proceedings.

(1) If, in the opinion of the appropriate Federal banking agency, any insured depository institution, depository institution which has insured deposits, or any institution-affiliated party is engaging or has engaged, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to engage, in an unsafe or unsound practice in conducting the business of such depository institution, or is violating or has violated, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to violate, a law, rule, or regulation, or any condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or other request by the credit union or institution-affiliated party, or any written agreement entered into with the agency, the appropriate Federal banking agency for the depository institution may issue and serve upon the depository institution or such party a notice of charges in respect thereof. The notice shall contain a statement of the facts constituting the alleged violation or violations or the unsafe or unsound practice or practices, and shall fix a time and place at which a hearing will be held to determine whether an order to cease and desist therefrom should issue against the depository institution or the institution-affiliated party. Such hearing shall be fixed for a date not earlier than thirty days nor later than sixty days after service of such notice unless an earlier or a later date is set by the agency at the request of any party so served. Unless the party or parties so served shall appear at the hearing personally or by a duly authorized representative, they shall be deemed to have consented to the issuance of the cease-and-desist order. In the event of such consent, or if upon the record made at any such hearing, the agency shall find that any violation

or unsafe or unsound practice specified in the notice of charges has been established, the agency may issue and serve upon the depository institution or the institution-affiliated party an order to cease and desist from any such violation or practice. Such order may, by provisions which may be mandatory or otherwise, require the depository institution or its institution-affiliated parties to cease and desist from the same, and, further, to take affirmative action to correct the conditions resulting from any such violation or practice.

(2) A cease-and-desist order shall become effective at the expiration of thirty days after the service of such order upon the depository institution or other person concerned (except in the case of a cease-and-desist order issued upon consent, which shall become effective at the time specified therein), and shall remain effective and enforceable as provided therein, except to such extent as it is stayed, modified, terminated, or set aside by action of the agency or a reviewing court.

(3) This subsection, subsections (c) through (s) and subsection (u) of this section, and section 50 of this Act [*12 USCS § 1831aa*] shall apply to any bank holding company, and to any subsidiary (other than a bank) of a bank holding company, as those terms are defined in the Bank Holding Company Act of 1956, any savings and loan holding company and any subsidiary (other than a depository institution) of a savings and loan holding company (as such terms are defined in section 10 of Home Owners' Loan Act [*12 USCS § 1467a*])), any noninsured State member bank and to any organization organized and operated under section 25(a) of the Federal Reserve Act or operating under section 25 of the Federal Reserve Act, in the same manner as they apply to a State member insured bank. Nothing in this subsection or in subsection (c) of this section shall authorize any Federal banking agency, other than the Board of Governors of the Federal Reserve System, to issue a notice of charges or cease-and-desist order against a bank holding company or any subsidiary thereof (other than a bank or subsidiary of that bank) or against a savings and loan holding company or any subsidiary thereof (other than a depository institution or a subsidiary of such depository institution).

(4) This subsection, subsections (c) through (s) and subsection (u) of this section, and section 50 of this Act [*12 USCS § 1831aa*] shall apply to any foreign bank or company to which subsection (a) of section 8 of the International Banking Act of 1978 [*12 USCS § 3106(a)*] applies and to any subsidiary (other than a bank) of any such foreign bank or company in the same manner as they apply to a bank holding company and any subsidiary thereof (other than a bank) under paragraph (3) of this subsection. For the purposes of this paragraph, the term "subsidiary" shall have the meaning assigned to it in section 2 of the Bank Holding Company Act of 1956 [*12 USCS § 1841*].

(5) This section shall apply, in the same manner as it applies to any insured depository institution for which the appropriate Federal banking agency is the Comptroller of the Currency, to any national banking association chartered by the Comptroller of the Currency, including an uninsured association.

(6) Affirmative action to correct conditions resulting from violations or practices. The authority to issue an order under this subsection and subsection (c) which requires an insured depository institution or any institution-affiliated party to take affirmative action to correct or remedy any conditions resulting from any violation or practice with respect to which such order is issued includes the authority to require such depository institution or such party to--

(A) make restitution or provide reimbursement, indemnification, or guarantee against loss if--

(i) such depository institution or such party was unjustly enriched in connection with such violation or practice; or

(ii) the violation or practice involved a reckless disregard for the law or any applicable regulations or prior order of the appropriate Federal banking agency;

(B) restrict the growth of the institution;

(C) dispose of any loan or asset involved;

(D) rescind agreements or contracts; and

(E) employ qualified officers or employees (who may be subject to approval by the appropriate Federal banking agency at the direction of such agency); and

(F) take such other action as the banking agency determines to be appropriate.

(7) Authority to limit activities. The authority to issue an order under this subsection or subsection (c) includes the authority to place limitations on the activities or functions of an insured depository institution or any institution-affiliated party.

(8) Unsatisfactory asset quality, management, earnings, or liquidity as unsafe or unsound practice. If an insured depository institution receives, in its most recent report of examination, a less-than-satisfactory rating for asset quality, management, earnings, or liquidity, the appropriate Federal banking agency may (if the deficiency is not corrected) deem the institution to be engaging in an unsafe or unsound practice for purposes of this subsection.

(9) [Repealed]

(10) Standard for certain orders. No authority under this subsection or subsection (c) to prohibit any institution-affiliated party from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property may be exercised unless the appropriate Federal banking agency meets the standards of *Rule 65 of the Federal Rules of Civil Procedure* [USCS Court Rules, Rules of Civil Procedure, Rule 65], without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

(c) Temporary cease-and-desist orders.

(1) Whenever the appropriate Federal banking agency shall determine that the violation or threatened violation or the unsafe or unsound practice or practices, specified in the notice of charges served upon the depository institution or any institution-affiliated party pursuant to paragraph (1) of subsection (b) of this section, or the continuation thereof, is likely to cause insolvency or significant dissipation of assets or earnings of the depository institution, or is likely to weaken the condition of the depository institution or otherwise prejudice the interests of its depositors prior to the completion of the proceedings conducted pursuant to paragraph (1) of subsection (b) of this section, the agency may issue a temporary order requiring the depository institution or such party to cease and desist from any such violation or practice and to take affirmative action to prevent or remedy such insolvency, dissipation, condition, or prejudice pending completion of such proceedings. Such order may include any requirement authorized under subsection (b)(6). Such order shall become effective upon service upon the depository institution or such party participating in the conduct of the affairs of such depository institution and, unless set aside, limited, or suspended by a court in proceedings authorized by paragraph (2) of this subsection, shall remain effective and enforceable pending the completion of the administrative proceedings pursuant to such notice and until such time as the agency shall dismiss the charges specified in such notice, or if a cease-and-desist order is issued against the depository institution or such party, until the effective date of such order.

