ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 13-5228

_____

**TRUMPETER SWAN SOCIETY, et al.**
*Plaintiff-Appellants,*

*v.*

**ENVIRONMENTAL PROTECTION AGENCY, et al.,**
*Defendants-Appellees.*

_____

Appeal from the U.S. District Court for the
District of Columbia, No. 1:12cv929
(Hon. Emmet G. Sullivan).

_____

**FINAL BRIEF FOR THE FEDERAL DEFENDANTS-APPELLEES**

ROBERT G. DREHER
Acting Assistant Attorney General

*Of counsel:*
ANDREW SIMONS
 U.S. Environmental Protection
  Agency
 Office of General Counsel
 Washington, D.C.

J. DAVID GUNTER II
JUSTIN D. HEMINGER
JENNIFER SCHELLER NEUMANN
 U.S. Department of Justice
 Environment & Natural Res. Div.
 P.O. 7415
 Washington, DC 20044
 (202) 514-2767
 jennifer.neumann@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for the Federal Defendants-Appellees hereby certifies as follows:

## A. Parties, Intervenors, and Amici

The parties, intervenors, and amici appearing before the District Court and in this Court are:

Trumpeter Swan Society

Cascades Raptor Center

Center for Biological Diversity

Loon Lake Loon Association

Preserve Our Wildlife Organization

Tennessee Ornithological Society

Western Nebraska Resources Council

United States Environmental Protection Agency

Lisa P. Jackson, former Administrator, EPA

Gina McCarthy, Administrator, Environmental Protection Agency

National Shooting Sports Foundation, Inc.

Association of Battery Recyclers, Inc.

National Rifle Association of America

Safari Club International

There were no amici curiae.

## B. Ruling under Review

Appellants appeal the final judgment of the Honorable Emmet G. Sullivan of the U.S. District Court for the District of Columbia. On May 23, 2013, the district court entered a minute order stating that the complaint was dismissed for "the reasons stated on the record during the hearing held on May 23, 2013." On July 22, 2013, the district court entered a separate document stating the same. JA 169. A transcript of the oral ruling containing the district court's reasoning can be found at JA 172-205.

## C. Related Cases

This case was not previously before this Court or any other court except for the District Court for the District of Columbia from which this appeal was taken. Counsel for the Federal Defendants-Appellees is not aware of any related cases pending in this Court or any other court.

ROBERT G. DREHER
Acting Assistant Attorney General

s/ Jennifer S. Neumann
JENNIFER SCHELLER NEUMANN

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUES ...............................................................2

STATUTORY AND REGULATORY BACKGROUND ...........................4

    A.    EPA's authority to regulate under TSCA ...............................4

    B.    TSCA's citizen petition provision ...........................................6

STATEMENT OF FACTS .........................................................................7

    A.    The original petition and suit ..................................................7

    B.    The 2012 submission ............................................................10

    C.    The present suit ....................................................................12

STANDARD OF REVIEW........................................................................14

SUMMARY OF ARGUMENT .................................................................15

ARGUMENT ............................................................................................18

    I.    Plaintiff's suit was properly dismissed because the 2012
    submission was not a "petition" within the meaning of
    Section 21, but rather an impermissible attempt to
    circumvent the statute of limitations on seeking review of
    the 2012 petition ...................................................................18

        A.    EPA's statutory interpretation that not all submissions
        are "petitions" within the meaning of Section 21 is
        consistent with the statute.........................................19

            1.    Language and structure of TSCA .......................20

2.  Legislative history ...............................24

3.  Law in this Circuit concerning rulemaking
    petitions..............................................26

B.  EPA's letter merits deference......................29

1.  The formality of EPA's interpretation ...............29

2.  EPA's past practice ...............................32

3.  Alternatively, EPA's interpretation should be
    upheld under Skidmore .......................38

C.  EPA properly exercised its discretion in determining
    that CBS's 2012 submission was not a new Section 21
    petition ........................................39

1.  The supposed new information was not relevant
    or new ....................................41

2.  Relief requested ...............................46

3.  Timing of request...............................48

4.  Identity of requesting parties ..........................49

II.  TSCA Section 3(2)(b)(v) excludes shot and bullets from
EPS's authority to regulate "chemical substances."............51

A.  The plain language of section 3(2)(B)(b)(v) precludes
    EPA's regulation of bullets and shot...........................52

B.  EPA's construction of 15 U.S.C. § 2602(2)(B)(v) merits
    deference even if the plain language of the statute is
    ambiguous ...................................58

C.    The legislative history supports EPA's interpretation
      rather than Plaintiffs' interpretation ........................... 62

CONCLUSION ............................................................ 65

# TABLE OF AUTHORITIES

**Cases:**

*Alaska Dep't of Envtl. Conservation v. EPA*,
  540 U.S. 461 (2004) ........................................................ 60

*Albertson v. FCC*,
  182 F.2d 397 (D.C. Cir. 1950) ....................................... 24

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500, 516 (2006) ............................................... 21

*Artis v. Greenspan*,
  158 F.3d 1301 (D.C. Cir. 1998) ..................................... 14

*Ashcroft v. Iqball*,
  556 U.S. 662 (2009) ................................................. 15, 52

*Barnhart v. Walton*,
  535 U.S. 212 (2002) ................................................. 29, 30

*Bloate v. United States*,
  130 S. Ct. 1245 (2010) ................................................... 63

*Brown v. Fifth Third Bank*,
  730 F.3d 698 (7th Cir. 2013) ........................................... 2

*Cal. Miwok Tribe v. United States*,
  515 F.3d 1262 (D.C. Cir. 2008) ..................................... 31

*CBD v. Jackson*,
  815 F. Supp. 2d 85 (D.D.C. 2011) .............................. 9, 21

\* *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ..................... 13, 19, 20, 29, 30, 31, 38, 58-60

\* Authorities upon which we chiefly rely are marked with asterisks.

*Citizens Exposing Truth About Casinos v. Kempthorne,*
492 F.3d 460, 467 (D.C. Cir. 2007) ................................................. 31

*Citizens for a Better Environment v. Reilly,*
33 ERC (BNA) 1460, 1991 U.S. Dist. LEXIS 7203, 1991 WL 95040
(N.D. Ill., May 24, 1991) ................................................. 34

*City of Arlington v. FCC,*
133 S. Ct. 1863 (2013) ................................................. 59

*City of Rochester v. Bond,*
603 F.2d 927 (D.C.Cir.1979) ................................................. 21

*Eagle-Picher Indus., Inc. v. U.S. E.P.A.,*
759 F.2d 905 (D.C. Cir. 1985) ................................................. 21

*Fed. Election Comm'n v. Nat'l Rifle Ass'n,*
254 F.3d 173 (D.C. Cir. 2001) ................................................. 31, 59

*Fed. Ex. Corp. v. Holowecki,*
552 U.S. 389 (2008) ................................................. 60, 61

*GTE Serv. Corp. v. FCC,*
782 F.2d 263 (D.C. Cir. 1986) ................................................. 32

*Herbert v. Nat'l Academy of Sciences,*
974 F.2d 192 (D.C. Cir. 1992) ................................................. 15

*Hettinga v. United States,*
677 F.3d 471 (D.C. Cir. 2012) ................................................. 15

*Hibbs v. Winn,*
542 U.S. 88 (2004) ................................................. 21

* *ICC v. Brotherhood of Locomotive Eng'rs,*
482 U.S. 270 (1987) ................................................. 27, 28, 43

*Mylan Labs, Inc. v. Thompson*,
　　389 F.3d 1272 (D.C. Cir. 2004) ...................................................... 31

*NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*,
　　513 U.S. 251 (1995) ............................................................ 20, 31

\* *Nat'l Bank of Davis v. Office of Comptroller of Currency*,
　　725 F.2d 1390 (D.C. Cir. 1984) ................................................ 18, 27

*S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*,
　　547 U.S. 370 (2006) .................................................................. 60

*Sebelius v. Auburn Reg'l Med. Ctr.*,
　　133 S. Ct. 817, 184 L. Ed. 2d 627 (2013) ...................................... 21

*Sierra Club v. Jackson*,
　　648 F.3d 848 (D.C. Cir. 2011) ................................................... 52

*Skidmore v. Swift & Co.*,
　　323 U.S. 134 (1944) ............................................... 13, 38, 39, 60, 61

*Southwestern Bell Tel. Co. v. FCC*,
　　180 F.3d 307 (D.C. Cir. 1999) ................................................... 28

*Tenn. Valley Mun. Gas Ass'n v. FERC*,
　　140 F.3d 1085 (D.C. Cir. 1998) .................................................. 30

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
　　529 F.3d 1352 (Fed. Cir. 2008) .................................................. 23

*United States ex rel. Eisenstein v. City of New York*,
　　556 U.S. 928 (2009) .................................................................. 54

*United States v. Braxtonbrown-Smith*,
　　278 F.3d 1348 (D.C. Cir. 2002) .................................................. 65

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*,
　　435 U.S. 519 (1978) .................................................................. 30

*Walker v. EPA*,
    802 F. Supp. 1568 (S.D. Tex. 1992) .................................... 33, 36, 37

**STATUTES:**

Administrative Procedure Act
    5 U.S.C. § 702 ...................................................................... 1

Toxic Substances Control Act
Pub. L. 94-469, 90 Stat. 2003 (1976) (Codified at 2601-2692) .................. 4
    15 U.S.C. § 2602 ................................................................ 59
    15 U.S.C. § 2602(2) .............................................................. 5
    15 U.S.C. § 2602(2)(B)(v) ............... 6, 8-11, 41, 47, 52, 53, 55, 58-64
    15 U.S.C. § 2602(8) .......................................................... 5, 52
    15 U.S.C. § 2603(a) ............................................................ 35
    15 U.S.C. § 2603(f)(2) ...................................................... 34, 35
    15 U.S.C. § 2605 ................................................................ 59
    15 U.S.C. § 2605(a) ................................................... 5, 6, 35, 52
    15 U.S.C. § 2605(a)(2) .......................................................... 4
    15 U.S.C. § 2605(c)(1) .......................................................... 5
    15 U.S.C. § 2607 ................................................................ 61
    15 U.S.C. § 2618 ................................................................ 24
    15 U.S.C. § 2620 ......................................................... 1, 9, 10
    15 U.S.C. § 2620(4)(A) ......................................................... 21
    15 U.S.C. § 2620(a) ......................................................... 6, 7, 8
    15 U.S.C. § 2620(b)(1) ...................................................... 6, 43
    15 U.S.C. § 2620(b)(3) .......................................................... 6
    15 U.S.C. § 2620(b)(4) ......................................................... 26
    15 U.S.C. § 2620(b)(4)(A) ............................................ 1, 7, 9, 18
    15 U.S.C. § 2620(b)(4)(B) ............................................... 7, 9, 22