(2) Within ten days after the depository institution concerned or any institution-affiliated party has been served with a temporary cease-and-desist order, the depository institution or such party may apply to the United States district court for the judicial district in which the home office of

the depository institution is located, or the United States District Court for the District of Columbia, for an injunction setting aside, limiting, or suspending the enforcement, operation, or effectiveness of such order pending the completion of the administrative proceedings pursuant to the notice of charges served upon the depository institution or such party under paragraph (1) of subsection (b) of this section, and such court shall have jurisdiction to issue such injunction.

(3) Incomplete or inaccurate records.

(A) Temporary order. If a notice of charges served under subsection (b)(1) specifies, on the basis of particular facts and circumstances, that an insured depository institution's books and records are so incomplete or inaccurate that the appropriate Federal banking agency is unable, through the normal supervisory process, to determine the financial condition of that depository institution or the details or purpose of any transaction or transactions that may have a material effect on the financial condition of that depository institution, the agency may issue a temporary order requiring--

(i) the cessation of any activity or practice which gave rise, whether in whole or in part, to the incomplete or inaccurate state of the books or records; or

(ii) affirmative action to restore such books or records to a complete and accurate state, until the completion of the proceedings under subsection (b)(1).

(B) Effective period. Any temporary order issued under subparagraph (A)--

(i) shall become effective upon service; and

(ii) unless set aside, limited, or suspended by a court in proceedings under paragraph (2), shall remain in effect and enforceable until the earlier of--

(I) the completion of the proceeding initiated under subsection (b)(1) in connection with the notice of charges; or

(II) the date the appropriate Federal banking agency determines, by examination or otherwise, that the insured depository institution's books and records are accurate and reflect the financial condition of the depository institution.

(4) False advertising or misuse of names to indicate insured status.

(A) Temporary order.

(i) In general. If a notice of charges served under subsection (b)(1) specifies on the basis of particular facts that any person engaged or is engaging in conduct described in section 18(a)(4) [*12 USCS § 1828(a)(4)*], the Corporation or other appropriate Federal banking agency may issue a temporary order requiring--

(I) the immediate cessation of any activity or practice described, which gave rise to the notice of charges; and

(II) affirmative action to prevent any further, or to remedy any existing, violation.

(ii) Effect of order. Any temporary order issued under this subparagraph shall take effect upon service.

(B) Effective period of temporary order. A temporary order issued under subparagraph (A) shall remain effective and enforceable, pending the completion of an administrative proceeding pursuant to subsection (b)(1) in connection with the notice of charges--

(i) until such time as the Corporation or other appropriate Federal banking agency dismisses the charges specified in such notice; or

(ii) if a cease-and-desist order is issued against such person, until the effective date of such order.

(C) Civil money penalties. Any violation of section 18(a)(4) [*12 USCS § 1828(a)(4)*] shall be subject to civil money penalties, as set forth in subsection (i), except that for any person other

than an insured depository institution or an institution-affiliated party that is found to have violated this paragraph, the Corporation or other appropriate Federal banking agency shall not be required to demonstrate any loss to an insured depository institution.

(d) Temporary cease-and-desist orders; enforcement.  In the case of violation or threatened violation of, or failure to obey, a temporary cease-and-desist order issued pursuant to paragraph (1) of subsection (c) of this section, the appropriate Federal banking agency may apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for an injunction to enforce such order, and, if the court shall determine that there has been such violation or threatened violation or failure to obey, it shall be the duty of the court to issue such injunction.

(e) Removal and prohibition authority.
  (1) Authority to issue order. Whenever the appropriate Federal banking agency determines that--
    (A) any institution-affiliated party has, directly or indirectly--
      (i) violated--
        (I) any law or regulation;
        (II) any cease-and-desist order which has become final;
        (III) any condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or request by such depository institution or institution-affiliated party; or
        (IV) any written agreement between such depository institution and such agency;
      (ii) engaged or participated in any unsafe or unsound practice in connection with any insured depository institution or business institution; or
      (iii) committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;
    (B) by reason of the violation, practice, or breach described in any clause of subparagraph (A)--
      (i) such insured depository institution or business institution has suffered or will probably suffer financial loss or other damage;
      (ii) the interests of the insured depository institution's depositors have been or could be prejudiced; or
      (iii) such party has received financial gain or other benefit by reason of such violation, practice, or breach; and
    (C) such violation, practice, or breach--
      (i) involves personal dishonesty on the part of such party; or
      (ii) demonstrates willful or continuing disregard by such party for the safety or soundness of such insured depository institution or business institution,
  the appropriate Federal banking agency for the depository institution may serve upon such party a written notice of the agency's intention to remove such party from office or to prohibit any further participation by such party, in any manner, in the conduct of the affairs of any insured depository institution.
  (2) Specific violations.
    (A) In general. Whenever the appropriate Federal banking agency determines that--

(i) an institution-affiliated party has committed a violation of any provision of subchapter II of chapter 53 of title 31, United States Code [*31 USCS §§ 5311* et seq.], and such violation was not inadvertent or unintentional;

(ii) an officer or director of an insured depository institution has knowledge that an institution-affiliated party of the insured depository institution has violated any such provision or any provision of law referred to in subsection (g)(1)(A)(ii);

(iii) an officer or director of an insured depository institution has committed any violation of the Depository Institution Management Interlocks Act; or

(iv) an institution-affiliated party of a subsidiary (other than a bank) of a bank holding company or of a subsidiary (other than a savings association) of a savings and loan holding company has been convicted of any criminal offense involving dishonesty or a breach of trust or a criminal offense under section 1956, 1957, or 1960 of title 18, United States Code, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such an offense,

the agency may serve upon such party, officer, or director a written notice of the agency's intention to remove such party from office.

(B) Factors to be considered. In determining whether an officer or director should be removed as a result of the application of subparagraph (A)(ii), the agency shall consider whether the officer or director took appropriate action to stop, or to prevent the recurrence of, a violation described in such subparagraph.

(3) Suspension order.

(A) Suspension or prohibition authorized. If the appropriate Federal banking agency serves written notice under paragraph (1) or (2) to any institution-affiliated party of such agency's intention to issue an order under such paragraph, the appropriate Federal banking agency may suspend such party from office or prohibit such party from further participation in any manner in the conduct of the affairs of the depository institution, if the agency--

(i) determines that such action is necessary for the protection of the depository institution or the interests of the depository institution's depositors; and

(ii) serves such party with written notice of the suspension order.