Internal Revenue Code
26 U.S.C. § 4181 ..................................................... 5, 6, 8, 52-59

28 U.S.C. § 1291 ....................................................................... 2

## RULES and REGULATIONS:

27 C.F.R. § 53.11 .................................................................. 53
27 C.F.R. § 53.61(b)(2) ........................................................ 54
27 C.F.R. § 53.61(b)(5)(ii) ................................................... 58
27 C.F.R. § 53.91(a) ............................................................. 54
27 C.F.R. § 53.61(b)(1) ........................................................ 56

Fed. R. App. P. 4(a)(2) ........................................................... 2

Fed. R. Civ. P. 12(b)(1) .................................................... 14, 52
Fed. R. Civ. P. 12(b)(6) .................................................... 15, 52
Fed. R. Civ. P. 58 ................................................................... 2

47 Fed. Reg. 26,992 (June 22, 1982) .................................... 62
47 Fed. Reg. 37,258 (Aug. 25, 1982) ..................................... 36
47 Fed. Reg. 46,723 (Oct. 20, 1982) ..................................... 36
49 Fed. Reg. 43,764 (Oct. 31, 1984) ................................ 34, 35
50 Fed. Reg. 30,517 (July 26, 1985) ..................................... 35
56 Fed. Reg. 23,534 (May 22, 1991) ................................ 36, 37
59 Fed. Reg. 48,436 (Sept. 21, 1994) .................................... 36
68 Fed. Reg. 848 (Jan. 7, 2003) ............................................ 62
75 Fed. Reg. 58,377 (Sept. 24, 2010) ................. 8, 34, 48, 53, 59
75 Fed. Reg. 70,246 (Nov. 17, 2010) ................................. 8, 34

## LEGISLATIVE HISTORY:

H.R. Conf. Rep. No. 1679, 94th Cong., 2nd Sess. 98, 99 (1976),
    reprinted in 1976 U.S.C.C.A.N. 4491 ............................ 25

H. Rep. No. 94-1341, at 418 (1976) ...................................... 63

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Br. | Brief |
| CBD | Center for Biological Diversity |
| Dkt. | District court docket entry |
| EPA | Environmental Protection Agency |
| IRS | Internal Revenue Service |
| TSCA | Toxic Substances Control Act |
| TTB | Tobacco Tax and Trade Bureau |

## JURISDICTIONAL STATEMENT

The plaintiff-appellant conservation organizations,[1] sought review of their request that the Environmental Protection Agency (EPA) initiate a rulemaking to regulate lead bullets and shot under the Toxic Substances Control Act (TSCA). EPA rejected the request because it was not a petition under Section 21 of TSCA, 15 U.S.C. § 2620, but rather essentially a request to reconsider EPA's denial of an earlier Section 21 petition. JA 14. Plaintiffs alleged that the district court had jurisdiction under TSCA, 15 U.S.C. § 2620(b)(4)(A), and the Administrative Procedure Act (APA), 5 U.S.C. § 702. JA 15. Several organizations intervened in the action as defendants.

On May 23, 2013, in an oral ruling, the district court granted motions to dismiss the complaint for lack of subject matter jurisdiction filed by EPA and the defendant-intervenors. JA 172-205. The same day, the court entered a minute order stating that the complaint was dismissed for "the reasons stated on the record during the hearing held

---

[1] The plaintiff-appellants are Trumpeter Swan Society, Cascades Raptor Center, Center for Biological Diversity, Loon Lake Loon Association, Preserve Our Wildlife Organization, Tennessee Ornithological Society, and Western Nebraska Resources Council.

on May 23, 2013." The minute order states that it was signed by Judge Sullivan. Courts are not in agreement about whether or under what circumstances a minute order can constitute the final judgment required by Fed. R. Civ. P. 58. *See Brown v. Fifth Third Bank*, 730 F.3d 698, 700-01 (7th Cir. 2013) (collecting cases). This Court need not decide whether the minute order entered here was a final judgment because the plaintiffs requested that the district court enter a separate document containing the final judgment, which the court did on July 22, 2013. Dkt. 42, JA 169. Plaintiffs filed a notice of appeal on July 22, 2013. Dkt. 43. That appeal was timely regardless of which order qualifies as a "final decision" within the meaning of 28 U.S.C. § 1291 because it was filed within 60 days of both the May 23, 2013 minute order and the July 22, 2013 order.[2]

## STATEMENT OF THE ISSUES

Within the span of two years, EPA first received a petition requesting that the agency regulate lead bullets and shot pursuant to

---

[2] Plaintiffs' notice of appeal was entered on the docket before the court's July 22, 2013 order. To the extent that the notice of appeal was premature, the rules of appellate procedure provide that such a notice of appeal "is treated as filed on the date of and after the entry" of judgment. Fed. R. App. P. 4(a)(2).

Section 21 of TSCA (the 2010 petition), followed by a second, almost identical submission, which again requested that EPA regulate lead bullets and shot (the 2012 submission).  Plaintiffs filed the 2012 submission approximately six months after a court determined that the petitioners' suit challenging the denial of the 2010 petition was barred by the 60-day limitations period in Section 21.  EPA rejected the 2012 submission because it was so similar to the 2010 petition that it was not a new "petition" within the meaning of Section 21 of TSCA.  EPA reached this conclusion because, among other reasons, two of the original petitioners were also parties on the 2012 submission, the 2012 submission was effectively identical to the 2010 petition, and the 2012 submission did not contain meaningful new information.  This appeal presents the following issues:

1. Whether EPA properly determined that the 2012 submission was not a separate petition within the meaning of TSCA, but rather an attempt to circumvent the 60-day limitations period on seeking review of the first petition?

2. If the 2012 submission should have been treated as a new Section 21 petition, whether the judgment should be affirmed

on the alternative ground that EPA lacks authority to regulate bullets and shot under TSCA, and therefore that Plaintiffs' complaint fails to state a claim on which relief can be granted?

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted TSCA in 1976 to prevent unreasonable risks of injury to human health or the environment associated with the manufacture, processing, distribution in commerce, use, or disposal of chemical substances and mixtures. *See* TSCA, Pub. L. 94-469, 90 Stat. 2003 (1976) (codified at 15 U.S.C. §§ 2601-2692).

### A.     EPA's authority to regulate under TSCA

Pursuant to Section 6 of TSCA, if EPA finds "that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents or will present an unreasonable risk of injury to health or the environment," the agency "shall by rule" regulate that substance "to the extent necessary to protect adequately against such risk using the least burdensome requirements."  15 U.S.C. § 2605(a). The requirements that EPA may impose include prohibition of "the manufacture, processing, or distribution in commerce of such substance

or mixture for . . . a particular use." *Id.* § 2605(a)(2).  In considering

whether to promulgate such a requirement, EPA "shall consider and

publish a statement with respect to" several factors:

> (A) the effects of such substance or mixture on health and the magnitude of the exposure of human beings to such substance or mixture,

> (B) the effects of such substance or mixture on the environment and the magnitude of the exposure of the environment to such substance or mixture,

> (C) the benefits of such substance or mixture for various uses and the availability of substitutes for such uses, and

> (D) the reasonably ascertainable economic consequences of the rule, after consideration of the effect on the national economy, small business, technological innovation, the environment, and public health.

*Id.* § 2605(c)(1).

EPA may regulate only "chemical substance[s]" and "mixture[s]"

under Section 6.  *Id.* § 2605(a).  TSCA defines "chemical substance" as

"any organic or inorganic substance of a particular molecular identity,"

and a "mixture" as a "combination of two or more chemical substances."

*See id.* §§ 2602(2), (8).  Congress also created several statutory

exclusions from the definition of a chemical substance.  Among other

things, the statutory definition of "chemical substance" specifically

excludes "any article the sale of which is subject to the tax imposed by

section 4181 of the Internal Revenue Code of 1986 (determined without regard to any exemptions from such tax provided by section 4182 or 4221 or any other provision of such code)."  15 U.S.C. § 2602(2)(B)(v). Section 4181 of the Internal Revenue Code imposes a sales tax on "[p]istols," "[r]evolvers," and "[f]irearms (other than pistols and revolvers), shells, and cartridges."  26 U.S.C. § 4181.

## B.    TSCA's citizen petition provision

TSCA contains a citizen petition provision.  Section 21 allows "[a]ny person" to petition EPA "to initiate a proceeding for the issuance . . . of a rule under" certain enumerated sections of TSCA, including Section 6.  15 U.S.C. § 2620(a).  Thus, TSCA's citizen petition provision is one of limited scope.  Not every petition that EPA receives requesting that the agency take action under TSCA is a Section 21 petition.

Section 21 further provides that the petition must "set forth the facts which it is claimed establish that it is necessary to issue . . . a rule."  *Id.* § 2620(b)(1).  When a citizen files a petition for rulemaking pursuant to TSCA, EPA has 90 days to either grant or deny the petition.  *Id.* § 2620(b)(3).

If EPA denies the petition, the agency must publish the reasons for the denial in the Federal Register. *Id.* If EPA denies the petition or fails to respond within 90 days, the petitioner "may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." *Id.* § 2620(b)(4)(A). TSCA provides that the petition to initiate a rulemaking is considered by the court in a *de novo* proceeding with the standard of review being preponderance of the evidence. *Id.* § 2620(b)(4)(B). However, to obtain judicial review, Congress mandated that a petitioner must file a civil action "within 60 days after the Administrator's denial" or failure to act. *Id.* § 2620(b)(4)(A).