(B) Effective period. Any suspension order issued under subparagraph (A)--

(i) shall become effective upon service; and

(ii) unless a court issues a stay of such order under subsection (f), shall remain in effect and enforceable until--

(I) the date the appropriate Federal banking agency dismisses the charges contained in the notice served under paragraph (1) or (2) with respect to such party; or

(II) the effective date of an order issued by the agency to such party under paragraph (1) or (2).

(C) Copy of order. If an appropriate Federal banking agency issues a suspension order under subparagraph (A) to any institution-affiliated party, the agency shall serve a copy of such order on any insured depository institution with which such party is associated at the time such order is issued.

(4) A notice of intention to remove an institution-affiliated party from office or to prohibit such party from participating in the conduct of the affairs of an insured depository institution, shall contain a statement of the facts constituting grounds therefor, and shall fix a time and place at which a hearing will be held thereon. Such hearing shall be fixed for a date not earlier than thirty days nor later than sixty days after the date of service of such notice, unless an earlier or a later

date is set by the agency at the request of (A) such party, and for good cause shown, or (B) the Attorney General of the United States. Unless such party shall appear at the hearing in person or by a duly authorized representative, such party shall be deemed to have consented to the issuance of an order of such removal or prohibition. In the event of such consent, or if upon the record made at any such hearing the agency shall find that any of the grounds specified in such notice have been established, the agency may issue such orders of suspension or removal from office, or prohibition from participation in the conduct of the affairs of the depository institution, as it may deem appropriate. Any such order shall become effective at the expiration of thirty days after service upon such depository institution and such party (except in the case of an order issued upon consent, which shall become effective at the time specified therein). Such order shall remain effective and enforceable except to such extent as it is stayed, modified, terminated, or set aside by action of the agency or a reviewing court.

(5) For the purpose of enforcing any law, rule, regulation, or cease-and-desist order in connection with an interlocking relationship, the term "officer" within the term "institution-affiliated party" as used in this subsection means an employee or officer with management functions, and the term "director" within the term "institution-affiliated party" as used in this subsection includes an advisory or honorary director, a trustee of a depository institution under the control of trustees, or any person who has a representative or nominee serving in any such capacity.

(6) Prohibition of certain specific activities. Any person subject to an order issued under this subsection shall not--

(A) participate in any manner in the conduct of the affairs of any institution or agency specified in paragraph (7)(A);

(B) solicit, procure, transfer, attempt to transfer, vote, or attempt to vote any proxy, consent, or authorization with respect to any voting rights in any institution described in subparagraph (A);

(C) violate any voting agreement previously approved by the appropriate Federal banking agency; or

(D) vote for a director, or serve or act as an institution-affiliated party.

(7) Industrywide prohibition.

(A) In general. Except as provided in subparagraph (B), any person who, pursuant to an order issued under this subsection or subsection (g), has been removed or suspended from office in an insured depository institution or prohibited from participating in the conduct of the affairs of an insured depository institution may not, while such order is in effect, continue or commence to hold any office in, or participate in any manner in the conduct of the affairs of--

(i) any insured depository institution;

(ii) any institution treated as an insured bank under subsection (b)(3) or (b)(4), or as a savings association under subsection (b)(9);

(iii) any insured credit union under the Federal Credit Union Act [*12 USCS §§ 1751* et seq.];

(iv) any institution chartered under the Farm Credit Act of 1971;

(v) any appropriate Federal depository institution regulatory agency; and

(vi) the Federal Housing Finance Agency and any Federal home loan bank.

(vii) [Deleted]

(B) Exception if agency provides written consent. If, on or after the date an order is issued under this subsection which removes or suspends from office any institution-affiliated party or

prohibits such party from participating in the conduct of the affairs of an insured depository institution, such party receives the written consent of--

(i) the agency that issued such order; and

(ii) the appropriate Federal financial institutions regulatory agency of the institution described in any clause of subparagraph (A) with respect to which such party proposes to become an institution-affiliated party,

subparagraph (A) shall, to the extent of such consent, cease to apply to such party with respect to the institution described in each written consent. Any agency that grants such a written consent shall report such action to the Corporation and publicly disclose such consent.

(C) Violation of paragraph treated as violation of order. Any violation of subparagraph (A) by any person who is subject to an order described in such subparagraph shall be treated as a violation of the order.

(D) Appropriate Federal financial institutions regulatory agency defined. For purposes of this paragraph and subsection (j), the term "appropriate Federal financial institutions regulatory agency" means--

(i) the appropriate Federal banking agency, in the case of an insured depository institution;

(ii) the Farm Credit Administration, in the case of an institution chartered under the Farm Credit Act of 1971;

(iii) the National Credit Union Administration Board, in the case of an insured credit union (as defined in section 101(7) of the Federal Credit Union Act [*12 USCS § 1752(7)*]); and

(iv) the Secretary of the Treasury, in the case of the Federal Housing Finance Agency and any Federal home loan bank.

(v) [Deleted]

(E) Consultation between agencies. The agencies referred to in clauses (i) and (ii) of subparagraph (B) shall consult with each other before providing any written consent described in subparagraph (B).

(F) Applicability. This paragraph shall only apply to a person who is an individual, unless the appropriate Federal banking agency specifically finds that it should apply to a corporation, firm, or other business enterprise.


(f) Stay of suspension and/or prohibition of institution-affiliated party.  Within ten days after any institution-affiliated party has been suspended from office and/or prohibited from participation in the conduct of the affairs of an insured depository institution under subsection (e)(3) of this section, such party, may apply to the United States district court for the judicial district in which the home office of the depository institution is located, or the United States District Court for the District of Columbia, for a stay of such suspension and/or prohibition pending the completion of the administrative proceedings pursuant to the notice served upon such party, under subsection (e)(1), or (e)(2) of this section, and such court shall have jurisdiction to stay such suspension and/or prohibition.


(g) Suspension, removal, and prohibition from participation orders in the case of certain criminal offenses.

(1) Suspension or prohibition.

(A) In general. Whenever any institution-affiliated party is the subject of any information, indictment, or complaint, involving the commission of or participation in--

(i) a crime involving dishonesty or breach of trust which is punishable by imprisonment for a term exceeding one year under State or Federal law, or

(ii) a criminal violation of section 1956, 1957, or 1960 of title *18, United States Code, or section 5322* or 5324 of title 31, United States Code,

the appropriate Federal banking agency may, if continued service or participation by such party posed, poses, or may pose a threat to the interests of the depositors of, or threatened, threatens, or may threaten to impair public confidence in, any relevant depository institution (as defined in subparagraph (E)), by written notice served upon such party, suspend such party from office or prohibit such party from further participation in any manner in the conduct of the affairs of any depository institution.