## STATEMENT OF FACTS

### A.   The original petition and suit.

On August 3, 2010, five organizations, including current Plaintiff-appellant Center for Biological Diversity (CBD) and Project Gutpile, petitioned EPA to regulate lead shot and bullets under Section 6 of TSCA, requesting that EPA ban their manufacture, processing, and distribution in commerce. JA 21. The petition also requested that EPA issue a similar ban for lead fishing sinkers. *Id.*

EPA denied the request regarding lead shot and bullets on August 27, 2010, on the ground that "TSCA does not provide the Agency with authority to address lead shot and bullets . . . due to the exclusion found in TSCA § 3(2)(B)(v)." JA 42. EPA subsequently published the explanation of its reasons for denying the request to regulate lead bullets and shot in the Federal Register. 75 Fed. Reg. 58,377 (Sept. 24, 2010). The Federal Register notice reiterated that EPA lacks statutory authority to regulate lead shot and bullets under TSCA because of the exclusion of articles taxed under 26 U.S.C. § 4181 from TSCA's definition of "chemical substance" in 15 U.S.C. § 2602(2)(B)(v). The agency noted that Section 4181 imposes a tax on shells and cartridges and that "[b]ullets and shot, and any lead within them, are contained in shells and cartridges and are therefore excluded from the chemical substance definition" under a "plain reading of TSCA." 75 Fed. Reg. at 58,378. Separately, on November 4, 2010, EPA denied the petitioners' request for regulation of lead in fishing gear and published its rationale in the Federal Register. See 75 Fed. Reg. 70,246 (Nov. 17, 2010).

On November 23, 2010, three of the petitioners, including the Center for Biological Diversity and Project Gutpile, filed a complaint in

the District Court for the District of Columbia regarding both of these denials. *CBD v. Jackson*, No. 10-2007 (D.D.C.). EPA filed a motion to dismiss the claim regarding lead shot and bullets on two grounds: first, that shot and bullets are exempted from TSCA pursuant to 15 U.S.C. § 2602(2)(B)(v); and second, that the request for regulation of shot and bullets was a discrete petition for purposes of TSCA Section 21 that CBD had failed to challenge within 60 days of EPA's denial as required by the statute. *See CBD v. Jackson*, 815 F. Supp. 2d 85, 87 (D.D.C. 2011). On September 29, 2011, the district court granted the motion to dismiss the shot and bullets claim on timeliness grounds, holding that the 60-day time limit for suit under 15 U.S.C. § 2620 is jurisdictional, and holding that EPA had properly acted on the requests for regulation of lead in fishing gear and ammunition separately, thus triggering two separate 60-day periods for suit under 15 U.S.C. § 2620(b)(4)(A). *Id.* at 91-95. The suit then proceeded on the fishing gear claim alone until the plaintiffs voluntarily dismissed their complaint. *CBD v. Jackson*, No. 10-2007, Order (D.D.C. Apr. 30, 2012). None of the plaintiffs, including CBD, appealed the district court's ruling that its claim with respect to lead shot and bullets was untimely.

### B. The 2012 submission

After the district court held that the challenge to EPA's petition response was untimely, CBD and co-plaintiff Project Gutpile tried again. On March 13, 2012, less than six months after the district court dismissed their civil action on the first petition, those parties, along with 99 other entities, submitted to EPA a virtually identical "petition" under TSCA Section 21. JA 43. Whereas the 2010 petition requested that EPA impose a complete regulatory ban on the manufacture, processing, and distribution in commerce of lead shot and bullets under Section 6 of TSCA, the 2012 submission advocated for such a ban in the context of a more general request for EPA to regulate bullets and shot containing lead used in hunting and shooting sports under Section 6. JA 58, 60. CBD designated itself the "[l]ead petitioner." JA 48. The parties asserted that the 2012 submission presented "significant new information" in the form of legislative history relating to the ammunition exclusion in 15 U.S.C. § 2602(2)(B)(v). JA 46. However, the bulk of the 2012 submission, including the core evidence and arguments offered as ostensibly supporting regulation of lead shot and

bullets, was essentially copied from the 2010 petition with only superficial alterations.

Accordingly, EPA decided to treat the 2012 submission as essentially a request for reconsideration of the 2010 petition and rejected it by a letter to CBD dated April 9, 2012.  JA 150-51.  EPA explained that CBD and Project Gutpile had submitted an "almost identical" petition in 2010, which EPA had denied because "the statutory exclusion found in TSCA § 3(2)(B)(v) precludes EPA from regulating lead in ammunition under TSCA."  JA 150.  EPA noted that although the 2012 submission "argue[d] the issue of EPA's statutory authority slightly differently," the agency had been aware of and considered the 30-year old legislative history described in the 2012 submission at the time it denied the 2010 petition and that any other new material in the 2012 submission added nothing of significance to the previous petition.  *Id*.  In light of EPA's conclusion that it lacked statutory authority to regulate lead shot and bullets, the agency explained that any differences in the information presented by or relief requested in the 2012 submission were irrelevant.  *Id*.  Finally, EPA noted that of the 400 references listed in the 2012 submission, only 20

reports and articles were not cited in the 2010 petition, and of those, only six were published after the 2010 petition was submitted. JA 151. EPA found that the 2012 submission did not present any "previously unavailable, non-cumulative" information that would have caused EPA to reconsider its denial of the 2010 petition. *Id.*; *see also* JA 150. EPA concluded that, since "[t]he 2012 submission is substantially the same as the petition to regulate lead bullets and shot submitted in 2010," the agency did not consider the 2012 submission "to be a new petition cognizable under section 21." JA 150.

Alternatively, EPA stated that even if the 2012 submission could be considered a new Section 21 petition, the agency would deny it for the same reasons as the 2010 petition. JA 151. Because EPA had already published the rationale for rejecting the 2010 petition in the Federal Register, and because the agency did not consider the 2012 submission to be a distinct Section 21 petition, it did not publish the reasons for rejecting the 2012 submission in the Federal Register. *Id.*

## C. The present suit.

On June 7, 2012, CBD and six co-plaintiffs filed a complaint challenging EPA's treatment of the 2012 submission and seeking *de*

*novo review* of the 2012 submission.  *See* JA 16-19 (amended complaint).

EPA moved to dismiss the complaint on two grounds: (1) that it was an

impermissible attempt to circumvent the statutory time limit for

seeking judicial review of the 2010 petition, and (2) that EPA lacks

authority to regulate lead shot and bullets under TSCA.  The

defendant-intervenors also filed motions to dismiss the complaint.  The

same district court judge that presided over CBD's challenge to the

denial of the first petition held a hearing on May 23, 2013, and issued

an oral ruling at the hearing dismissing the complaint because the 2012

submission was an impermissible attempt to avoid the statutory time

limit on challenging EPA's denial of the original petition.  JA 199, 203.

The court reasoned that neither TSCA nor its legislative history

address how EPA is to treat requests for reconsideration or how

multiple submissions seeking similar relief are to be treated under

Section 21, and thus TSCA is ambiguous on that issue.  JA 199.  The

court concluded that EPA's decision to treat the 2012 submission as a

request for reconsideration satisfied either the *Chevron* or *Skidmore*

standards for according deference to an agency interpretation of a

statute.  JA 192, 197-200.  In reaching that conclusion, the district court specifically noted that EPA "determined that the relief requested in the two petitions was nearly identical and contained little new information," the groups submitted the second request to EPA about six months after the court dismissed CBD's lawsuit over EPA's denial of the 2010 petition, and CBD was the lead party in both instances. JA 197-200.  Because the district court concluded that it lacked jurisdiction over the complaint, it did not reach the question of whether EPA had statutory authority to regulate lead bullets and shot.  JA 174.

On May 23, 2013, the district court also entered a minute order granting the motions to dismiss the complaint.  On July 9, 2013, the plaintiffs filed a motion requesting the district court to enter a separate judgment.  Dkt. 42.  On July 22, 2013, the court entered another order granting the motions to dismiss.  JA 169.  Also on July 22, 2013, the plaintiffs filed a notice of appeal.  Dkt. 43.

## STANDARD OF REVIEW

This Court generally reviews the district court's dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) *de novo*.  *See Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C. Cir. 1998).

Where "necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record." *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqball*, 556 U.S. 662, 678 (2009) (citation omitted). A court does not need to "accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

## SUMMARY OF ARGUMENT

Plaintiffs' complaint fundamentally seeks to evade the 60-day limitations period for requesting review of petitions for rulemaking under Section 21. The district court properly dismissed the complaint for lack of jurisdiction because EPA reasonably concluded that Plaintiffs' 2012 request to regulate lead bullets and shot was not a "petition" within the meaning of Section 21 of TSCA at all. Determining whether EPA's conclusion was reasonable has two components: (1) was EPA's legal interpretation that TSCA permits it, in appropriate circumstances, to conclude that a rulemaking request is

not a cognizable "petition" within the meaning of Section 21 permissible and (2) was EPA's conclusion here that the 2012 submission was so similar to CBD's 2010 rulemaking petition that it was essentially a request for reconsideration reasonable.

TSCA does not speak directly to the question of the definition of a "petition." However, EPA's interpretation that a later, duplicative submission is not a Section 21 petition deserves deference because that interpretation preserves the meaning in and function of Section 21's 60-day limitations period for seeking review of a petition. Plaintiffs' interpretation is that EPA must treat any request for rulemaking as an entirely new "petition" subject to all of Section 21's provisions, including its provision for a *de novo* proceeding for a court to consider the petition. Plaintiffs' interpretation would render the statute of limitations meaningless because any petitioner that failed to timely bring suit after the denial of an initial petition could resubmit the same or a nearly identical petition and seek review of EPA's treatment of that petition.

Plaintiffs have failed to show that EPA's conclusion that the 2012 submission was in essence a request for reconsideration of the 2010 petition was arbitrary or capricious given the totality of circumstances.

Plaintiffs are incorrect that the 2012 submission contained meaningfully new information or requested materially different relief. Plaintiffs are also incorrect that the addition of new parties to the 2012 submission required EPA to treat the submission as a "petition" when two of the five original petitioners were also petitioners on the 2012 submission. Finally, the timing of the second request, which was submitted six months after CBD's suit seeking review of the original petition was dismissed as untimely, also supports the reasonableness of EPA's finding that the 2012 submission was effectively a request for reconsideration and therefore not a "petition" triggering the requirements of Section 21.