(B) Provisions applicable to notice.

(i) Copy. A copy of any notice under subparagraph (A) shall also be served upon any depository institution that the subject of the notice is affiliated with at the time the notice is issued.

(ii) Effective period. A suspension or prohibition under subparagraph (A) shall remain in effect until the information, indictment, or complaint referred to in such subparagraph is finally disposed of or until terminated by the agency.

(C) Removal or prohibition.

(i) In general. If a judgment of conviction or an agreement to enter a pretrial diversion or other similar program is entered against an institution-affiliated party in connection with a crime described in subparagraph (A)(i), at such time as such judgment is not subject to further appellate review, the appropriate Federal banking agency may, if continued service or participation by such party posed, poses, or may pose a threat to the interests of the depositors of, or threatened, threatens, or may threaten to impair public confidence in, any relevant depository institution (as defined in subparagraph (E)), issue and serve upon such party an order removing such party from office or prohibiting such party from further participation in any manner in the conduct of the affairs of any depository institution without the prior written consent of the appropriate agency.

(ii) Required for certain offenses. In the case of a judgment of conviction or agreement against an institution-affiliated party in connection with a violation described in subparagraph (A)(ii), the appropriate Federal banking agency shall issue and serve upon such party an order removing such party from office or prohibiting such party from further participation in any manner in the conduct of the affairs of any depository institution without the prior written consent of the appropriate agency.

(D) Provisions applicable to order.

(i) Copy. A copy of any order under subparagraph (C) shall also be served upon any depository institution that the subject of the order is affiliated with at the time the order is issued, whereupon the institution-affiliated party who is subject to the order (if a director or an officer) shall cease to be a director or officer of such depository institution.

(ii) Effect of acquittal. A finding of not guilty or other disposition of the charge shall not preclude the agency from instituting proceedings after such finding or disposition to remove such party from office or to prohibit further participation in depository institution affairs, pursuant to paragraph (1), (2), or (3) of subsection (e) of this section.

(iii) Effective period. Any notice of suspension or order of removal issued under this paragraph shall remain effective and outstanding until the completion of any hearing or appeal authorized under paragraph (3) unless terminated by the agency.

(E) Relevant depository institution. For purposes of this subsection, the term "relevant depository institution" means any depository institution of which the party is or was an institution-affiliated party at the time at which--

(i) the information, indictment, or complaint described in subparagraph (A) was issued; or

(ii) the notice is issued under subparagraph (A) or the order is issued under subparagraph (C)(i).

(2) If at any time, because of the suspension of one or more directors pursuant to this section, there shall be on the board of directors of a national bank less than a quorum of directors not so suspended, all powers and functions vested in or exercisable by such board shall vest in and be exercisable by the director or directors on the board not so suspended, until such time as there shall be a quorum of the board of directors. In the event all of the directors of a national bank are suspended pursuant to this section, the Comptroller of the Currency shall appoint persons to serve temporarily as directors in their place and stead pending the termination of such suspensions, or until such time as those who have been suspended, cease to be directors of the bank and their respective successors take office.

(3) Within thirty days from service of any notice of suspension or order of removal issued pursuant to paragraph (1) of this subsection, the institution-affiliated party concerned may request in writing an opportunity to appear before the agency to show that the continued service to or participation in the conduct of the affairs of the depository institution by such party does not, or is not likely to, pose a threat to the interests of the bank's [depository institution's] depositors or threaten to impair public confidence in the depository institution. Upon receipt of any such request, the appropriate Federal banking agency shall fix a time (not more than thirty days after receipt of such request, unless extended at the request of such party and place at which such party may appear, personally or through counsel, before one or more members of the agency or designated employees of the agency to submit written materials (or, at the discretion of the agency, oral testimony) and oral argument. Within sixty days of such hearing, the agency shall notify such party whether the suspension or prohibition from participation in any manner in the conduct of the affairs of the depository institution will be continued, terminated, or otherwise modified, or whether the order removing such party from office or prohibiting such party from further participation in any manner in the conduct of the affairs of the depository institution will be rescinded or otherwise modified. Such notification shall contain a statement of the basis for the agency's decision, if adverse to such party. The Federal banking agencies are authorized to prescribe such rules as may be necessary to effectuate the purposes of this subsection.

(h) Hearings and judicial review.

(1) Any hearing provided for in this section (other than the hearing provided for in subsection (g)(3) of this section) shall be held in the Federal judicial district or in the territory in which the home office of the depository institution is located unless the party afforded the hearing consents to another place, and shall be conducted in accordance with the provisions of chapter 5 of title 5 of the United States Code [5 USCS §§ 500 et seq.]. After such hearing, and within ninety days after the appropriate Federal banking agency or Board of Governors of the Federal Reserve System has notified the parties that the case has been submitted to it for final decision, it shall render its decision (which shall include findings of fact upon which its decision is predicated) and shall issue and serve upon each party to the proceeding an order or orders consistent with the provisions of this section. Judicial review of any such order shall be exclusively as provided in this subsection (h). Unless a petition for review is timely filed in a court of appeals of the United

States, as hereinafter provided in paragraph (2) of this subsection, and thereafter until the record in the proceeding has been filed as so provided, the issuing agency may at any time, upon such notice and in such manner as it shall deem proper, modify, terminate, or set aside any such order. Upon such filing of the record, the agency may modify, terminate, or set aside any such order with permission of the court.

(2) Any party to any proceeding under paragraph (1) may obtain a review of any order served pursuant to paragraph (1) of this subsection (other than an order issued with the consent of the depository institution or the institution-affiliated party concerned, or an order issued under paragraph (1) of subsection (g) of this section) by the filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the agency be modified, terminated, or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the agency, and thereupon the agency shall file in the court the record in the proceeding, as provided in *section 2112 of title 28 of the United States Code*. Upon the filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall except as provided in the last sentence of said paragraph (1) be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the agency. Review of such proceedings shall be had as provided in chapter 7 of title 5 of the United States Code [*5 USCS §§ 701* et seq.]. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari, as provided in *section 1254 of title 28 of the United States Code*.

(3) The commencement of proceedings for judicial review under paragraph (2) of this subsection shall not, unless specifically ordered by the court, operate as a stay of any order issued by the agency.