Alternatively, this Court can affirm the judgment because TSCA forbids EPA from doing what Plaintiffs want: regulating lead bullets and shot. TSCA excludes firearms, cartridges, and shells from EPA's authority to regulate. Bullets and shot are components of cartridges and shells, therefore EPA cannot regulate them.

# ARGUMENT

**I.** **Plaintiffs' suit was properly dismissed because the 2012 submission was not a "petition" within the meaning of Section 21, but rather an impermissible attempt to circumvent the statute of limitations on seeking review of the 2010 petition.**

The citizen petition provision of TSCA Section 21 creates an important opportunity for public participation in the rulemaking process, provided that petitioners comply with the limits that Section 21 imposes. Those limits include a 60-day window in which a petitioner may seek judicial review following EPA's denial of or failure to respond to a petition. 15 U.S.C. § 2620(b)(4)(A). This Court has held that plaintiffs may not circumvent such jurisdictional limits through filing successive petitions for agency action. *See Nat'l Bank of Davis v. Office of Comptroller of Currency*, 725 F.2d 1390, 1391-92 (D.C. Cir. 1984). TSCA does not unambiguously define the term "petition," but it does make clear that once EPA acts on a petition, a petitioner may not seek judicial review outside the 60-day window.

For that reason, EPA has discretion in appropriate circumstances to determine that a subsequent submission by a party is not a cognizable Section 21 petition. If a plaintiff that failed to seek judicial

review after EPA denied an earlier petition could obtain that review simply by filing a subsequent identical petition, then the 60-day window would have no meaning. This creates two questions for the Court: First, is EPA's interpretation that the statute gives it discretion to determine if a submission is a Section 21 "petition" reasonable? And second, did EPA reasonably determine that Plaintiffs' 2012 submission was not a separate "petition?"

> **A.  EPA's statutory interpretation that not all submissions are "petitions" within the meaning of Section 21 is consistent with the statute.**

The first question for a court reviewing an agency's interpretation of a statute is whether "the intent of Congress is clear" as to "the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, (1984). If so, "that is the end of the matter." *Id*. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. If the agency's reading "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design," it receives "'controlling weight.'"

*NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995) (quoting *Chevron*, 467 U.S. at 844).

Plaintiffs ask the Court to decide this case at *Chevron* step one, arguing that the plain language of TSCA compels their interpretation that EPA must mechanically "grant or deny" any submission styled as a petition for rulemaking. Br. 9. But the language and structure of TSCA, congressional intent, and the case law of this Court show that Congress did not specifically define what a "petition" is for purposes of TSCA Section 21, leaving an ambiguity for EPA to resolve. EPA has applied a reasonable interpretation given the language and structure of the statue that should be upheld under *Chevron* step two.

### 1. Language and structure of TSCA

Here, the internal structure of Section 21 makes clear that Congress did not mandate, as Plaintiffs contend, that EPA must apply the Section 21 decision-making process to any filing styled as a petition for rulemaking. The statute does not define "petition," but rather gives the agency latitude to determine what constitutes a petition. Any other interpretation, including Plaintiffs', would read out of the statute the

limitations period for seeking judicial review of a petition for rulemaking following a denial or failure to respond by EPA.

"'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181–186 (rev. 6th ed.2000)). TSCA requires that any civil suit following the denial of a petition for rulemaking "shall be filed within 60 days after the Administrator's denial of the petition." 15 U.S.C. § 2620(4)(A). This Court has held that similar time limitations are jurisdictional and "reflect 'a deliberate congressional choice to impose statutory finality on agency orders, a choice [courts] may not second-guess.'" *Eagle-Picher Indus., Inc. v. U.S. E.P.A.*, 759 F.2d 905, 911 (D.C. Cir. 1985) (quoting *City of Rochester v. Bond*, 603 F.2d 927, 935 (D.C.Cir.1979)); *see also CBD v. Jackson*, 815 F. Supp. 2d 85, 91 n.1 (D.D.C. 2011).[3]

---

[3] The Supreme Court has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)). Courts should look to "whether Congress has 'clearly state[d]' that the rule is jurisdictional." *Id.* (quoting *Arbaugh*, 546 U.S.

*(Cont.)*

Plaintiffs' interpretation of TSCA Section 21 would read the 60-day limitations period out of the statute. A party that failed to timely seek judicial review of its rulemaking petition could refile the original petition, have it denied on the same grounds, file suit within 60 days of the new denial, and receive judicial review. Moreover, TSCA provides that for a petition to initiate rulemaking, the petition shall be "considered by the court in a de novo proceeding." 15 U.S.C. § 2620(b)(4)(B). TSCA also prescribes the standard the court shall apply when reviewing such petitions:

> If the petitioner demonstrates to the satisfaction of the court by a preponderance of the evidence that . . . there is a reasonable basis to conclude that the issuance of such a rule or order is necessary to protect health or the environment against an unreasonable risk of injury to health or the environment[;] the court shall order the Administrator to initiate the action requested by the petitioner.

*Id.*

---

at 515–516). Even if this Court were to determine that Congress did not intend the 60-day limitations period or the requirement that plaintiffs challenge a "petition" to be jurisdictional, but rather an affirmative defense or part of the cause of action, the district court's judgment should still be affirmed under Rule 12(b)(6), failure to state a claim on which relief can be granted. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

Because Section 21 provides that a civil action for review of a petition to initiate rulemaking would consider only whether the petition showed that such a rule is "necessary" to protect against an "unreasonable risk" posed by an alleged toxic substance, EPA may be limited in its ability to argue that a court should not look at the merits of the second petition because it is essentially a resubmission of a prior petition and the statute of limitations has already run on the prior petition. Such an outcome would render the 60-day limitations period in Section 21 meaningless. This would particularly burden EPA and the courts because it would encourage petitioners – whether or not they had sought judicial review of an earlier petition – to file successive petitions in the hopes of obtaining favorable *de novo* review.

Although TSCA does not expressly provide for requests to reconsider EPA denials of Section 21 petitions, "the courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008); *see also Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir.

1950) ("The power to reconsider is inherent in the power to decide.").

No other provision of TSCA provides the authority for EPA to reconsider its own decisions denying petitions for rulemaking. In order to give proper effect to the time bar in Section 21, EPA interprets TSCA to allow it, in certain circumstances, to treat the refiling of a request for rulemaking as essentially a request for reconsideration.

## 2. *Legislative history*

The House Conference Report accompanying TSCA's enactment noted a similar concern regarding petitions seeking amendment or repeal of an existing rule. Existing rules would have already been subject to potential judicial review pursuant to TSCA Section 19, 15 U.S.C. § 2618, and Congress did not want EPA to be subject to endless petitions to amend or repeal such rules. Specifically, Congress explained that:

> the conferees do not intend that the Administrator be subjected to constant petitions challenging rules or orders for which adequate judicial review is provided under section 19 [15 U.S.C. § 2618, providing for judicial review of TSCA regulations]. Therefore, if the Administrator denies a petition to amend or repeal [a TSCA regulation issued under] section 4, 5(e), 6, or 8, the conference [provision] permits review of such denial only under the Administrative Procedure Act.

H.R. Conf. Rep. No. 1679, 94th Cong., 2nd Sess. 98, 99 (1976), reprinted in 1976 U.S.C.C.A.N. 4491, 4584. Congress's concern about endless litigation if petitions to amend or repeal an existing rule were subject to *de novo* review supports EPA's interpretation of TSCA: once a petition for issuance of a new rule has been given an opportunity for judicial review under Section 21, a resubmission should not get a proverbial "second bite of the apple" for *de novo* review. Otherwise, under Plaintiffs' interpretation, EPA could "be subjected to constant petitions" challenging decisions for which judicial review had already been made available (even if, as in this case, the opportunity was not timely utilized).

Plaintiffs' contention that Congress's intent supports their position is misplaced. Plaintiffs cite to authorities supporting the general idea that when enacting TSCA, Congress wanted to make sure that government was responsive to the concerns of citizens and that EPA fulfilled its duties under the statute. Br. 12-14. However, Congress placed limits on the right of citizens to petition the agency and did not, as Plaintiffs claim, "determine[] that *access* was paramount." Br. 14. One of the major limitations on the right of citizens to petition

the agency is the strict 60-day time limit on seeking judicial review of a petition for rulemaking that EPA has denied or failed to respond to. 15 U.S.C. § 2620(b)(4). CBD failed to act in a timely manner to avail itself of this right of judicial review when EPA denied its 2010 petition and cannot now nullify that time limit by submitting a virtually identical submission and adding new parties.

Plaintiffs' opening brief ignores the effect of its interpretation on Section 21's 60-day limitations period. Plaintiffs' interpretation is fundamentally inconsistent with Congress's goals in enacting that provision. As the district court recognized, Plaintiffs' interpretation would "render the statute of limitations in Section 21 meaningless." JA 199 (internal quotation marks omitted). In contrast, EPA's decision to treat the 2012 submission as essentially a request for reconsideration rather than a new TSCA Section 21 petition gives proper effect to the time bar in Section 21 and is consistent with the statute.

### 3. Law in this Circuit concerning rulemaking petitions

Precluding EPA from ever construing a resubmission as a request to reconsider would allow parties like Plaintiffs to seek judicial review

of petitions after Section 21's time limit expired. This would run counter to well-established precedent dictating that "where a party petitions an agency for reconsideration . . . on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of . . . [the prior] order is not itself reviewable.'" *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 280 (1987) (citation omitted; second and third alterations in original). This Court has specifically rejected use of such a maneuver to restart a statutory review period. *Nat'l Bank of Davis*, 725 F.2d at 1391-92 (dismissing petition for review as untimely where petitioner sought to challenge Comptroller's order outside of applicable thirty day limitations period, based on filing of a motion for reconsideration three months after original order issued).