(i) Jurisdiction and enforcement; penalty.

(1) The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 38 or 39 [*12 USCS § 1831o* or *1831p-1*], and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 38 or 39 [*12 USCS § 1831o* or *1831p-1*] no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

(2) Civil money penalty.

(A) First tier. Any insured depository institution which, and any institution-affiliated party who--

(i) violates any law or regulation;

(ii) violates any final order or temporary order issued pursuant to subsection (b), (c), (e), (g), or (s) or any final order under section 38 or 39 [*12 USCS § 1831o* or *1831p-1*];

(iii) violates any condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or other request by the depository institution or institution-affiliated party; or

(iv) violates any written agreement between such depository institution and such agency,

shall forfeit and pay a civil penalty of not more than $ 5,000 for each day during which such violation continues.

(B) Second tier. Notwithstanding subparagraph (A), any insured depository institution which, and any institution-affiliated party who--

(i) (I) commits any violation described in any clause of subparagraph (A);

(II) recklessly engages in an unsafe or unsound practice in conducting the affairs of such insured depository institution; or

(III) breaches any fiduciary duty;

(ii) which violation, practice, or breach--

(I) is part of a pattern of misconduct;

(II) causes or is likely to cause more than a minimal loss to such depository institution; or

(III) results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $ 25,000 for each day during which such violation, practice, or breach continues.

(C) Third tier. Notwithstanding subparagraphs (A) and (B), any insured depository institution which, and any institution-affiliated party who--

(i) knowingly--

(I) commits any violation described in any clause of subparagraph (A);

(II) engages in any unsafe or unsound practice in conducting the affairs of such depository institution; or

(III) breaches any fiduciary duty; and

(ii) knowingly or recklessly causes a substantial loss to such depository institution or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subparagraph (D) for each day during which such violation, practice, or breach continues.

(D) Maximum amounts of penalties for any violation described in subparagraph (C). The maximum daily amount of any civil penalty which may be assessed pursuant to subparagraph (C) for any violation, practice, or breach described in such subparagraph is--

(i) in the case of any person other than an insured depository institution, an amount to not exceed $ 1,000,000; and

(ii) in the case of any insured depository institution, an amount not to exceed the lesser of--

(I) $ 1,000,000; or

(II) 1 percent of the total assets of such institution.

(E) Assessment.

(i) Written notice. Any penalty imposed under subparagraph (A), (B), or (C) may be assessed and collected by the appropriate Federal banking agency by written notice.

(ii) Finality of assessment. If, with respect to any assessment under clause (i), a hearing is not requested pursuant to subparagraph (H) within the period of time allowed under such subparagraph, the assessment shall constitute a final and unappealable order.

(F) Authority to modify or remit penalty. Any appropriate Federal banking agency may compromise, modify, or remit any penalty which such agency may assess or had already assessed under subparagraph (A), (B), or (C).

(G) Mitigating factors. In determining the amount of any penalty imposed under subparagraph (A), (B), or (C), the appropriate agency shall take into account the appropriateness of the penalty with respect to--

(i) the size of financial resources and good faith of the insured depository institution or other person charged;

(ii) the gravity of the violation;

(iii) the history of previous violations; and

(iv) such other matters as justice may require.

(H) Hearing. The insured depository institution or other person against whom any penalty is assessed under this paragraph shall be afforded an agency hearing if such institution or person submits a request for such hearing within 20 days after the issuance of the notice of assessment.

(I) Collection.

(i) Referral. If any insured depository institution or other person fails to pay an assessment after any penalty assessed under this paragraph has become final, the agency that imposed the penalty shall recover the amount assessed by action in the appropriate United States district court.

(ii) Appropriateness of penalty not reviewable. In any civil action under clause (i), the validity and appropriateness of the penalty shall not be subject to review.

(J) Disbursement. All penalties collected under authority of this paragraph shall be deposited into the Treasury.

(K) Regulations. Each appropriate Federal banking agency shall prescribe regulations establishing such procedures as may be necessary to carry out this paragraph.

(3) Notice under this section after separation from service. The resignation, termination of employment or participation, or separation of an institution-affiliated party (including a separation caused by the closing of an insured depository institution) shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice or order and proceed under this section against any such party, if such notice or order is served before the end of the 6-year period beginning on the date such party ceased to be such a party with respect to such depository institution (whether such date occurs before, on, or after the date of the enactment of this paragraph [enacted Aug. 9, 1989]).

(4) Prejudgment attachment.

(A) In general. In any action brought by an appropriate Federal banking agency (excluding the Corporation when acting in a manner described in section 11(d)(18)) pursuant to this section, or in actions brought in aid of, or to enforce an order in, any administrative or other civil action for money damages, restitution, or civil money penalties brought by such agency, the court may, upon application of the agency, issue a restraining order that--

(i) prohibits any person subject to the proceeding from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets or other property; and

(ii) appoints a temporary receiver to administer the restraining order.

(B) Standard.

(i) Showing. *Rule 65 of the Federal Rules of Civil Procedure* [USCS Court Rules, Rules of Civil Procedure, Rule 65 shall apply with respect to any proceeding under subparagraph (A) without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.

(ii) State proceeding. If, in the case of any proceeding in a State court, the court determines that rules of civil procedure available under the laws of such State provide substantially similar

protections to a party's right to due process as Rule 65 [USCS Court Rules, Rules of Civil Procedure, Rule 65 (as modified with respect to such proceeding by clause (i)), the relief sought under subparagraph (A) may be requested under the laws of such State.

(j) Criminal penalty.  Whoever, being subject to an order in effect under subsection (e) or (g), without the prior written approval of the appropriate Federal financial institutions regulatory agency, knowingly participates, directly or indirectly, in any manner (including by engaging in an activity specifically prohibited in such an order or in subsection (e)(6)) in the conduct of the affairs of--
   (1) any insured depository institution;
   (2) any institution treated as an insured bank under subsection (b)(3) or (b)(4);
   (3) any insured credit union (as defined in section 101(7) of the Federal Credit Union Act [*12 USCS § 1752(7)*]); or
   (4) any institution chartered under the Farm Credit Act of 1971,
   (5) [Deleted]

shall be fined not more than $ 1,000,000, imprisoned for not more than 5 years, or both.

(k) [Repealed]

(l) Notice of service.  Any service required or authorized to be made by the appropriate Federal banking agency under this section may be made by registered mail, or in such other manner reasonably calculated to give actual notice as the agency may by regulation or otherwise provide. Copies of any notice or order served by the agency upon any State depository institution or any institution-affiliated party, pursuant to the provisions of this section, shall also be sent to the appropriate State supervisory authority.