EPA's consideration of, among other factors, whether a second submission presents "significant newly discovered, non-cumulative material," is in accordance with precedent of both this Court and the Supreme Court that a party must present new evidence or other changed circumstances in order to obtain judicial review of the denial of a petition to reconsider. *Bhd. of Locomotive Eng'rs*, 482 U.S. at 284;

*Southwestern Bell Tel. Co. v. FCC*, 180 F.3d 307, 311 (D.C. Cir. 1999)

("[A] petition seeking review of an agency's decision not to reopen a

proceeding is not reviewable unless the petition is based upon new

evidence or changed circumstances.").  In fact, the Supreme Court

specifically sought to ensure that such reconsideration requests do not

operate as a means for "extending indefinitely the time within which . . .

agency orders can be judicially overturned." *Bhd. of Locomotive Eng'rs*,

482 U.S. at 279; *see also id.* at 281 (refusing to allow for the "perpetual

availability of review" in the face of a statutory limitations period "by

the mere device of filing a suggestion that the agency has made a

mistake and should consider the matter again").

Given these principles, it is clear that Congress did not intend to

allow indefinite judicial review when EPA denies a Section 21 petition.

EPA's interpretation – that Section 21 of TSCA does not require it to

treat a resubmission as a new "petition" in circumstances like these

where a party is attempting to evade the limitations period – is

consistent with this intent.  Any other result would nullify Congress's

intent in providing that a Section 21 petition be subject to judicial

review only for a 60-day window and would remove an important

constraint on a party's ability to embroil the courts and EPA in repetitive litigation.

## B.   EPA's letter merits deference.

Plaintiffs argue that, even if the meaning of "petition" is not established by the plain language of TSCA, EPA's interpretation is not entitled to deference because it is not sufficiently formal (Br. 14 n.4), or because it conflicts with EPA's past practice, (Br. 10-12).  Plaintiffs are incorrect, and EPA's interpretation is entitled to deference as a "permissible construction of the statute."  *See Chevron*, 467 U.S. at 843, 844.

### 1.  *The formality of EPA's interpretation*

Although EPA's interpretation of Section 21 was contained in a letter, it still merits *Chevron* deference.  That an agency "previously reached its interpretation through means less formal than 'notice and comment' rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise its due."  *Barnhart v. Walton*, 535 U.S. 212, 221 (2002).  In determining whether deference under *Chevron* is appropriate, courts look to "the interstitial nature of the legal question, the related expertise of the Agency, the importance

of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time." *Id*. at 222.

Applying these factors here supports according EPA's interpretation *Chevron* deference. EPA was addressing an "interstitial" legal issue – the threshold question of what constitutes a "petition" for purposes of TSCA Section 21 – the agency has relevant expertise in administering Section 21 over the course of the last 30 years and this interpretation is central to the application of Section 21 with respect to enforcement of the jurisdictional time bar on Section 21 citizen suits. Deference is particularly appropriate when the agency is resolving procedural questions raised by the statute regarding "when and how to hear and decide the matters that come before it." *Tenn. Valley Mun. Gas Ass'n v. FERC*, 140 F.3d 1085, 1088 (D.C. Cir. 1998); *see also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable

of permitting them to discharge their multitudinous duties." (internal

quotation marks and citations omitted)).

The Supreme Court and this Court have repeatedly deferred

under *Chevron* to agency interpretations contained in letters.  *See*, *e.g.*,

*NationBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*,

513 U.S. 251, 254-55, 257 (1995); *Cal. Miwok Tribe v. United States*, 515

F.3d 1262, 1266 (D.C. Cir. 2008); *Mylan Labs, Inc. v. Thompson*, 389

F.3d 1272, 1279-80 (D.C. Cir. 2004); *Fed. Election Comm'n v. Nat'l Rifle

Ass'n*, 254 F.3d 173, 185-86 (D.C. Cir. 2001); *see also Citizens Exposing

Truth About Casinos ("CETAC") v. Kempthorne*, 492 F.3d 460, 467 (D.C.

Cir. 2007) (publication in the Federal Register of interpretation and

reasoning originally contained in agency letter "evidence of a *Chevron-

worthy* interpretation").

Finally, the Supreme Court's analysis in *United States v. Mead

Corp.*, which focused on the existence of indications that "Congress

would expect the agency to be able to speak with the force of law," also

supports deference to EPA's interpretation contained in the letter

denying the 2012 submission.  In this case, Congress delegated

authority to EPA to resolve Section 21 petitions and in doing so gave no

indication that it intended to disturb EPA's "inherent power[] to control its own docket." *See GTE Serv. Corp. v. FCC*, 782 F.2d 263, 274 n.12 (D.C. Cir. 1986).

## 2. *EPA's past practice*

In addition to the interstitial and procedural nature of the question of statutory interpretation at issue here, EPA's past practice supports deference to its interpretation of "petition." EPA previously relied on this same interpretation and that interpretation was upheld by a federal court. In *Walker v. EPA*, the plaintiff filed a petition requesting that EPA amend its regulations defining the toxic chemical polychlorinated biphenyls ("PCBs") to exclude certain forms of PCBs. *See* No. 87-3552, slip op. at 2 (S.D. Tex. Oct. 15, 1990) (reproduced in Addendum). EPA denied that petition and Walker did not bring suit within 60 days. Add. 33. Walker then filed a second submission, which EPA treated as a re-filing of the first petition and rejected because it contained no significant new information. *Id.* Like Plaintiffs here, Walker challenged EPA's decision on the ground that the second submission "was a separate and distinct petition that must be accepted or denied pursuant to § 2620." *Id.*

The District Court for the Southern District of Texas noted that TSCA does not define the term "petition" and held that "[t]he decision to treat a submission as a petition is within the discretion of the EPA," to be reviewed under the "arbitrary and capricious" standard of the APA, looking to "the relief sought, the identity of the requesting parties, the temporal relationship between submissions, and the presence of new information." Add. 33-34; *see also Walker v. EPA*, 802 F. Supp. 1568, 1572 n.6, 1573 (S.D. Tex. 1992) (summarizing earlier decision). Applying those factors, the court concluded that EPA's action was not arbitrary or capricious. As *Walker* also explained, such a reconsideration request "cannot revive an expired jurisdictional statute of limitations," lest it "render the statute of limitations meaningless, permitting a plaintiff to circumvent the limitations period by submitting a repetitive request for identical action on an identical issue long after the time period has expired." Add. 34. The present case involves closely analogous facts, and the Court should apply the same persuasive reasoning as the *Walker* court.

Plaintiffs' appellate brief contends that, in other cases, EPA previously addressed some successive petitions on the merits. *See*

Br. 10-12.  All but one of the situations cited by Plaintiffs are obviously different from the present case.  For example, CBD's reliance on the statement in EPA's denial of CBD's original petition to regulate lead bullets and shot that "'EPA is required to grant or deny the petition'" is misplaced because EPA was responding to an original petition, not a resubmission.  Br. 11 (quoting 75 Fed. Reg. 70,247; 75 Fed Reg. 58,378).

In *Citizens for a Better Environment v. Reilly*, 33 ERC (BNA) 1460, 1991 U.S. Dist. LEXIS 7203, 1991 WL 95040 (N.D. Ill., May 24, 1991), the differences between the first and second petitions (both of which EPA considered on the merits) went beyond what Plaintiffs characterize as the "level of specificity of the request."  Br. 11.  At the very least, the two petitions requested action under different sections of TSCA with different standards.

The first petition requested regulation under Section 4(f)(2) or Section 6(a) and a "'full field investigation'" conducted pursuant to Section 21(b)(2).  49 Fed. Reg. 43,764 (Oct. 31, 1984) (quoting petition).  Those sections apply when "there may be . . . a significant risk of serious or widespread harm to human beings from cancer, gene mutations, or birth defects," 15 U.S.C. § 2603(f)(2), or when " there is a

reasonable basis to conclude that . . . a chemical substance or mixture . . . presents or will present an unreasonable risk of injury to health or the environment." *Id*. § 2605(a).

In contrast, the second petition at issue in *Citizens* requested testing pursuant to Section 4(a).  50 Fed. Reg. 30,517 (July 26, 1985). Section 4(a) says EPA shall require testing where a chemical substance or mixture "may present an unreasonable risk of injury to health or the environment," is likely to enter the environment in substantial quantities or there may be significant human exposure, and there is insufficient data and experience with the substance or mixture. 15 U.S.C. § 2603(a).  The standard for EPA action was therefore different, and EPA denied the request for different reasons.  *Compare* 49 Fed. Reg. at 43,765 *with* 50 Fed. Reg. at 30,518.  Given the differences in the petitions and the legal standards to be applied, *Citizens* is clearly distinguishable from the present case.

Also distinguishable is EPA's denial of General Electric's and Dow Chemical's petitions for rulemaking to exempt certain kinds of PCBs from regulation.  *See* Br. 12.  In both instances, EPA denied the petitions because it believed it would be dealing with the same issue in

an ongoing, larger rulemaking that was "likely to affect hundreds of companies" and "w[ould] be a major undertaking," so EPA declined to initiate separate rulemaking proceedings on the companies' petitions "to avoid duplic[a]tion of regulatory efforts." Polychlorinated Biphenyls (PCBs); Denial of Citizen's Petition, 47 Fed. Reg. 46,723 (Oct. 20, 1982); *see also* Denial of Citizen's Petition, 47 Fed. Reg. 37,258 (Aug. 25, 1982) (Dow). In neither instance did EPA rule on the merits of the petitions. Therefore it is not surprising that the agency invited the companies to, as Plaintiffs put it, "resubmit their petitions . . . without requiring that they not be substantially the same." Br. 12.

Finally, Plaintiffs' observation that EPA previously published in the Federal Register the denial of a petition that failed to request relief available pursuant to Section 21 is irrelevant to the situation here. *See* Br. 12, (citing 59 Fed. Reg. 48,436 (Sept. 21, 1994), discussing petition relating to sewage over flow that did not request any action by EPA).