(m) Notice to State authorities.  In connection with any proceeding under subsection (b), (c)(1), or (e) of this section involving an insured State bank or any institution-affiliated party, the appropriate Federal banking agency shall provide the appropriate State supervisory authority with notice of the agency's intent to institute such a proceeding and the grounds therefor. Unless within such time as the Federal banking agency deems appropriate in the light of the circumstances of the case (which time must be specified in the notice prescribed in the preceding sentence) satisfactory corrective action is effectuated by action of the State supervisory authority, the agency may proceed as provided in this section. No bank or other party who is the subject of any notice or order issued by the agency under this section shall have standing to raise the requirements of this subsection as ground for attacking the validity of any such notice or order.

(n) Ancillary provisions; subpena power, etc.  In the course of or in connection with any proceeding under this section, or in connection with any claim for insured deposits or any examination or investigation under section 10(c) [*12 USCS § 1820(c)*], the agency conducting the proceeding, examination, or investigation or considering the claim for insured deposits, or any member or designated representative thereof, including any person designated to conduct any hearing under this section, shall have the power to administer oaths and affirmations, to take or cause to be taken depositions, and to issue, revoke, quash, or modify subpenas and subpenas duces tecum; and such agency is empowered to make rules and regulations with respect to any

such proceedings, claims, examinations, or investigations. The attendance of witnesses and the production of documents provided for in this subsection may be required from any place in any State or in any territory or other place subject to the jurisdiction of the United States at any designated place where such proceeding is being conducted. Any such agency or any party to proceedings under this section may apply to the United States District Court for the District of Columbia, or the United States district court for the judicial district or the United States court in any territory in which such proceeding is being conducted, or where the witness resides or carries on business, for enforcement of any subpena or subpena duces tecum issued pursuant to this subsection, and such courts shall have jurisdiction and power to order and require compliance therewith. Witnesses subpenaed under this subsection shall be paid the same fees and mileage that are paid witnesses in the district courts of the United States. Any court having jurisdiction of any proceeding instituted under this section by an insured depository institution or a director or officer thereof, may allow to any such party such reasonable expenses and attorneys' fees as it deems just and proper; and such expenses and fees shall be paid by the depository institution or from its assets. Any person who willfully shall fail or refuse to attend and testify or to answer any lawful inquiry or to produce books, papers, correspondence, memoranda, contracts, agreements, or other records, if in such person's power so to do, in obedience to the subpoena of the appropriate Federal banking agency, shall be guilty of a misdemeanor and, upon conviction, shall be subject to a fine of not more than $ 1,000 or to imprisonment for a term of not more than one year or both.

(o) Termination of membership of State bank in Federal Reserve System.  Whenever the insured status of a State member bank shall be terminated by action of the Board of Directors, the Board of Governors of the Federal Reserve System shall terminate its membership in the Federal Reserve System in accordance with the provisions of section 9 of the Federal Reserve Act, and whenever the insured status of a national member bank shall be so terminated the Comptroller of the Currency shall appoint a receiver for the bank, which shall be the Corporation. Except as provided in subsection (c) or d) of section 4 [*12 USCS § 1814*], whenever a member bank shall cease to be a member of the Federal Reserve System, its status as an insured depository institution shall, without notice or other action by the Board of Directors, terminate on the date the bank shall cease to be a member of the Federal Reserve System, with like effect as if its insured status had been terminated on said date by the Board of Directors after proceedings under subsection (a) of this section. Whenever the insured status of an insured Federal savings bank shall be terminated by action of the Board of Directors, the Comptroller of the Currency shall appoint a receiver for the bank, which shall be the Corporation.

(p) Banks not receiving deposits.  Notwithstanding any other provision of law, whenever the Board of Directors shall determine that an insured depository institution is not engaged in the business of receiving deposits, other than trust funds as herein defined, the Corporation shall notify the depository institution that its insured status will terminate at the expiration of the first full assessment period following such notice. A finding by the Board of Directors that a depository institution is not engaged in the business of receiving deposits, other than such trust funds, shall be conclusive. The Board of Directors shall prescribe the notice to be given by the depository institution of such termination and the Corporation may publish notice thereof. Upon the termination of the insured status of any such depository institution, its deposits shall

thereupon cease to be insured and the depository institution shall thereafter be relieved of all future obligations to the Corporation, including the obligation to pay future assessments.

(q) Assumption of liabilities. Whenever the liabilities of an insured depository institution for deposits shall have been assumed by another insured depository institution or depository institutions, whether by way of merger, consolidation, or other statutory assumption, or pursuant to contract (1) the insured status of the depository institution whose liabilities are so assumed shall terminate on the date of receipt by the Corporation of satisfactory evidence of such assumption; (2) the separate insurance of all deposits so assumed shall terminate at the end of six months from the date such assumption takes effect or, in the case of any time deposit, the earliest maturity date after the six-month period. Where the deposits of an insured depository institution are assumed by a newly insured depository institution, the depository institution whose deposits are assumed shall not be required to pay any assessment with respect to the deposits which have been so assumed after the assessment period in which the assumption takes effect.

(r) Action or proceeding against foreign bank; basis; removal of officer or other person; venue; service of process.

(1) Except as otherwise specifically provided in this section, the provisions of this section shall be applied to foreign banks in accordance with this subsection.

(2) An act or practice outside the United States on the part of a foreign bank or any officer, director, employee, or agent thereof may not constitute the basis for any action by any officer or agency of the United States under this section, unless--

(A) such officer or agency alleges a belief that such act or practice has been, is, or is likely to be a cause of or carried on in connection with or in furtherance of an act or practice within any one or more States which, in and of itself, would constitute an appropriate basis for action by a Federal officer or agency under this section; or

(B) the alleged act or practice is one which, if proven, would, in the judgment of the Board of Directors, adversely affect the insurance risk assumed by the Corporation.

(3) In any case in which any action or proceeding is brought pursuant to an allegation under paragraph (2) of this subsection for the suspension or removal of any officer, director, or other person associated with a foreign bank, and such person fails to appear promptly as a party to such action or proceeding and to comply with any effective order or judgment therein, any failure by the foreign bank to secure his removal from any office he holds in such bank and from any further participation in its affairs shall, in and of itself, constitute grounds for termination of the insurance of the deposits in any branch of the bank.