Only in *Walker v. EPA*, 802 F. Supp. 1568 (S.D. Texas 1992), did EPA address the merits of a petition that was similar to a previously submitted petition. Neither the district court opinion in that case, nor EPA's Federal Register notice (56 Fed. Reg. 23,534 (May 22, 1991)),

reveals why EPA decided not to exercise its discretion to deem the

petitioner's third submission a request for reconsideration when EPA

had previously concluded that the second submission by the same

petitioner was not a separate "petition" from the first submission, *see*

*supra* at 32-33.  EPA did not indicate that it was abandoning its

interpretation that such discretion was permitted under the statute.[4]

In fact, EPA's decision denying the petitioner's February 6, 1991

petition references his "similar" March 27, 1987 petition, but not the

repetitive July 31, 1987 submission that EPA had previously refused to

treat as a separate "petition."  56 Fed. Reg. at 23,535; *cf. Walker*, 802 F.

Supp. at 1572-73.

In any event, EPA's reasons for addressing that particular petition

on the merits are not dispositive because EPA has discretion to treat

subsequent submissions as Section 21 petitions based on the specific

facts before it.  As noted above, an agency always has the discretionary

---

[4] EPA's public record denying Walker's third submission references at least one study that was not available at the time of the first and second submissions in 1987.  *See* 56 Fed. Reg. at 23,538 (citing Lilienthal, H., et al. Behavioral Effects of Pre- and Postnatal Exposure to a Mixture of Low Chlorinated PCBs in Rats.  Fundamental and Applied Toxicology. 15, 457-467 (1990)).

power to reconsider its own rules or to reopen the record of its prior decisions. It may do so on its own initiative, or in response to a petition for rulemaking. Here, in contrast, Plaintiffs seek to mandate that EPA reconsider a prior decision by submitting a "petition" for rulemaking that is effectively identical to a petition that EPA had recently denied. But the fact that EPA might use a successive request for rulemaking as the entry point to a reconsideration of its own rules does not mean that the agency abandoned its statutory interpretation that, in appropriate circumstances, a resubmission can effectively be treated as a request for reconsideration of a prior petition, not a new Section 21 petition.

Accordingly, EPA's reasonable interpretation of the statutory term "petition" should be given *Chevron* deference

### 3. Alternatively, EPA's interpretation should be upheld under Skidmore.

Even if this Court concludes that EPA's interpretation is not entitled to *Chevron* deference, it is surely entitled to *Skidmore* deference because it was thoroughly considered, its reasoning is valid, and its approach is consistent with earlier pronouncements (namely, EPA's position on Walker's second petition and in the *Walker* litigation).

*See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also supra* at 32-33. In short, EPA's reasonable interpretation should prevail.

### C. EPA properly exercised its discretion in determining that CBD's 2012 submission was not a new Section 21 petition.

The district court correctly concluded that it lacked jurisdiction under Section 21 of TSCA because EPA reasonably found that Plaintiffs' 2012 submission was not a "petition" within the meaning of Section 21 but instead was essentially a request for reconsideration. EPA concluded that the 2012 submission was not a "new petition cognizable under section 21" based upon a thorough review of the totality of the circumstances related to the resubmission.

With respect to the dispositive issue in EPA's evaluation of the original petition – EPA's authority to regulate – the 2012 submission "contains no new information that was not previously available to CBD and Project Gutpile" and "EPA was aware of, and considered" the legislative history cited in the 2012 submission. JA 150. With respect to the relief requested, EPA explained that although the 2012 submission requested "somewhat" different relief in that it sought initiation of a rulemaking on the topic and advocated for a nationwide

ban while the 2010 petition specifically requested a nationwide ban, that was a "distinction without a substantive difference" given the grounds for the denial of the 2010 petition. *Id*.

EPA also explained that the 2012 submission contained no new substantive information. EPA noted that the 2012 submission was "almost identical" to the original petition and contained "almost verbatim the same information regarding toxicity and exposure" for lead shot and bullets. *Id*. Of the 400 citations in the 2012 submission, a mere 20 were not included in the original petition and only 6 of those appeared to post-date the original petition. JA 151. Finally, EPA stated that it did not think that the 60-day limitations period for seeking review of citizen petitions could be "avoided by resubmitting virtually the same petition, with the addition of parties, less than two years after the submission of the first petition." *Id*. In these circumstances, EPA's decision to treat the 2012 submission as essentially a request for reconsideration and not a new petition cognizable under Section 21 was reasonable. The first *Walker* decision is the only other court opinion to consider an EPA conclusion that a supposed petition for rulemaking was not cognizable as a Section 21

petition.  *Walker* looked to similar factors and properly concluded that in the totality of the circumstances, EPA had reasonably construed the submission.  *See* Add. 34.

Plaintiffs contend that EPA's treatment of the 2012 submission was arbitrary and capricious because of four alleged differences between the two submissions: new information in the 2012 submission, different relief requested, new petitioners, and the timing of the 2012 submission.  Plaintiffs fail to show that EPA's conclusion was arbitrary or capricious considering all the circumstances present here.

### 1. The supposed new information was not relevant or new.

EPA denied the original petition based on a straightforward question of statutory interpretation, concluding that it lacked authority to regulate lead shot and bullets because they were excluded from the definition of "chemical substance" under TSCA Section 3(2)(B)(v). Accordingly, in assessing the virtually identical 2012 submission, the agency reasonably determined that any differences between the two petitions were not substantive because the only relevant information added to the 2012 submission regarding the proper interpretation of Section 3(2)(B)(v) was 30-year-old legislative history that CBD and

Project Gutpile could have presented at the time of their original petition and that EPA actually did know about and consider at that time.  JA 150.

Plaintiffs criticize EPA's consideration of whether the 2012 submission included material new information on the question of whether EPA has statutory authority to regulate lead shot and bullets and contend that the focus should be on the "substance and content of the petitions . . . not the agency's response."  Br. 16.  However, EPA properly considered whether there were *material* differences between the two submissions and in this case, reasonably determined that the lack of new information on EPA's authority to regulate lead bullets and shot weighed in favor of the 2012 submission not being a new petition.  JA 150.  If EPA could not take into account the grounds on which it had denied a prior petition, a petitioner could create a "new" petition by making superficial alterations or adding irrelevant or cumulative evidence and avoid the 60-day limitations period on the original petition.

The only supposedly new statutory interpretation information Plaintiffs' brief points to is legislative history information (Br. 20), but

not only was that information known to EPA, but it also is thirty years old and so could and should have been discussed in the original petition. *See* JA 150.  To allow a party to submit 30-year-old information as "new" evidence would permit easy evasion of Section 21's 60-day limitations period.  TSCA Section 21 states that the petitioner must present "the facts which it is claimed establish" the need for regulation under TSCA.  15 U.S.C. § 2620(b)(1).  The Supreme Court has explained in similar circumstances that courts will review an agency's denial of an untimely motion to reconsider based on "facts which, *through no fault of his own*, the original proceeding did not contain."  *Bhd. of Locomotive Eng'rs*, 482 U.S. at 279 (emphasis added).  The original petition here could easily have cited any legislative history that CBD believed was relevant.  Finally, to the extent that Plaintiffs are implying that EPA was ignorant of the legislative history of the Act it administers when it denied the first petition, that position is untenable.

Plaintiffs also focus on supposedly new information about the risks of lead bullets and shot.  Br. 21.  Even if that information were "new," it is irrelevant to the question of whether EPA has statutory

authority to regulate lead bullets and shot, as the agency concluded in response to the 2010 petition.  *See* JA 151.

Regardless, the information is not new.  Only a few of the "new" citations actually post-date the 2010 petition.  *See id.*  Moreover, while Plaintiffs assert the *studies* are new, they do not explain what they meaningfully added to the *scientific evidence* beyond what was in the 2010 petition.   It is worth noting that the supposed new studies include a non-published, non-peer reviewed conference presentation[5] and what appears to be a two-page policy paper that does not include any original research and relies on sources no more recent than 2009.[6]  It is not clear what the 2011 "Spectacled Eider Recovery" document attributed to the U.S. Fish and Wildlife Service is, since no citation is provided (JA 147), but an Internet search based on that title and date leads to a two-page

---

[5] Finkelstein et al. 2011, JA 122.

[6] Raptor Research Foundation 2011, JA 140; *see also* Raptor Research Foundation White Paper (2011), http://www.raptorresearchfoundation.org/wp-content/uploads/2010/12/2011_lead_poisoning.pdf (last visited February 3, 2014).

pamphlet that also does not include any original research.[7]  Thus,

Plaintiffs' characterization of these documents as "new studies" is

unfounded.  Br. 21.  The other studies mentioned – California

Department of Fish and Game studies from 2009 and 2010; Kelly and

Johnson 2011; and Kelly *et al.* 2011 – relate to the effects of lead on

California condors, golden eagles, and turkey vultures.  The 2010

petition included 11 pages of discussion on these issues and the 2012

submission largely duplicated that discussion.[8]  Assuming arguendo

that the risks from lead bullets and shot were relevant given that EPA

had previously denied the 2010 petition because it lacks statutory

authority to regulate those items, Plaintiffs have failed to show that the

handful of new sources cited in the 2012 submission added anything

material.

Plaintiffs criticize EPA's finding that the 2012 submission

replicates large portions of the 2010 petition nearly verbatim (Br. 22),

---

[7] *See* http://alaska.fws.gov/fisheries/fieldoffice/fairbanks/pdf/Specs.pdf
(last visited February 3, 2014).

[8] *Compare* JA 30-41 *with* JA 71-83; *see also* Br. 21 (describing these
studies as providing "additional evidence" regarding arguments
presented in first petition).

but even a brief review of the two documents shows that whole paragraphs, pages, and even sections remain unchanged from one to the other, with only occasional insertions describing purportedly new information (along with deletions of those portions of the 2010 petition relating to the separate request for regulation of lead fishing gear). *Compare, e.g.*, JA 21-22, 24-41 *with* JA 44-46, 65-83. The lack of meaningful new information weighs in favor of EPA's conclusion that the 2012 submission was not a new petition within the meaning of TSCA Section 21.

### 2. *Relief requested*

Plaintiffs also contend that the 2012 submission should have been treated as a new petition because the scope of the rulemaking it requested was different than the original petition. The original petition requested a specific regulation – a nationwide ban. The 2012 submission requested more generally that EPA develop "regulations that adequately protect wildlife, human health and the environment," while continuing to advocate for a nationwide ban as the petitioners' preferred regulation. Br. 16 (internal quotation marks omitted). As EPA explained, however, this slight change was "a distinction without a

substantive difference" given that EPA's original decision was that it could not grant relief of any kind. JA 150.