(4) Where the venue of any judicial or administrative proceeding under this section is to be determined by reference to the location of the home office of a bank, the venue of such a proceeding with respect to a foreign bank having one or more branches or agencies in not more than one judicial district or other relevant jurisdiction shall be within such jurisdiction. Where such a bank has branches or agencies in more than one such jurisdiction, the venue shall be in the jurisdiction within which the branch or branches or agency or agencies involved in the proceeding are located, and if there is more than one such jurisdiction, the venue shall be proper in any such jurisdiction in which the proceeding is brought or to which it may appropriately be transferred.

(5) Any service required or authorized to be made on a foreign bank may be made on any branch or agency located within any State, but if such service is in connection with an action or

proceeding involving one or more branches or one or more agencies located in any State, service shall be made on at least one branch or agency so involved.

(s) Compliance with monetary transaction recordkeeping and report requirements.

(1) Compliance procedures required. Each appropriate Federal banking agency shall prescribe regulations requiring insured depository institutions to establish and maintain procedures reasonably designed to assure and monitor the compliance of such depository institutions with the requirements of subchapter II of chapter 53 of title 31, United States Code [*31 USCS §§ 5311* et seq.].

(2) Examinations of depository institution to include review of compliance procedures.

(A) In general. Each examination of an insured depository institution by the appropriate Federal banking agency shall include a review of the procedures required to be established and maintained under paragraph (1).

(B) Exam report requirement. The report of examination shall describe any problem with the procedures maintained by the insured depository institution.

(3) Order to comply with requirements. If the appropriate Federal banking agency determines that an insured--

(A) has failed to establish and maintain the procedures described in paragraph (1); or

(B) has failed to correct any problem with the procedures maintained by such depository institution which was previously reported to the depository institution by such agency,

the agency shall issue an order in the manner prescribed in subsection (b) or (c) requiring such depository institution to cease and desist from its violation of this subsection or regulations prescribed under this subsection.

(t) Authority of FDIC to take enforcement action against insured depository institutions and institution-affiliated parties.

(1) Recommending action by appropriate Federal banking agency. The Corporation, based on an examination of an insured depository institution by the Corporation or by the appropriate Federal banking agency or on other information, may recommend in writing to the appropriate Federal banking agency that the agency take any enforcement action authorized under section 7(j) [*12 USCS § 1817(j)*], this section, or section 18(j) [*12 USCS § 1828(j)*] with respect to any insured depository institution, any depository institution holding company, or any institution-affiliated party. The recommendation shall be accompanied by a written explanation of the concerns giving rise to the recommendation.

(2) FDIC's authority to act if appropriate Federal banking agency fails to follow recommendation. If the appropriate Federal banking agency does not, before the end of the 60-day period beginning on the date on which the agency receives the recommendation under paragraph (1), take the enforcement action recommended by the Corporation or provide a plan acceptable to the Corporation for responding to the Corporation's concerns, the Corporation may take the recommended enforcement action if the Board of Directors determines, upon a vote of its members, that--

(A) the insured depository institution is in an unsafe or unsound condition;

(B) the institution or institution-affiliated party is engaging in unsafe or unsound practices, and the recommended enforcement action will prevent the institution from continuing such practices;

(C) the conduct or threatened conduct (including any acts or omissions) poses a risk to the Deposit Insurance Fund, or may prejudice the interests of the institution's depositors[;] or

(D) the conduct or threatened conduct (including any acts or omissions) of the depository institution holding company poses a risk to the Deposit Insurance Fund, provided that such authority may not be used with respect to a depository institution holding company that is in generally sound condition and whose conduct does not pose a foreseeable and material risk of loss to the Deposit Insurance Fund;

(3) Effect of exigent circumstances.

(A) Authority to act. The Corporation may, upon a vote of the Board of Directors, and after notice to the appropriate Federal banking agency, exercise its authority under paragraph (2) in exigent circumstances without regard to the time period set forth in paragraph (2).

(B) Agreement on exigent circumstances. The Corporation shall, by agreement with the appropriate Federal banking agency, set forth those exigent circumstances in which the Corporation may act under subparagraph (A).

(4) Corporation's powers; institution's duties. For purposes of this subsection--

(A) the Corporation shall have the same powers with respect to any insured depository institution and its affiliates as the appropriate Federal banking agency has with respect to the institution and its affiliates; and

(B) the institution and its affiliates shall have the same duties and obligations with respect to the Corporation as the institution and its affiliates have with respect to the appropriate Federal banking agency.

(5) Requests for formal actions and investigations.

(A) Submission of requests. A regional office of an appropriate Federal banking agency (including a Federal Reserve bank) that requests a formal investigation of or civil enforcement action against an insured depository institution or institution-affiliated party shall submit the request concurrently to the chief officer of the appropriate Federal banking agency and to the Corporation.

(B) Agencies required to report on requests. Each appropriate Federal banking agency shall report semiannually to the Corporation on the status or disposition of all requests under subparagraph (A), including the reasons for any decision by the agency to approve or deny such requests.

(6) Powers and duties with respect to depository institution holding companies. For purposes of exercising the backup authority provided in this subsection--

(A) the Corporation shall have the same powers with respect to a depository institution holding company and its affiliates as the appropriate Federal banking agency has with respect to the holding company and its affiliates; and

(B) the holding company and its affiliates shall have the same duties and obligations with respect to the Corporation as the holding company and its affiliates have with respect to the appropriate Federal banking agency.

[(7)](6) Referral to Bureau of Consumer Financial Protection. Subject to subtitle B of the Consumer Financial Protection Act of 2010 [*12 USCS § 5511* et seq.], each appropriate Federal banking agency shall make a referral to the Bureau of Consumer Financial Protection when the Federal banking agency has a reasonable belief that a violation of an enumerated consumer law, as defined in the Consumer Financial Protection Act of 2010, has been committed by any insured depository institution or institution-affiliated party within the jurisdiction of that appropriate Federal banking agency.

(u) Public disclosures of final orders and agreements.

(1) In general. The appropriate Federal banking agency shall publish and make available to the public on a monthly basis--

(A) any written agreement or other written statement for which a violation may be enforced by the appropriate Federal banking agency, unless the appropriate Federal banking agency, in its discretion, determines that publication would be contrary to the public interest;

(B) any final order issued with respect to any administrative enforcement proceeding initiated by such agency under this section or any other law; and

(C) any modification to or termination of any order or agreement made public pursuant to this paragraph.

(2) Hearings. All hearings on the record with respect to any notice of charges issued by a Federal banking agency shall be open to the public, unless the agency, in its discretion, determines that holding an open hearing would be contrary to the public interest.