Plaintiffs incorrectly assert that the slight change they made in the requested relief was "directly responsive to the agency's concerns." Br. 17. Plaintiffs base this assertion on the claim that "the scope of the ban raised perhaps the biggest concern with the *public*" because commenters said that such a rule would burden the military and law enforcement and that issue was "repeatedly raised in the press." Br. 17-18 (emphasis added). However, EPA did not base its denial of the first petition in whole or in part on the scope of the relief requested. Plaintiffs' assertion to the contrary is based solely on language in the letter denying that petition stating that "'EPA has determined that TSCA does not provide the Agency with authority to address lead shot and bullets *as requested in your petition* due to the exclusion found in TSCA § 3(2)(B)(v).'" Br. 18. The contention that this language meant that the original petition was denied because of the scope of the relief requested strains credulity, especially given that EPA explained in the accompanying Federal Register notice that its denial was based on "a lack of authority to regulate lead in bullets and shot under TSCA" –

with no mention of the particular relief requested by CBD. 75 Fed. Reg. at 58,378. Because EPA had already considered the only material issue raised by Plaintiffs' 2012 submission – the question whether EPA may regulate lead in bullets and shot *at all* – the supposed difference in the relief requested did not transform the 2012 submission into a new petition.

### 3. *Timing of request*

The timing of events leading up to the 2012 submission also suggest that it was not a new petition under TSCA Section 21, but a vehicle for CBD to evade the 60-day limitations period and re-file the suit that it was unsuccessful in bringing with respect to the 2010 petition. Plaintiffs incorrectly focus on whether some absolute amount of time elapsed between the two submissions and how that time compared to how EPA treated the potentially duplicative petitions for rulemaking submitted by Walker. Br. 19. Instead, as in *Walker*, EPA rationally determined that the period of time between CBD's repetitive submissions was a relevant fact to consider in evaluating whether the 2012 submission is a separate petition.

As explained *supra*, EPA's treatment of the submissions at issue in *Walker* did not establish a bright-line rule for when a future submission is, or is not, a separate "petition."  Neither the court decision nor EPA's Federal Register notice reveal why EPA decided to address Walker's third petition on the merits when it declined to so address Walker's second submission.  Here, Plaintiffs filed the 2012 submission just six months after the district court dismissed as untimely CBD's claim seeking review of the first petition.  The timing, along with the other factors EPA noted, suggests that the 2012 submission was a thinly disguised attempt to escape the effect of the district court's dismissal of the suit seeking review of the 2010 petition.

### 4.  *Identity of requesting parties.*

Finally, two of the five organizations that filed the 2010 petition – CBD and Project Gutpile – were also parties to the 2012 submission.  Indeed, CBD identified itself as the lead petitioner in the 2012 submission and has been the primary litigant in both cases.  *See* JA 48.  In arguing that EPA should have treated the 2012 submission as a "petition" under TSCA, Plaintiffs note that 99 other parties joined the

2012 submission.  Br. 18-19.  They contend that these additional parties make the 2012 submission a "petition" because TSCA emphasizes "open access to the public for the rulemaking process."  Br. 19.

Plaintiffs focus on the wrong end of the issue – which parties are different, as opposed to which are the same.  The concern is that a party may attempt to evade the 60-day time limit in Section 21 for seeking judicial review by filing a second petition.  The mere fact that CBD and Project Gutpile were able to recruit more organizations to join them in a second rulemaking request should not allow them to evade the effect of the district court's order dismissing as untimely their suit seeking review of the 2010 petition.  Otherwise, where a petitioner failed to seek judicial review of a petition within the requisite 60 days, the time bar in Section 21 would be effective only if the petitioner were unable to find any other person or organization to join it in re-filing the same petition – surely not what Congress would have intended.  Conversely, if any of the other parties that joined the 2012 submission wished to ensure that EPA considered their request, the way to go about it was to submit their own unique petition, not to join in a resubmission by petitioners who previously failed to seek timely judicial review of their original

petition.  The presence of new petitioners on a virtually identical petition does not show that EPA's conclusion that the 2012 submission was not a separate Section 21 petition was arbitrary or capricious given all the circumstances here.

***

For these reasons, EPA's judgment that the 2012 submission was simply a recapitulation of the 2010 petition was not arbitrary, capricious, an abuse of discretion, or contrary to law based on the record before it.  The district court correctly relied on EPA's reasonable determination that Plaintiffs' 2012 submission was not a "petition" under TSCA, but was instead an untimely attempt to seek judicial review of the first petition and correctly dismissed the complaint for lack of subject matter jurisdiction.

## II.    TSCA Section 3(2)(b)(v) excludes shot and bullets from EPA's authority to regulate "chemical substances."

Even if the district court erred in dismissing the complaint for lack of jurisdiction, the judgment may be upheld on the alternative ground that EPA does not have statutory authority to regulate lead shot and bullets under TSCA.

Plaintiffs want EPA to undertake a rulemaking pursuant to TSCA Section 6(a).  Section 6(a) applies only to chemical substances and mixtures thereof, 15 U.S.C. §§ 2605(a), 2602(8), but TSCA's definition of "chemical substance" excludes lead shot and bullets, *see* 15 U.S.C. § 2602(2)(B)(v).  Therefore the district court cannot as a matter of law grant the relief Plaintiffs seek and the dismissal can be upheld on that independent ground because the complaint fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (U.S. 2009) (court must determine whether allegations in complaint "plausibly give rise to an entitlement to relief"); *see also Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (dismissal pursuant to Rule 12(b)(1) could be affirmed if properly based on failure to state a claim under Rule 12(b)(6)).

## A. The plain language of section 3(2)(B)(b)(v) precludes EPA's regulation of bullets and shot.

The plain language of TSCA on this point is unambiguous:  EPA cannot regulate under Section 6 "any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1986 (determined without regard to any exemptions from such tax provided by section 4182 or 4221 or any other provision of such code)."  15 U.S.C.

§ 2602(2)(B)(v). Section 4181 imposes a tax on firearms, shells, and cartridges. 26 U.S.C. § 4181. The applicable regulation defines "shells and cartridges" as "any article consisting of a projectile, explosive, and container that is designed, assembled, and ready for use without further manufacture in firearms, pistols or revolvers." 27 C.F.R. § 53.11. Shot and bullets are typical projectiles used in such shells or cartridges, and as EPA found when denying CBD's first petition, "[b]ullets and shot, and any lead within them, are contained in shells and cartridges and are therefore excluded from the chemical substance definition." 75 Fed. Reg. at 58,378; *see also* Webster's Ninth New Collegiate Dictionary 1085 (1984) (defining "shell" (as used in firearms) as "a metal or paper case which holds the charge of powder and shot or bullet used with breech-loading small arms"); *see also id.* at 211 (defining cartridge as "containing a complete charge for a firearm," which would include the projectile).

Plaintiffs contend that the exclusion for firearms, cartridges, and shells in Section 2602(2)(B)(v) should be read to apply only to those items, not their component parts such as bullets and shot. Br. 23-24. However, the regulations, in addition to defining the projectile as part

of a shell or cartridge, make clear that the tax imposed on firearms, shells, and cartridges includes the value of their component parts, including shot and bullets. 27 C.F.R. § 53.61(b)(2) ("All component parts for firearms are includible in the price for which the article is sold."); 27 C.F.R. § 53.91(a) (the "'price' for which an article is sold includes the total consideration paid for the article"). Bullets and shot are sold with the cartridges and shells in most instances and included in the tax imposed by Section 4181 when sold together.

As a practical matter, therefore, EPA cannot regulate the major components of shells and cartridges – bullets and shot – without also regulating the shells and cartridges that are covered by Section 4181. Such a result would circumvent the purpose of Congress's exclusion and render the provision meaningless as EPA could impose restrictions on shells and cartridges by regulating the items that make them up, violating the basic canon of statutory construction that statutes should "be construed in a manner that gives effect to all of their provisions." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009).

Plaintiffs seek to undermine Congress's straightforward intent by pointing to an Internal Revenue Service (IRS) revenue ruling interpreting 26 U.S.C. § 4181. *See* Br. 25 (citing IRS Rev. Rul. 68-463, 1968-2 C.B. 507). The revenue ruling concludes that bullets and shot *when sold alone* are not subject to taxation under 26 U.S.C. § 4181. Plaintiffs say this means that the TSCA exclusion should not apply to bullets and shot because the revenue ruling predated TSCA and Congress should have been aware of the IRS's interpretation of Section 4181. Br. 25.

With this argument, Plaintiffs are trying to use an overly technical interpretation of the tax code to allow EPA to regulate items that Congress intended to exclude from TSCA. Congress knew that IRS interpretations of the tax code could create fine distinctions that make no difference to Congress's intended purpose, and attempted to avoid this result. TSCA provides that the scope of the shell and cartridge exclusion should be "determined without regard to any exemptions from such tax provided by section 4182 or 4221 or any other provision of such code." 15 U.S.C. § 2602(2)(B)(v). Thus, even if certain items may be exempted from taxation in some circumstances (such as bullets and

shot when sold separately), they are included within the scope of the exemption set out in Section 2602(2)(B)(v).  Formal distinctions may be necessary for the administration of tax law – for example, the IRS might seek to avoid taxing the same items twice when they are sold separately for later assembly – but those distinctions are irrelevant to the question of whether Congress intended EPA to regulate those items under TSCA.

Moreover, it is not true that Section 4181 exempts shot and bullets from taxation in all circumstances.  Section 4181 is currently administered by the U.S. Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau ("TTB"), rather than the IRS.  The TTB's regulations state:

> No tax is imposed by section 4181 of the Code on the sale of parts or accessories of firearms, pistols, revolvers, shells, and cartridges when sold separately or when sold with a complete firearm for use as spare parts or accessories. The tax does attach, however, to sales of completed firearms, pistols, revolvers, shells, and cartridges, and to sale of such articles that, although in knockdown condition, are complete as to all component parts.