(3) Transcript of hearing. A transcript that includes all testimony and other documentary evidence shall be prepared for all hearings commenced pursuant to subsection (i). A transcript of public hearings shall be made available to the public pursuant to *section 552 of title 5, United States Code*.

(4) Delay of publication under exceptional circumstances. If the appropriate Federal banking agency makes a determination in writing that the publication of a final order pursuant to paragraph (1)(B) would seriously threaten the safety and soundness of an insured depository institution, the agency may delay the publication of the document for a reasonable time.

(5) Documents filed under seal in public enforcement hearings. The appropriate Federal banking agency may file any document or part of a document under seal in any administrative enforcement hearing commenced by the agency if disclosure of the document would be contrary to the public interest. A written report shall be made part of any determination to withhold any part of a document from the transcript of the hearing required by paragraph (2).

(6) Retention of documents. Each Federal banking agency shall keep and maintain a record, for a period of at least 6 years, of all documents described in paragraph (1) and all informal enforcement agreements and other supervisory actions and supporting documents issued with respect to or in connection with any administrative enforcement proceeding initiated by such agency under this section or any other laws.

(7) Disclosures to Congress. No provision of this subsection may be construed to authorize the withholding, or to prohibit the disclosure, of any information to the Congress or any committee or subcommittee of the Congress.


(v) Foreign investigations.

(1) Requesting assistance from foreign banking authorities. In conducting any investigation, examination, or enforcement action under this Act [*12 USCS §§ 1811* et seq.], the appropriate Federal banking agency may--

(A) request the assistance of any foreign banking authority; and

(B) maintain an office outside the United States.

(2) Providing assistance to foreign banking authorities.

(A) In general. Any appropriate Federal banking agency may, at the request of any foreign banking authority, assist such authority if such authority states that the requesting authority is conducting an investigation to determine whether any person has violated, is violating, or is

about to violate any law or regulation relating to banking matters or currency transactions administered or enforced by the requesting authority.

(B) Investigation by Federal banking agency. Any appropriate Federal banking agency may, in such agency's discretion, investigate and collect information and evidence pertinent to a request for assistance under subparagraph (A). Any such investigation shall comply with the laws of the United States and the policies and procedures of the appropriate Federal banking agency.

(C) Factors to consider. In deciding whether to provide assistance under this paragraph, the appropriate Federal banking agency shall consider--

(i) whether the requesting authority has agreed to provide reciprocal assistance with respect to banking matters within the jurisdiction of any appropriate Federal banking agency; and

(ii) whether compliance with the request would prejudice the public interest of the United States.

(D) Treatment of foreign banking authority. For purposes of any Federal law or appropriate Federal banking agency regulation relating to the collection or transfer of information by any appropriate Federal banking agency, the foreign banking authority shall be treated as another appropriate Federal banking agency.

(3) Rule of construction. Paragraphs (1) and (2) shall not be construed to limit the authority of an appropriate Federal banking agency or any other Federal agency to provide or receive assistance or information to or from any foreign authority with respect to any matter.

(w) Termination of insurance for money laundering or cash transaction reporting offenses.

(1) In general.

(A) Conviction of title 18 offenses.

(i) Duty to notify. If an insured State depository institution has been convicted of any criminal offense under section 1956 or 1957 of title 18, United States Code, the Attorney General shall provide to the Corporation a written notification of the conviction and shall include a certified copy of the order of conviction from the court rendering the decision.

(ii) Notice of termination; pretermination hearing. After receipt of written notification from the Attorney General by the Corporation of such a conviction, the Board of Directors shall issue to the insured depository institution a notice of its intention to terminate the insured status of the insured depository institution and schedule a hearing on the matter, which shall be conducted in all respects as a termination hearing pursuant to paragraphs (3) through (5) of subsection (a).

(B) Conviction of title 31 offenses. If an insured State depository institution is convicted of any criminal offense under section 5322 or 5324 of title 31, United States Code, after receipt of written notification from the Attorney General by the Corporation, the Board of Directors may initiate proceedings to terminate the insured status of the insured depository institution in the manner described in subparagraph (A).

(C) Notice to State supervisor. The Corporation shall simultaneously transmit a copy of any notice issued under this paragraph to the appropriate State financial institutions supervisor.

(2) Factors to be considered. In determining whether to terminate insurance under paragraph (1), the Board of Directors shall take into account the following factors:

(A) The extent to which directors or senior executive officers of the depository institution knew of, or were involved in, the commission of the money laundering offense of which the institution was found guilty.

(B) The extent to which the offense occurred despite the existence of policies and procedures within the depository institution which were designed to prevent the occurrence of any such offense.

(C) The extent to which the depository institution has fully cooperated with law enforcement authorities with respect to the investigation of the money laundering offense of which the institution was found guilty.

(D) The extent to which the depository institution has implemented additional internal controls (since the commission of the offense of which the depository institution was found guilty) to prevent the occurrence of any other money laundering offense.

(E) The extent to which the interest of the local community in having adequate deposit and credit services available would be threatened by the termination of insurance.

(3) Notice to State banking supervisor and public. When the order to terminate insured status initiated pursuant to this subsection is final, the Board of Directors shall--

(A) notify the State banking supervisor of any State depository institution described in paragraph (1), where appropriate, at least 10 days prior to the effective date of the order of termination of the insured status of such depository institution, including a State branch of a foreign bank; and

(B) publish notice of the termination of the insured status of the depository institution in the Federal Register.

(4) Temporary insurance of previously insured deposits. Upon termination of the insured status of any State depository institution pursuant to paragraph (1), the deposits of such depository institution shall be treated in accordance with subsection (a)(7).

(5) Successor liability. This subsection shall not apply to a successor to the interests of, or a person who acquires, an insured depository institution that violated a provision of law described in paragraph (1), if the successor succeeds to the interests of the violator, or the acquisition is made, in good faith and not for purposes of evading this subsection or regulations prescribed under this subsection.

(6) "Senior executive officer" defined. The term "senior executive officer" has the same meaning as in regulations prescribed under section 32(f) of this Act [*12 USCS § 1831i(f)*].

**28 U.S.C. § 2344**

§ 2344.  Review of orders; time; notice; contents of petition; service

On the entry of a final order reviewable under this chapter [*28 USCS §§ 2341* et seq.], the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States. The petition shall contain a concise statement of--
   (1) the nature of the proceedings as to which review is sought;
   (2) the facts on which venue is based;
   (3) the grounds on which relief is sought; and
   (4) the relief prayed.

The petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency. The clerk shall serve a true copy of the petition on the agency and on the Attorney General by registered mail, with request for a return receipt.