27 C.F.R. §53.61(b)(1).  Thus, under current regulations, component parts of articles taxed under Section 4181 are exempt from taxation only when sold "separately" or "with a complete firearm for use as spare

parts or accessories." Likewise, the IRS ruling Plaintiffs rely on (Br. 25) indicates that only "sales of separate parts" of ammunition such as bullets are exempt from Section 4181; even if a shell or cartridge is broken down into its component parts at the time of sale, Section 4181 applies to the entire price of the product. IRS Rev. Rul. 68-463, 1968-2 C.B. 507. Conversely, the value of bullets and shot, when sold as part of a cartridge or shell, are included in the value of the item and thus subject to the tax as explained *supra*. Plaintiffs seek regulation of all lead bullets and shot used for hunting and sport, not just regulation of those items when sold separately from shells and cartridges. In fact, their primary concern is harm to animals from lead entering the environment *after being fired from a gun as part of a cartridge or shell*. *E.g.*, JA 44. Thus, the rulemaking Plaintiffs seek would necessarily require EPA to regulate bullets and shot when sold as part of cartridges and shells. Such a regulation would plainly violate TSCA.

Plaintiffs' interpretation would also lead to absurd results in other circumstances. If EPA could regulate bullets and shot under TSCA simply because in certain limited circumstances they may escape taxation (i.e., when sold separately), then the agency could also regulate

firearm barrels, trigger mechanisms, sights, buttstocks, magazines, or any of the other component parts of firearms that the TTB has expressly stated are not subject to taxation under section 4181 when sold separately from firearms. *See* 27 C.F.R. § 53.61(b)(5)(ii). Granting EPA regulatory jurisdiction over such items would effectively allow EPA to regulate firearms, shells, and cartridges in direct contradiction of the language of 15 U.S.C. § 2602(2)(B)(v) and 26 U.S.C. § 4181, simply because in certain circumstances the TTB presently exempts components of those articles from taxation.

In sum, EPA cannot regulate lead shot and bullets without circumventing the plain language of 15 U.S.C. § 2602(2)(B)(v).

**B.   EPA's construction of 15 U.S.C. § 2602(2)(B)(v) merits deference even if the plain language of the statute is ambiguous.**

The plain language of 15 U.S.C. § 2602(2)(B)(v) is unambiguous, but even if this Court concludes otherwise, EPA's interpretation of that exclusion deserves *Chevron* deference because it is permissible in light of the statutory text as explained above, TSCA is a statute that EPA has authority to interpret, and EPA's interpretation is consistent with past policy and practice.

EPA administers TSCA, including the regulation of "chemical substances" pursuant to 15 U.S.C. §§ 2602 and 2605. EPA's construction of 15 U.S.C. § 2602(2)(B)(v) deserves *Chevron* deference because it has the force of law as an EPA interpretation of a statute that Congress authorized the agency to administer. *See City of Arlington, v. FCC*, 133 S. Ct. 1863, 1868-69 (2013) (agencies receive *Chevron* deference when interpreting scope of their authority).

EPA previously set forth its interpretation of this provision in a Federal Register notice in response to the first petition. 75 Fed. Reg. at 58,378. That notice was published pursuant to the mechanism Congress created for EPA to decide whether to exercise its rulemaking authority at the behest of a citizen petition and so is deserving of deference. *See FEC v. NRA*, 254 F.3d at 186 (deferring to Federal Election Commission's advisory opinion in part because it was "the product of a statutorily created decision-making process"). Moreover, Plaintiffs had the opportunity to challenge that interpretation at the time EPA made its decision on their original rulemaking petition – an opportunity that they waived.

Plaintiffs contend that "the Treasury Department warrants deference in its interpretation of [Internal Revenue Code] § 4181, not EPA." However, EPA is not seeking deference for its interpretation of the Internal Revenue Code, but rather for its interpretation of the exclusion from the definition of "chemical substance" in TSCA Section 3(2)(B)(v) and whether that exclusion encompasses the constituent components of shells and cartridges. Congress tasked EPA, not Treasury, with interpreting TSCA. EPA's interpretation of what Congress meant when TSCA referred to Section 4181 deserves *Chevron* deference here.

Alternatively, EPA's construction of section 2602(2)(B)(v) merits deference as a "cogent administrative interpretation[]" under *Skidmore*. *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 488 (2004) (internal quotation marks and citation omitted). Such deference is especially justified where an agency's interpretation "confirms [the] . . . understanding of the everyday sense of the term" being construed. *S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 378 (2006); *see also Fed. Ex. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (upholding agency statutory interpretation that was "consistent with the statutory

framework"). EPA's interpretation of Section 2602(2)(B)(v) likewise relies on the "everyday sense" of the terms "shells" and "cartridges" as including the shot and bullets that are their major component parts. Moreover, EPA's construction of TSCA's exemption is rooted in the agency's specialized experience in implementing the statute, as noted above. *See Skidmore*, 323 U.S. at 139 (stating that deference is due to agency's policies where they are "based upon more specialized experience . . . than is likely to come to a judge in a particular case").

EPA's interpretation that the components of substances and articles expressly exempted by 15 U.S.C. § 2602(2)(B)(v) are also exempted is longstanding. *See Fed. Express*, 552 U.S. at 399 ("Under *Skidmore*, we consider whether the agency has applied its position with consistency."). For example, an EPA form instructing manufacturers about reporting information regarding chemical substances under 15 U.S.C. § 2607 states: "TSCA Regulable Quantities – Except under items 4 and 5, do not report any quantity of chemical substance that is manufactured or processed solely for use as: . . . firearms or ammunition . . . . The above are not TSCA regulable." JA 155; *see also*

47 Fed. Reg. 26,992, 27,002 (June 22, 1982) (original form contained same language).

Likewise, EPA stated in a 2003 Federal Register notice that "substances that are manufactured only for non-TSCA purposes, as described in TSCA section 3(2)(B), are exempt from all TSCA requirements," including "substances that are intended at the time of manufacture to be used for non-TSCA purposes (e.g., as a pesticide, as a drug)." 68 Fed. Reg. 848, 871 (Jan. 7, 2003). EPA thus has a longstanding interpretation that the components of substances and articles expressly exempted by 15 U.S.C. § 2602(2)(B)(v) are also exempted, and the Court should respect the agency's informed approach to administering that provision of TSCA.

**C.**   **The legislative history supports EPA's interpretation rather than Plaintiffs' interpretation.**

Plaintiffs seek to escape the effect of the straightforward prohibition in 15 U.S.C. § 2602(2)(B)(v) by citing a statement from TSCA's legislative history regarding the purported effect of that provision:

> [The House] Committee wishes to emphasize that it does not
> intend that the legislation be used as a vehicle for gun
> control. Consequently the Administrator has no authority to
> regulate ammunition as an unreasonable risk because it
> injures people when fired from a gun. However, the
> Committee does not exclude from regulation under the bill
> chemical components of ammunition which could be
> hazardous because of their chemical properties.

H. Rep. No. 94-1341, at 10 (1976) (discussed at Br. 24). However, that

language cannot mean what Plaintiffs suggest – that Congress forbade

TSCA regulation of shells and cartridges for the purpose of

accomplishing gun control, yet let the same ends be accomplished as

long as EPA names the major components of those articles as the object

of regulation instead. Such an interpretation would allow the exception

to swallow the rule of Section 2602(2)(B)(v). *See Bloate v. United States*,

559 U.S. 196, 210 (2010) (refusing to read exception into statutory

provision that would undermine its basic purpose where that

interpretation "is not justified, much less compelled, by the textual

ambiguities and legislative history").

Even if the Court looks beyond the plain statutory language to

this isolated statement in a House committee report, one need not read

that statement as imposing an absurd gloss on Section 2602(2)(B)(v) as

Plaintiffs do. The Committee is just as likely to have meant that the

statutory exemption for firearms and ammunition should not prevent EPA from regulating processes such as the manufacture of the basic materials of those exempted products, simply because they might later be utilized to make firearms and ammunition. For example, Section 2602(2)(B)(v) did not prevent EPA from granting a petition under TSCA Section 21 to initiate a proceeding for the issuance of a rule to ban lead wheel balancing weights in tires, even though lead is also used as a chemical component of ammunition.[9] On the other hand, there is no doubt that bullets and shot will be incorporated into shells and cartridges, therefore they are subject to the statutory exclusion. That interpretation of the legislative history is much more sensible than inferring that Congress, despite setting out a straightforward exemption of firearms and ammunition from the definition of "chemical substance," somehow meant to allow EPA to regulate or even ban integral components of those items, namely bullets and shot. As this Court has explained, it "must avoid an interpretation that undermines congressional purpose considered as a whole when alternative

[9] *See* Letter from EPA to Ecology Center (Aug. 26, 2009), available at http://www.epa.gov/opptintr/chemtest/pubs/Document.pdf (last visited February 3, 2014).

interpretations consistent with the legislative purpose are available."

*United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002).

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

*/s/ Jennifer S. Neumann*
ROBERT G. DREHER
 Acting Assistant Attorney General

J. DAVID GUNTER II
JUSTIN D. HEMINGER
JENNIFER SCHELLER NEUMANN
 U.S. Department of Justice
 Environment & Natural Res. Div.
 P.O. 7415
 Washington, DC 20044
 (202) 514-2767
 jennifer.neumann@usdoj.gov

February 2014
90-5-1-4-19497

# CERTIFICATE OF COMPLIANCE
## WITH TYPE VOLUME LIMITATION

This brief complies with the type volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. Excepting the portions described in Circuit Rule 32(a)(1), the original brief contained 12,808 words. After substituting citations to the Joint Appendix for the citations to the record in the original brief, this brief contains 12,748 words.

/s/ Jennifer S. Neumann
JENNIFER SCHELLER NEUMANN
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. 7415
Washington, DC 20044
(202) 514-2767
jennifer.neumann@usdoj.gov

# CERTIFICATE OF SERVICE

## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing Response Brief of Federal Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on *February 3, 2014*.

I electronically filed the Final Brief for the Federal Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on *March 27, 2014*.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jennifer S. Neumann*
JENNIFER SCHELLER NEUMANN
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. 7415
Washington, DC 20044
(202) 514-2767
jennifer.neumann@usdoj.gov