# ADDENDUM

# INDEX TO FEDERAL APPELLEES' ADDENDUM

15 U.S.C. § 2602............................................................................ Add. 1

15 U.S.C. § 2603............................................................................ Add. 5

15 U.S.C. § 2605............................................................................ Add. 14

15 U.S.C. § 2620............................................................................ Add. 22

26 U.S.C. § 4181............................................................................ Add. 24

27 C.F.R. § 53.11........................................................................... Add. 25

27 C.F.R. § 53.61........................................................................... Add. 28

27 C.F.R. § 53.91........................................................................... Add. 30

*Walker* Opinion, Case No. 87-3552, Oct. 15, 1990 ......................... Add. 32

▷

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    ❧ Chapter 53. Toxic Substances Control (Refs & Annos)
      ❧ Subchapter I. Control of Toxic Substances (Refs & Annos)
        → → **§ 2602. Definitions**

As used in this chapter:

**(1)** the [FN1] term "Administrator" means the Administrator of the Environmental Protection Agency.

**(2)(A)** Except as provided in subparagraph (B), the term "chemical substance" means any organic or inorganic substance of a particular molecular identity, including--

  **(i)** any combination of such substances occurring in whole or in part as a result of a chemical reaction or occurring in nature and

  **(ii)** any element or uncombined radical.

**(B)** Such term does not include--

  **(i)** any mixture,

  **(ii)** any pesticide (as defined in the Federal Insecticide, Fungicide, and Rodenticide Act) [7 U.S.C.A. § 136 et seq.] when manufactured, processed, or distributed in commerce for use as a pesticide,

  **(iii)** tobacco or any tobacco product,

  **(iv)** any source material, special nuclear material, or byproduct material (as such terms are defined in the Atomic Energy Act of 1954 [42 U.S.C.A. § 2011 et seq.] and regulations issued under such Act),

  **(v)** any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1986 [26 U.S.C.A. 4181] (determined without regard to any exemptions from such tax provided by section

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Add. 01**

4182 or 4221 or any other provision of such code), and

(vi) any food, food additive, drug, cosmetic, or device (as such terms are defined in section 201 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. 321]) when manufactured, processed, or distributed in commerce for use as a food, food additive, drug, cosmetic, or device.

The term "food" as used in clause (vi) of this subparagraph includes poultry and poultry products (as defined in sections 4(e) and 4(f) of the Poultry Products Inspection Act [21 U.S.C. 453(e) and (f) ] ), meat and meat food products (as defined in section 1(j) of the Federal Meat Inspection Act [21 U.S.C. 601(j) ] ), and eggs and egg products (as defined in section 4 of the Egg Products Inspection Act [21 U.S.C. 1033] ).

(3) The term "commerce" means trade, traffic, transportation, or other commerce (A) between a place in a State and any place outside of such State, or (B) which affects trade, traffic, transportation, or commerce described in clause (A).

(4) The terms "distribute in commerce" and "distribution in commerce" when used to describe an action taken with respect to a chemical substance or mixture or article containing a substance or mixture mean to sell, or the sale of, the substance, mixture, or article in commerce; to introduce or deliver for introduction into commerce, or the introduction or delivery for introduction into commerce of, the substance, mixture, or article; or to hold, or the holding of, the substance, mixture, or article after its introduction into commerce.

(5) The term "environment" includes water, air, and land and the interrelationship which exists among and between water, air, and land and all living things.

(6) The term "health and safety study" means any study of any effect of a chemical substance or mixture on health or the environment or on both, including underlying data and epidemiological studies, studies of occupational exposure to a chemical substance or mixture, toxicological, clinical, and ecological studies of a chemical substance or mixture, and any test performed pursuant to this chapter.

(7) The term "manufacture" means to import into the customs territory of the United States (as defined in general note 2 of the Harmonized Tariff Schedule of the United States), produce, or manufacture.

(8) The term "mixture" means any combination of two or more chemical substances if the combination does not occur in nature and is not, in whole or in part, the result of a chemical reaction; except that such term does include any combination which occurs, in whole or in part, as a result of a chemical reaction if none of the chemical substances comprising the combination is a new chemical substance and if the combination could have been manufactured for commercial purposes without a chemical reaction at the time the chemical substances comprising the combination were combined.

(9) The term "new chemical substance" means any chemical substance which is not included in the chemical

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

substance list compiled and published under section 2607(b) of this title.

**(10)** The term "process" means the preparation of a chemical substance or mixture, after its manufacture, for distribution in commerce--

**(A)** in the same form or physical state as, or in a different form or physical state from, that in which it was received by the person so preparing such substance or mixture, or

**(B)** as part of an article containing the chemical substance or mixture.

**(11)** The term "processor" means any person who processes a chemical substance or mixture.

**(12)** The term "standards for the development of test data" means a prescription of--

**(A)** the--

**(i)** health and environmental effects, and

**(ii)** information relating to toxicity, persistence, and other characteristics which affect health and the environment,

for which test data for a chemical substance or mixture are to be developed and any analysis that is to be performed on such data, and

**(B)** to the extent necessary to assure that data respecting such effects and characteristics are reliable and adequate--

**(i)** the manner in which such data are to be developed,

**(ii)** the specification of any test protocol or methodology to be employed in the development of such data, and

**(iii)** such other requirements as are necessary to provide such assurance.

**(13)** The term "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the Canal Zone, American Samoa, the Northern Mariana Islands, or any other territory or possession of the United States.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(14)** The term "United States", when used in the geographic sense, means all of the States.

CREDIT(S)

(Pub.L. 94-469, Title I, § 3, Oct. 11, 1976, 90 Stat. 2004; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; renumbered Title I, Pub.L. 99-519, § 3(c)(1), Oct. 22, 1986, 100 Stat. 2989; amended Pub.L. 100-418, Title I, § 1214(e)(1), Aug. 23, 1988, 102 Stat. 1156.)

[FN1] So in original. Probably should be capitalized.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1976 Acts. Senate Report No. 94-698 and House Conference Report No. 94-1679, see 1976 U.S. Code Cong. and Adm. News, p. 4491.

1986 Acts. House Conference Report No. 99-841 and Statement by President, see 1986 U.S. Code Cong. and Adm. News, p. 4075.

House Report No. 99-763, see 1986 U.S. Code Cong. and Adm. News, p. 5004.

1988 Acts. House Conference Report No. 100-576, see 1988 U.S. Code Cong. and Adm. News, p. 1547.

References in Text

The Federal Insecticide, Fungicide, and Rodenticide Act, referred to in par. (2)(B)(ii), is Act June 25, 1947, c. 125, as amended generally by Pub.L. 92-516, Oct. 21, 1972, 86 Stat. 973, which is classified generally to subchapter II (§ 136 et seq.) of chapter 6 of Title 7, Agriculture. For complete classification of this Act to the Code, see Short Title note set out under section 136 of Title 7 and Tables.

The Atomic Energy Act of 1954, referred to in par. (2)(B)(iv), is Act Aug. 30, 1954, c. 1073, 68 Stat. 919, as amended, which is classified generally to chapter 23 (§ 2011 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 2011 of Title 42 and Tables.

The Harmonized Tariff Schedule of the United States, referred to in par. (7), is not set out in the Code. See Publication of Harmonized Tariff Schedule note set out under section 1202 of Title 19, Customs Duties.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

▷

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    Chapter 53. Toxic Substances Control (Refs & Annos)
      Subchapter I. Control of Toxic Substances (Refs & Annos)
        → → **§ 2603. Testing of chemical substances and mixtures**

(a) Testing requirements

If the Administrator finds that--

**(1)(A)(i)** the manufacture, distribution in commerce, processing, use, or disposal of a chemical substance or mixture, or that any combination of such activities, may present an unreasonable risk of injury to health or the environment,

**(ii)** there are insufficient data and experience upon which the effects of such manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture or of any combination of such activities on health or the environment can reasonably be determined or predicted, and

**(iii)** testing of such substance or mixture with respect to such effects is necessary to develop such data; or

**(B)(i)** a chemical substance or mixture is or will be produced in substantial quantities, and (I) it enters or may reasonably be anticipated to enter the environment in substantial quantities or (II) there is or may be significant or substantial human exposure to such substance or mixture,

**(ii)** there are insufficient data and experience upon which the effects of the manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture or of any combination of such activities on health or the environment can reasonably be determined or predicted, and

**(iii)** testing of such substance or mixture with respect to such effects is necessary to develop such data; and

**(2)** in the case of a mixture, the effects which the mixture's manufacture, distribution in commerce, processing, use, or disposal or any combination of such activities may have on health or the environment may not be reasonably and more efficiently determined or predicted by testing the chemical substances which comprise the mixture;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Administrator shall by rule require that testing be conducted on such substance or mixture to develop data with respect to the health and environmental effects for which there is an insufficiency of data and experience and which are relevant to a determination that the manufacture, distribution in commerce, processing, use, or disposal of such substance or mixture, or that any combination of such activities, does or does not present an unreasonable risk of injury to health or the environment.

(b) Testing requirement rule

(1) A rule under subsection (a) of this section shall include--

(A) identification of the chemical substance or mixture for which testing is required under the rule,

(B) standards for the development of test data for such substance or mixture, and

(C) with respect to chemical substances which are not new chemical substances and to mixtures, a specification of the period (which period may not be of unreasonable duration) within which the persons required to conduct the testing shall submit to the Administrator data developed in accordance with the standards referred to in subparagraph (B).

In determining the standards and period to be included, pursuant to subparagraphs (B) and (C), in a rule under subsection (a) of this section, the Administrator's considerations shall include the relative costs of the various test protocols and methodologies which may be required under the rule and the reasonably foreseeable availability of the facilities and personnel needed to perform the testing required under the rule. Any such rule may require the submission to the Administrator of preliminary data during the period prescribed under subparagraph (C).

(2)(A) The health and environmental effects for which standards for the development of test data may be prescribed include carcinogenesis, mutagenesis, teratogenesis, behavioral disorders, cumulative or synergistic effects, and any other effect which may present an unreasonable risk of injury to health or the environment. The characteristics of chemical substances and mixtures for which such standards may be prescribed include persistence, acute toxicity, subacute toxicity, chronic toxicity, and any other characteristic which may present such a risk. The methodologies that may be prescribed in such standards include epidemiologic studies, serial or hierarchical tests, in vitro tests, and whole animal tests, except that before prescribing epidemiologic studies of employees, the Administrator shall consult with the Director of the National Institute for Occupational Safety and Health.

(B) From time to time, but not less than once each 12 months, the Administrator shall review the adequacy of the standards for development of data prescribed in rules under subsection (a) of this section and shall, if necessary, institute proceedings to make appropriate revisions of such standards.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(3)(A)** A rule under subsection (a) of this section respecting a chemical substance or mixture shall require the persons described in subparagraph (B) to conduct tests and submit data to the Administrator on such substance or mixture, except that the Administrator may permit two or more of such persons to designate one such person or a qualified third party to conduct such tests and submit such data on behalf of the persons making the designation.

**(B)** The following persons shall be required to conduct tests and submit data on a chemical substance or mixture subject to a rule under subsection (a) of this section:

**(i)** Each person who manufactures or intends to manufacture such substance or mixture if the Administrator makes a finding described in subsection (a)(1)(A)(ii) or (a)(1)(B)(ii) of this section with respect to the manufacture of such substance or mixture.

**(ii)** Each person who processes or intends to process such substance or mixture if the Administrator makes a finding described in subsection (a)(1)(A)(ii) or (a)(1)(B)(ii) of this section with respect to the processing of such substance or mixture.

**(iii)** Each person who manufactures or processes or intends to manufacture or process such substance or mixture if the Administrator makes a finding described in subsection (a)(1)(A)(ii) or (a)(1)(B)(ii) of this section with respect to the distribution in commerce, use, or disposal of such substance or mixture.

**(4)** Any rule under subsection (a) of this section requiring the testing of and submission of data for a particular chemical substance or mixture shall expire at the end of the reimbursement period (as defined in subsection (c)(3)(B) of this section) which is applicable to test data for such substance or mixture unless the Administrator repeals the rule before such date; and a rule under subsection (a) of this section requiring the testing of and submission of data for a category of chemical substances or mixtures shall expire with respect to a chemical substance or mixture included in the category at the end of the reimbursement period (as so defined) which is applicable to test data for such substance or mixture unless the Administrator before such date repeals the application of the rule to such substance or mixture or repeals the rule.

**(5)** Rules issued under subsection (a) of this section (and any substantive amendment thereto or repeal thereof) shall be promulgated pursuant to section 553 of Title 5 except that (A) the Administrator shall give interested persons an opportunity for the oral presentation of data, views, or arguments, in addition to an opportunity to make written submissions; (B) a transcript shall be made of any oral presentation; and (C) the Administrator shall make and publish with the rule the findings described in paragraph (1)(A) or (1)(B) of subsection (a) of this section and, in the case of a rule respecting a mixture, the finding described in paragraph (2) of such subsection.

(c) Exemption

**(1)** Any person required by a rule under subsection (a) of this section to conduct tests and submit data on a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

chemical substance or mixture may apply to the Administrator (in such form and manner as the Administrator shall prescribe) for an exemption from such requirement.

(2) If, upon receipt of an application under paragraph (1), the Administrator determines that--

(A) the chemical substance or mixture with respect to which such application was submitted is equivalent to a chemical substance or mixture for which data has been submitted to the Administrator in accordance with a rule under subsection (a) of this section or for which data is being developed pursuant to such a rule, and

(B) submission of data by the applicant on such substance or mixture would be duplicative of data which has been submitted to the Administrator in accordance with such rule or which is being developed pursuant to such rule,

the Administrator shall exempt, in accordance with paragraph (3) or (4), the applicant from conducting tests and submitting data on such substance or mixture under the rule with respect to which such application was submitted.

(3)(A) If the exemption under paragraph (2) of any person from the requirement to conduct tests and submit test data on a chemical substance or mixture is granted on the basis of the existence of previously submitted test data and if such exemption is granted during the reimbursement period for such test data (as prescribed by subparagraph (B) ), then (unless such person and the persons referred to in clauses (i) and (ii) agree on the amount and method of reimbursement) the Administrator shall order the person granted the exemption to provide fair and equitable reimbursement (in an amount determined under rules of the Administrator)--

(i) to the person who previously submitted such test data, for a portion of the costs incurred by such person in complying with the requirement to submit such data, and

(ii) to any other person who has been required under this subparagraph to contribute with respect to such costs, for a portion of the amount such person was required to contribute.

In promulgating rules for the determination of fair and equitable reimbursement to the persons described in clauses (i) and (ii) for costs incurred with respect to a chemical substance or mixture, the Administrator shall, after consultation with the Attorney General and the Federal Trade Commission, consider all relevant factors, including the effect on the competitive position of the person required to provide reimbursement in relation to the person to be reimbursed and the share of the market for such substance or mixture of the person required to provide reimbursement in relation to the share of such market of the persons to be reimbursed. An order under this subparagraph shall, for purposes of judicial review, be considered final agency action.

(B) For purposes of subparagraph (A), the reimbursement period for any test data for a chemical substance or mixture is a period--

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(i)** beginning on the date such data is submitted in accordance with a rule promulgated under subsection (a) of this section, and

**(ii)** ending--

    **(I)** five years after the date referred to in clause (i), or

    **(II)** at the expiration of a period which begins on the date referred to in clause (i) and which is equal to the period which the Administrator determines was necessary to develop such data,

    whichever is later.

**(4)(A)** If the exemption under paragraph (2) of any person from the requirement to conduct tests and submit test data on a chemical substance or mixture is granted on the basis of the fact that test data is being developed by one or more persons pursuant to a rule promulgated under subsection (a) of this section, then (unless such person and the persons referred to in clauses (i) and (ii) agree on the amount and method of reimbursement) the Administrator shall order the person granted the exemption to provide fair and equitable reimbursement (in an amount determined under rules of the Administrator)--

    **(i)** to each such person who is developing such test data, for a portion of the costs incurred by each such person in complying with such rule, and

    **(ii)** to any other person who has been required under this subparagraph to contribute with respect to the costs of complying with such rule, for a portion of the amount such person was required to contribute.

In promulgating rules for the determination of fair and equitable reimbursement to the persons described in clauses (i) and (ii) for costs incurred with respect to a chemical substance or mixture, the Administrator shall, after consultation with the Attorney General and the Federal Trade Commission, consider the factors described in the second sentence of paragraph (3)(A). An order under this subparagraph shall, for purposes of judicial review, be considered final agency action.

**(B)** If any exemption is granted under paragraph (2) on the basis of the fact that one or more persons are developing test data pursuant to a rule promulgated under subsection (a) of this section and if after such exemption is granted the Administrator determines that no such person has complied with such rule, the Administrator shall (i) after providing written notice to the person who holds such exemption and an opportunity for a hearing, by order terminate such exemption, and (ii) notify in writing such person of the requirements of the rule with respect to which such exemption was granted.

**(d) Notice**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Upon the receipt of any test data pursuant to a rule under subsection (a) of this section, the Administrator shall publish a notice of the receipt of such data in the Federal Register within 15 days of its receipt. Subject to section 2613 of this title, each such notice shall (1) identify the chemical substance or mixture for which data have been received; (2) list the uses or intended uses of such substance or mixture and the information required by the applicable standards for the development of test data; and (3) describe the nature of the test data developed. Except as otherwise provided in section 2613 of this title, such data shall be made available by the Administrator for examination by any person.

(e) Priority list

(1)(A) There is established a committee to make recommendations to the Administrator respecting the chemical substances and mixtures to which the Administrator should give priority consideration for the promulgation of a rule under subsection (a) of this section. In making such a recommendation with respect to any chemical substance or mixture, the committee shall consider all relevant factors, including--

(i) the quantities in which the substance or mixture is or will be manufactured,

(ii) the quantities in which the substance or mixture enters or will enter the environment,

(iii) the number of individuals who are or will be exposed to the substance or mixture in their places of employment and the duration of such exposure,

(iv) the extent to which human beings are or will be exposed to the substance or mixture,

(v) the extent to which the substance or mixture is closely related to a chemical substance or mixture which is known to present an unreasonable risk of injury to health or the environment,

(vi) the existence of data concerning the effects of the substance or mixture on health or the environment,

(vii) the extent to which testing of the substance or mixture may result in the development of data upon which the effects of the substance or mixture on health or the environment can reasonably be determined or predicted, and

(viii) the reasonably foreseeable availability of facilities and personnel for performing testing on the substance or mixture.

The recommendations of the committee shall be in the form of a list of chemical substances and mixtures which shall be set forth, either by individual substance or mixture or by groups of substances or mixtures, in the order in which the committee determines the Administrator should take action under subsection (a) of this section with

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

respect to the substances and mixtures. In establishing such list, the committee shall give priority attention to those chemical substances and mixtures which are known to cause or contribute to or which are suspected of causing or contributing to cancer, gene mutations, or birth defects. The committee shall designate chemical substances and mixtures on the list with respect to which the committee determines the Administrator should, within 12 months of the date on which such substances and mixtures are first designated, initiate a proceeding under subsection (a) of this section. The total number of chemical substances and mixtures on the list which are designated under the preceding sentence may not, at any time, exceed 50.

**(B)** As soon as practicable but not later than nine months after January 1, 1977, the committee shall publish in the Federal Register and transmit to the Administrator the list and designations required by subparagraph (A) together with the reasons for the committee's inclusion of each chemical substance or mixture on the list. At least every six months after the date of the transmission to the Administrator of the list pursuant to the preceding [FN1] sentence, the committee shall make such revisions in the list as it determines to be necessary and shall transmit them to the Administrator together with the committee's reasons for the revisions. Upon receipt of any such revision, the Administrator shall publish in the Federal Register the list with such revision, the reasons for such revision, and the designations made under subparagraph (A). The Administrator shall provide reasonable opportunity to any interested person to file with the Administrator written comments on the committee's list, any revision of such list by the committee, and designations made by the committee, and shall make such comments available to the public. Within the 12-month period beginning on the date of the first inclusion on the list of a chemical substance or mixture designated by the committee under subparagraph (A) the Administrator shall with respect to such chemical substance or mixture either initiate a rulemaking proceeding under subsection (a) of this section or if such a proceeding is not initiated within such period, publish in the Federal Register the Administrator's reason for not initiating such a proceeding.

**(2)(A)** The committee established by paragraph (1)(A) shall consist of eight members as follows:

**(i)** One member appointed by the Administrator from the Environmental Protection Agency.

**(ii)** One member appointed by the Secretary of Labor from officers or employees of the Department of Labor engaged in the Secretary's activities under the Occupational Safety and Health Act of 1970 [29 U.S.C.A. § 651 et seq.].

**(iii)** One member appointed by the Chairman of the Council on Environmental Quality from the Council or its officers or employees.

**(iv)** One member appointed by the Director of the National Institute for Occupational Safety and Health from officers or employees of the Institute.

**(v)** One member appointed by the Director of the National Institute of Environmental Health Sciences from officers or employees of the Institute.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(vi)** One member appointed by the Director of the National Cancer Institute from officers or employees of the Institute.

**(vii)** One member appointed by the Director of the National Science Foundation from officers or employees of the Foundation.

**(viii)** One member appointed by the Secretary of Commerce from officers or employees of the Department of Commerce.

**(B)(i)** An appointed member may designate an individual to serve on the committee on the member's behalf. Such a designation may be made only with the approval of the applicable appointing authority and only if the individual is from the entity from which the member was appointed.

**(ii)** No individual may serve as a member of the committee for more than four years in the aggregate. If any member of the committee leaves the entity from which the member was appointed, such member may not continue as a member of the committee, and the member's position shall be considered to be vacant. A vacancy in the committee shall be filled in the same manner in which the original appointment was made.

**(iii)** Initial appointments to the committee shall be made not later than the 60th day after January 1, 1977. Not later than the 90th day after such date the members of the committee shall hold a meeting for the selection of a chairperson from among their number.

**(C)(i)** No member of the committee, or designee of such member, shall accept employment or compensation from any person subject to any requirement of this chapter or of any rule promulgated or order issued thereunder, for a period of at least 12 months after termination of service on the committee.

**(ii)** No person, while serving as a member of the committee, or designee of such member, may own any stocks or bonds, or have any pecuniary interest, of substantial value in any person engaged in the manufacture, processing, or distribution in commerce of any chemical substance or mixture subject to any requirement of this chapter or of any rule promulgated or order issued thereunder.

**(iii)** The Administrator, acting through attorneys of the Environmental Protection Agency, or the Attorney General may bring an action in the appropriate district court of the United States to restrain any violation of this subparagraph.

**(D)** The Administrator shall provide the committee such administrative support services as may be necessary to enable the committee to carry out its function under this subsection.

**(f)** Required actions

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Upon the receipt of--

    **(1)** any test data required to be submitted under this chapter, or

    **(2)** any other information available to the Administrator,

which indicates to the Administrator that there may be a reasonable basis to conclude that a chemical substance or mixture presents or will present a significant risk of serious or widespread harm to human beings from cancer, gene mutations, or birth defects, the Administrator shall, within the 180-day period beginning on the date of the receipt of such data or information, initiate appropriate action under section 2604, 2605, or 2606 of this title to prevent or reduce to a sufficient extent such risk or publish in the Federal Register a finding that such risk is not unreasonable. For good cause shown the Administrator may extend such period for an additional period of not more than 90 days. The Administrator shall publish in the Federal Register notice of any such extension and the reasons therefor. A finding by the Administrator that a risk is not unreasonable shall be considered agency action for purposes of judicial review under chapter 7 of Title 5. This subsection shall not take effect until two years after January 1, 1977.

(g) Petition for standards for the development of test data

A person intending to manufacture or process a chemical substance for which notice is required under section 2604(a) of this title and who is not required under a rule under subsection (a) of this section to conduct tests and submit data on such substance may petition the Administrator to prescribe standards for the development of test data for such substance. The Administrator shall by order either grant or deny any such petition within 60 days of its receipt. If the petition is granted, the Administrator shall prescribe such standards for such substance within 75 days of the date the petition is granted. If the petition is denied, the Administrator shall publish, subject to section 2613 of this title, in the Federal Register the reasons for such denial.

CREDIT(S)

(Pub.L. 94-469, Title I, § 4, Oct. 11, 1976, 90 Stat. 2006; renumbered Title I, Pub.L. 99-519, § 3(c)(1), Oct. 22, 1986, 100 Stat. 2989.)

    [FN1] So in original. Probably should be "preceding".

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1976 Acts. Senate Report No. 94-698 and House Conference Report No. 94-1679, see 1976 U.S. Code Cong. and Adm. News, p. 4491.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

▷

**Effective: September 30, 2012**

United States Code Annotated Currentness
  Title 15. Commerce and Trade
    Chapter 53. Toxic Substances Control (Refs & Annos)
      Subchapter I. Control of Toxic Substances (Refs & Annos)
        → → **§ 2605. Regulation of hazardous chemical substances and mixtures**

(a) Scope of regulation

If the Administrator finds that there is a reasonable basis to conclude that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents or will present an unreasonable risk of injury to health or the environment, the Administrator shall by rule apply one or more of the following requirements to such substance or mixture to the extent necessary to protect adequately against such risk using the least burdensome requirements:

(1) A requirement (A) prohibiting the manufacturing, processing, or distribution in commerce of such substance or mixture, or (B) limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce.

(2) A requirement--

(A) prohibiting the manufacture, processing, or distribution in commerce of such substance or mixture for (i) a particular use or (ii) a particular use in a concentration in excess of a level specified by the Administrator in the rule imposing the requirement, or

(B) limiting the amount of such substance or mixture which may be manufactured, processed, or distributed in commerce for (i) a particular use or (ii) a particular use in a concentration in excess of a level specified by the Administrator in the rule imposing the requirement.

(3) A requirement that such substance or mixture or any article containing such substance or mixture be marked with or accompanied by clear and adequate warnings and instructions with respect to its use, distribution in commerce, or disposal or with respect to any combination of such activities. The form and content of such warnings and instructions shall be prescribed by the Administrator.

(4) A requirement that manufacturers and processors of such substance or mixture make and retain records of the processes used to manufacture or process such substance or mixture and monitor or conduct tests which

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

are reasonable and necessary to assure compliance with the requirements of any rule applicable under this subsection.

**(5)** A requirement prohibiting or otherwise regulating any manner or method of commercial use of such substance or mixture.

**(6)(A)** A requirement prohibiting or otherwise regulating any manner or method of disposal of such substance or mixture, or of any article containing such substance or mixture, by its manufacturer or processor or by any other person who uses, or disposes of, it for commercial purposes.

**(B)** A requirement under subparagraph (A) may not require any person to take any action which would be in violation of any law or requirement of, or in effect for, a State or political subdivision, and shall require each person subject to it to notify each State and political subdivision in which a required disposal may occur of such disposal.

**(7)** A requirement directing manufacturers or processors of such substance or mixture (A) to give notice of such unreasonable risk of injury to distributors in commerce of such substance or mixture and, to the extent reasonably ascertainable, to other persons in possession of such substance or mixture or exposed to such substance or mixture, (B) to give public notice of such risk of injury, and (C) to replace or repurchase such substance or mixture as elected by the person to which the requirement is directed.

Any requirement (or combination of requirements) imposed under this subsection may be limited in application to specified geographic areas.

(b) Quality control

If the Administrator has a reasonable basis to conclude that a particular manufacturer or processor is manufacturing or processing a chemical substance or mixture in a manner which unintentionally causes the chemical substance or mixture to present or which will cause it to present an unreasonable risk of injury to health or the environment--

**(1)** the Administrator may by order require such manufacturer or processor to submit a description of the relevant quality control procedures followed in the manufacturing or processing of such chemical substance or mixture; and

**(2)** if the Administrator determines--

**(A)** that such quality control procedures are inadequate to prevent the chemical substance or mixture from presenting such risk of injury, the Administrator may order the manufacturer or processor to revise such quality control procedures to the extent necessary to remedy such inadequacy; or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(B)** that the use of such quality control procedures has resulted in the distribution in commerce of chemical substances or mixtures which present an unreasonable risk of injury to health or the environment, the Administrator may order the manufacturer or processor to (i) give notice of such risk to processors or distributors in commerce of any such substance or mixture, or to both, and, to the extent reasonably ascertainable, to any other person in possession of or exposed to any such substance, (ii) to give public notice of such risk, and (iii) to provide such replacement or repurchase of any such substance or mixture as is necessary to adequately protect health or the environment.

A determination under subparagraph (A) or (B) of paragraph (2) shall be made on the record after opportunity for hearing in accordance with section 554 of Title 5. Any manufacturer or processor subject to a requirement to replace or repurchase a chemical substance or mixture may elect either to replace or repurchase the substance or mixture and shall take either such action in the manner prescribed by the Administrator.

(c) Promulgation of subsection (a) rules

(1) In promulgating any rule under subsection (a) of this section with respect to a chemical substance or mixture, the Administrator shall consider and publish a statement with respect to--

**(A)** the effects of such substance or mixture on health and the magnitude of the exposure of human beings to such substance or mixture,

**(B)** the effects of such substance or mixture on the environment and the magnitude of the exposure of the environment to such substance or mixture,

**(C)** the benefits of such substance or mixture for various uses and the availability of substitutes for such uses, and

**(D)** the reasonably ascertainable economic consequences of the rule, after consideration of the effect on the national economy, small business, technological innovation, the environment, and public health.

If the Administrator determines that a risk of injury to health or the environment could be eliminated or reduced to a sufficient extent by actions taken under another Federal law (or laws) administered in whole or in part by the Administrator, the Administrator may not promulgate a rule under subsection (a) of this section to protect against such risk of injury unless the Administrator finds, in the Administrator's discretion, that it is in the public interest to protect against such risk under this chapter. In making such a finding the Administrator shall consider (i) all relevant aspects of the risk, as determined by the Administrator in the Administrator's discretion, (ii) a comparison of the estimated costs of complying with actions taken under this chapter and under such law (or laws), and (iii) the relative efficiency of actions under this chapter and under such law (or laws) to protect against such risk of injury.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(2)** When prescribing a rule under subsection (a) the Administrator shall proceed in accordance with section 553 of Title 5 (without regard to any reference in such section to sections 556 and 557 of such title), and shall also (A) publish a notice of proposed rulemaking stating with particularity the reason for the proposed rule; (B) allow interested persons to submit written data, views, and arguments, and make all such submissions publicly available; (C) provide an opportunity for an informal hearing in accordance with paragraph (3); (D) promulgate, if appropriate, a final rule based on the matter in the rulemaking record (as defined in section 2618(a) of this title), and (E) make and publish with the rule the finding described in subsection (a) of this section.

**(3)** Informal hearings required by paragraph (2)(C) shall be conducted by the Administrator in accordance with the following requirements:

  **(A)** Subject to subparagraph (B), an interested person is entitled--

    **(i)** to present such person's position orally or by documentary submissions (or both), and

    **(ii)** if the Administrator determines that there are disputed issues of material fact it is necessary to resolve, to present such rebuttal submissions and to conduct (or have conducted under subparagraph (B)(ii)) such cross-examination of persons as the Administrator determines (I) to be appropriate, and (II) to be required for a full and true disclosure with respect to such issues.

  **(B)** The Administrator may prescribe such rules and make such rulings concerning procedures in such hearings to avoid unnecessary costs or delay. Such rules or rulings may include (i) the imposition of reasonable time limits on each interested person's oral presentations, and (ii) requirements that any cross-examination to which a person may be entitled under subparagraph (A) be conducted by the Administrator on behalf of that person in such manner as the Administrator determines (I) to be appropriate, and (II) to be required for a full and true disclosure with respect to disputed issues of material fact.

  **(C)(i)** Except as provided in clause (ii), if a group of persons each of whom under subparagraphs (A) and (B) would be entitled to conduct (or have conducted) cross-examination and who are determined by the Administrator to have the same or similar interests in the proceeding cannot agree upon a single representative of such interests for purposes of cross-examination, the Administrator may make rules and rulings (I) limiting the representation of such interest for such purposes, and (II) governing the manner in which such cross-examination shall be limited.

  **(ii)** When any person who is a member of a group with respect to which the Administrator has made a determination under clause (i) is unable to agree upon group representation with the other members of the group, then such person shall not be denied under the authority of clause (i) the opportunity to conduct (or have conducted) cross-examination as to issues affecting the person's particular interests if (I) the person satisfies the Administrator that the person has made a reasonable and good faith effort to reach agreement upon group representation with the other members of the group and (II) the Administrator determines that there are substantial and relevant issues which are not adequately presented by the group representative.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(D) A verbatim transcript shall be taken of any oral presentation made, and cross-examination conducted in any informal hearing under this subsection. Such transcript shall be available to the public.

(4)(A) The Administrator may, pursuant to rules prescribed by the Administrator, provide compensation for reasonable attorneys' fees, expert witness fees, and other costs of participating in a rulemaking proceeding for the promulgation of a rule under subsection (a) of this section to any person--

(i) who represents an interest which would substantially contribute to a fair determination of the issues to be resolved in the proceeding, and

(ii) if--

(I) the economic interest of such person is small in comparison to the costs of effective participation in the proceeding by such person, or

(II) such person demonstrates to the satisfaction of the Administrator that such person does not have sufficient resources adequately to participate in the proceeding without compensation under this subparagraph.

In determining for purposes of clause (i) if an interest will substantially contribute to a fair determination of the issues to be resolved in a proceeding, the Administrator shall take into account the number and complexity of such issues and the extent to which representation of such interest will contribute to widespread public participation in the proceeding and representation of a fair balance of interests for the resolution of such issues.

(B) In determining whether compensation should be provided to a person under subparagraph (A) and the amount of such compensation, the Administrator shall take into account the financial burden which will be incurred by such person in participating in the rulemaking proceeding. The Administrator shall take such action as may be necessary to ensure that the aggregate amount of compensation paid under this paragraph in any fiscal year to all persons who, in rulemaking proceedings in which they receive compensation, are persons who either--

(i) would be regulated by the proposed rule, or

(ii) represent persons who would be so regulated,

may not exceed 25 per centum of the aggregate amount paid as compensation under this paragraph to all persons in such fiscal year.

(5) Paragraph (1), (2), (3), and (4) of this subsection apply to the promulgation of a rule repealing, or making a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

substantive amendment to, a rule promulgated under subsection (a) of this section.

(d) Effective date

(1) The Administrator shall specify in any rule under subsection (a) of this section the date on which it shall take effect, which date shall be as soon as feasible.

(2)(A) The Administrator may declare a proposed rule under subsection (a) of this section to be effective upon its publication in the Federal Register and until the effective date of final action taken, in accordance with subparagraph (B), respecting such rule if--

  (i) the Administrator determines that--

    (I) the manufacture, processing, distribution in commerce, use, or disposal of the chemical substance or mixture subject to such proposed rule or any combination of such activities is likely to result in an unreasonable risk of serious or widespread injury to health or the environment before such effective date; and

    (II) making such proposed rule so effective is necessary to protect the public interest; and

  (ii) in the case of a proposed rule to prohibit the manufacture, processing, or distribution of a chemical substance or mixture because of the risk determined under clause (i)(I), a court has in an action under section 2606 of this title granted relief with respect to such risk associated with such substance or mixture.

Such a proposed rule which is made so effective shall not, for purposes of judicial review, be considered final agency action.

(B) If the Administrator makes a proposed rule effective upon its publication in the Federal Register, the Administrator shall, as expeditiously as possible, give interested persons prompt notice of such action, provide reasonable opportunity, in accordance with paragraphs (2) and (3) of subsection (c) of this section, for a hearing on such rule, and either promulgate such rule (as proposed or with modifications) or revoke it; and if such a hearing is requested, the Administrator shall commence the hearing within five days from the date such request is made unless the Administrator and the person making the request agree upon a later date for the hearing to begin, and after the hearing is concluded the Administrator shall, within ten days of the conclusion of the hearing, either promulgate such rule (as proposed or with modifications) or revoke it.

(e) Polychlorinated biphenyls

(1) Within six months after January 1, 1977, the Administrator shall promulgate rules to--

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(A)** prescribe methods for the disposal of polychlorinated biphenyls, and

**(B)** require polychlorinated biphenyls to be marked with clear and adequate warnings, and instructions with respect to their processing, distribution in commerce, use, or disposal or with respect to any combination of such activities.

Requirements prescribed by rules under this paragraph shall be consistent with the requirements of paragraphs (2) and (3).

**(2)(A)** Except as provided under subparagraph (B), effective one year after January 1, 1977, no person may manufacture, process, or distribute in commerce or use any polychlorinated biphenyl in any manner other than in a totally enclosed manner.

**(B)** The Administrator may by rule authorize the manufacture, processing, distribution in commerce or use (or any combination of such activities) of any polychlorinated biphenyl in a manner other than in a totally enclosed manner if the Administrator finds that such manufacture, processing, distribution in commerce, or use (or combination of such activities) will not present an unreasonable risk of injury to health or the environment.

**(C)** For the purposes of this paragraph, the term "totally enclosed manner" means any manner which will ensure that any exposure of human beings or the environment to a polychlorinated biphenyl will be insignificant as determined by the Administrator by rule.

**(3)(A)** Except as provided in subparagraphs (B) and (C)--

**(i)** no person may manufacture any polychlorinated biphenyl after two years after January 1, 1977, and

**(ii)** no person may process or distribute in commerce any polychlorinated biphenyl after two and one-half years after such date.

**(B)** Any person may petition the Administrator for an exemption from the requirements of subparagraph (A), and the Administrator may grant by rule such an exemption if the Administrator finds that--

**(i)** an unreasonable risk of injury to health or environment would not result, and

**(ii)** good faith efforts have been made to develop a chemical substance which does not present an unreasonable risk of injury to health or the environment and which may be substituted for such polychlorinated biphenyl.

An exemption granted under this subparagraph shall be subject to such terms and conditions as the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Administrator may prescribe and shall be in effect for such period (but not more than one year from the date it is granted) as the Administrator may prescribe.

**(C)** Subparagraph (A) shall not apply to the distribution in commerce of any polychlorinated biphenyl if such polychlorinated biphenyl was sold for purposes other than resale before two and one half years after October 11, 1976.

**(D)** Omitted

**(4)** Any rule under paragraph (1), (2)(B), or (3)(B) shall be promulgated in accordance with paragraphs (2), (3), and (4) of subsection (c) of this section.

**(5)** This subsection does not limit the authority of the Administrator, under any other provision of this chapter or any other Federal law, to take action respecting any polychlorinated biphenyl.

(f) Mercury

(1) Prohibition on sale, distribution, or transfer of elemental mercury by Federal agencies

Except as provided in paragraph (2), effective beginning on October 14, 2008, no Federal agency shall convey, sell, or distribute to any other Federal agency, any State or local government agency, or any private individual or entity any elemental mercury under the control or jurisdiction of the Federal agency.

(2) Exceptions

Paragraph (1) shall not apply to--

**(A)** a transfer between Federal agencies of elemental mercury for the sole purpose of facilitating storage of mercury to carry out this chapter; or

**(B)** a conveyance, sale, distribution, or transfer of coal.

(3) Leases of Federal coal

Nothing in this subsection prohibits the leasing of coal.

CREDIT(S)

▷

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
    Title 15. Commerce and Trade
        ⌐▣ Chapter 53. Toxic Substances Control (Refs & Annos)
            ⌐▣ Subchapter I. Control of Toxic Substances (Refs & Annos)
            ➡➡ **§ 2620. Citizens' petitions**

(a) In general

Any person may petition the Administrator to initiate a proceeding for the issuance, amendment, or repeal of a rule under section 2603, 2605, or 2607 of this title or an order under section 2604(e) or 2605(b)(2) of this title.

(b) Procedures

**(1)** Such petition shall be filed in the principal office of the Administrator and shall set forth the facts which it is claimed establish that it is necessary to issue, amend, or repeal a rule under section 2603, 2605, or 2607 of this title or an order under section 2604(e), 2605(b)(1)(A), or 2605(b)(1)(B) of this title.

**(2)** The Administrator may hold a public hearing or may conduct such investigation or proceeding as the Administrator deems appropriate in order to determine whether or not such petition should be granted.

**(3)** Within 90 days after filing of a petition described in paragraph (1), the Administrator shall either grant or deny the petition. If the Administrator grants such petition, the Administrator shall promptly commence an appropriate proceeding in accordance with section 2603, 2604, 2605, or 2607 of this title. If the Administrator denies such petition, the Administrator shall publish in the Federal Register the Administrator's reasons for such denial.

**(4)(A)** If the Administrator denies a petition filed under this section (or if the Administrator fails to grant or deny such petition within the 90-day period) the petitioner may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition. Any such action shall be filed within 60 days after the Administrator's denial of the petition or, if the Administrator fails to grant or deny the petition within 90 days after filing the petition, within 60 days after the expiration of the 90-day period.

**(B)** In an action under subparagraph (A) respecting a petition to initiate a proceeding to issue a rule under section 2603, 2605, or 2607 of this title or an order under section 2604(e) or 2605(b)(2) of this title, the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

petitioner shall be provided an opportunity to have such petition considered by the court in a de novo proceeding. If the petitioner demonstrates to the satisfaction of the court by a preponderance of the evidence that--

    **(i)** in the case of a petition to initiate a proceeding for the issuance of a rule under section 2603 of this title or an order under section 2604(e) of this title--

        **(I)** information available to the Administrator is insufficient to permit a reasoned evaluation of the health and environmental effects of the chemical substance to be subject to such rule or order; and

        **(II)** in the absence of such information, the substance may present an unreasonable risk to health or the environment, or the substance is or will be produced in substantial quantities and it enters or may reasonably be anticipated to enter the environment in substantial quantities or there is or may be significant or substantial human exposure to it; or

    **(ii)** in the case of a petition to initiate a proceeding for the issuance of a rule under section 2605 or 2607 of this title or an order under section 2605(b)(2) of this title, there is a reasonable basis to conclude that the issuance of such a rule or order is necessary to protect health or the environment against an unreasonable risk of injury to health or the environment. [FN1]

the court shall order the Administrator to initiate the action requested by the petitioner. If the court finds that the extent of the risk to health or the environment alleged by the petitioner is less than the extent of risks to health or the environment with respect to which the Administrator is taking action under this chapter and there are insufficient resources available to the Administrator to take the action requested by the petitioner, the court may permit the Administrator to defer initiating the action requested by the petitioner until such time as the court prescribes.

**(C)** The court in issuing any final order in any action brought pursuant to subparagraph (A) may award costs of suit and reasonable fees for attorneys and expert witnesses if the court determines that such an award is appropriate. Any court, in issuing its decision in an action brought to review such an order, may award costs of suit and reasonable fees for attorneys if the court determines that such an award is appropriate.

**(5)** The remedies under this section shall be in addition to, and not in lieu of, other remedies provided by law.

CREDIT(S)

(Pub.L. 94-469, Title I, § 21, Oct. 11, 1976, 90 Stat. 2042; renumbered Title I, Pub.L. 99-519, § 3(c)(1), Oct. 22, 1986, 100 Stat. 2989.)

    [FN1] So in original. The period should probably be a semicolon.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

▷

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 26. Internal Revenue Code (Refs & Annos)
      Subtitle D. Miscellaneous Excise Taxes (Refs & Annos)
         Chapter 32. Manufacturers Excise Taxes (Refs & Annos)
            Subchapter D. Recreational Equipment
               Part III. Firearms
                 → → **§ 4181. Imposition of tax**

There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles a tax equivalent to the specified percent of the price for which so sold:

**Articles taxable at 10 percent--**

    Pistols.

    Revolvers.

**Articles taxable at 11 percent--**

    Firearms (other than pistols and revolvers).

    Shells, and cartridges.

CREDIT(S)

(Aug. 16, 1954, c. 736, 68A Stat. 490.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1954 Acts. House Report No. 1337, Senate Report No. 1622, and Conference Report No. 2543, see 1954 U.S.Code Cong. and Adm.News, pp. 4468, 5127, 5280, respectively.

CROSS REFERENCES

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

C

**Effective: March 31, 2006**

Code of Federal Regulations Currentness
   Title 27. Alcohol, Tobacco Products and
   Firearms
      Chapter I. Alcohol and Tobacco Tax and Trade
      Bureau, Department of the Treasury (Refs &
      Annos)
         Subchapter C. Firearms
            Part 53. Manufacturers Excise Taxes-
            -Firearms and Ammunition (Refs &
            Annos)
               Subpart B. Definitions
→  **§ 53.11 Meaning of terms.**

When used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this section. Words in the plural form shall include the singular, and vice versa, and words importing the masculine gender shall include the feminine. The terms "includes" and "including" do not exclude other things not enumerated which are in the same general class or are otherwise within the scope thereof.

Administrator. The Administrator, Alcohol and Tobacco Tax and Trade Bureau, Department of the Treasury, Washington, DC.

Appropriate TTB officer. An officer or employee of the Alcohol and Tobacco Tax and Trade Bureau (TTB) authorized to perform any functions relating to the administration or enforcement of this part by TTB Order 1135.53, Delegation of the Administrator's Authorities in 27 CFR Part 53, Manufacturers Excise Taxes--Firearms and Ammunition.

Calendar quarter. A period of 3 calendar months ending on March 31, June 30, September 30, or December 31.

Calendar year. The period which begins January 1 and ends on the following December 31.

Chapter 32. For purposes of this part chapter 32 means section 4181, chapter 32, of the Internal Revenue Code of 1986, as amended.

Code. Internal Revenue Code of 1986, as amended.

Electronic fund transfer (EFT). Any transfer of funds effected by a taxpayer's financial institution, either directly or through a correspondent banking relationship, via the Federal Reserve Communications System (FRCS) or Fedwire to the Treasury Account at the Federal Reserve Bank.

Exportation. The severance of an article from the mass of things belonging within the United States with the intention of uniting it with the mass of things belonging within some foreign country or within a possession of the United States.

Exporter. The person named as shipper or consignor in the export bill of lading.

Financial institution. A bank or other financial institution, whether or not a member of the Federal Reserve System, which has access to the Federal Reserve Communications Systems (FRCS) or Fedwire. The "FRCS" or "Fedwire" is a communications network that allows Federal Reserve System member financial institutions to effect a transfer of funds for their customers (or other financial institutions) to the Treasury Account at the Federal Reserve Bank.

Firearms. Any portable weapons, such as rifles, carbines, machine guns, shotguns, or fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive.

Importer. Any person who brings a taxable article

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

into the United States from a source outside the United States, or who withdraws such an article from a customs bonded warehouse for sale or use in the United States. If the nominal importer of a taxable article is not its beneficial owner (for example, the nominal importer is a customs broker engaged by the beneficial owner), the beneficial owner is the "importer" of the article for purposes of chapter 32 of the Code and is liable for tax on his sale or use of the article in the United States. See section 4219 of the Code and 27 CFR 53.121 for the circumstances under which sales by persons other than the manufacturer or importer are subject to the manufacturers excise tax.

Knockdown condition. A taxable article that is unassembled but complete as to all component parts.

Manufacturer. Includes any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article or by combining or assembling two or more articles. The term also includes a "producer" and an "importer." Under certain circumstances, as where a person manufactures or produces a taxable article for another person who furnishes materials under an agreement whereby the person who furnished the materials retains title thereto and to the finished article, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer.

A manufacturer who sells a taxable article in a knockdown condition is liable for the tax as a manufacturer. Whether the person who buys such component parts or accessories and assembles a taxable article from them will be liable for tax as a manufacturer of a taxable article will depend on the relative amount of labor, material, and overhead required to assemble the completed article and on whether the article is assembled for business or personal use.

Person. An individual, trust, estate, partnership, association, company, or corporation. When used in connection with penalties, seizures, and forfeitures, the term includes an officer or employee of a [FN1] partnership, who as an officer, employee or member, is under a duty to perform the act in respect of which the violation occurs.

> [FN1] The official CFR appears to have inadvertently omitted text here. See 60 FR 33665.

Pistols. Small projectile firearms which have a short one-hand stock or butt at an angle to the line of bore and a short barrel or barrels, and which are designed, made, and intended to be aimed and fired from one hand. The term does not include gadget devices, guns altered or converted to resemble pistols, or small portable guns erroneously referred to as pistols, as, for example, Nazi belt buckle pistols, glove pistols, or one-hand stock guns firing fixed shotgun or fixed rifle ammunition.

Possession of the United States. Includes Guam, the Midway Islands, Palmyra, the Panama Canal Zone, the Commonwealth of Puerto Rico, American Samoa, the Virgin Islands, and Wake Island.

Purchaser. Includes a lessee where the lessor is also the manufacturer of the article.

Revolvers. Small projectile firearms of the pistol type, having a breech-loading chambered cylinder so arranged that the cocking of the hammer or movement of the trigger rotates it and brings the next cartridge in line with the barrel for firing.

Sale. An agreement whereby the seller transfers the property (that is, the title or the substantial incidents of ownership in goods) to the buyer for a consideration called the price, which may consist of money, services, or other things.

Secretary. The Secretary of the Treasury or his delegate.

Shells and cartridges. Include any article consisting

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

of a projectile, explosive, and container that is designed, assembled, and ready for use without further manufacture in firearms, pistols or revolvers. A person who reloads used shell or cartridge casings is a manufacturer of shells or cartridges within the meaning of section 4181 if such reloaded shells or cartridges are sold by the reloader. However, the reloader is not a manufacturer of shells or cartridges if, in return for a fee and expenses, he reloads casings of shells or cartridges submitted by a customer and returns the reloaded shells or cartridges with the identical casings provided by the customer to that customer. Under such circumstances, the customer would be the manufacturer of the shells or cartridges and may be liable for tax on the sale of articles. See section 4218 of the Code and § 53.112.

Taxable article. Any article taxable under section 4181 of the Code.

Treasury Account. The Department of Treasury's General Account at the Federal Reserve Bank of New York.

Vendor. Includes a lessor where the lessor is also the manufacturer of the article.

[T.D. ATF–312, 56 FR 31083, July 9, 1991; T.D. ATF–330, 57 FR 40325, Sept. 3, 1992; T.D. ATF–365, 60 FR 33670, June 28, 1995; T.D. ATF–404, 63 FR 52603, Oct. 1, 1998; T.D. ATF–447, 66 FR 19088, April 13, 2001; T.D. TTB–44, 71 FR 16957, April 4, 2006]

SOURCE: 56 FR 303, Jan. 3, 1991; T.D. ATF–365, 60 FR 33670, June 28, 1995; T.D. ATF–487, 68 FR 3747, Jan. 24, 2003; T.D. TTB–62, 72 FR 51711, Sept. 11, 2007, unless otherwise noted.

AUTHORITY: 26 U.S.C. 4181, 4182, 4216–4219, 4221–4223, 4225, 6001, 6011, 6020, 6021, 6061, 6071, 6081, 6091, 6101–6104, 6109, 6151, 6155, 6161, 6301–6303, 6311, 6402, 6404, 6416, 7502, 7805.

27 C. F. R. § 53.11, 27 CFR § 53.11

Current through January 23, 2014; 79 FR 3740

© 2013 Thomson Reuters.
END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

c

**Effective:[See Text Amendments]**

Code of Federal Regulations Currentness
  Title 27. Alcohol, Tobacco Products and Firearms
    Chapter I. Alcohol and Tobacco Tax and Trade Bureau, Department of the Treasury (Refs & Annos)
      Subchapter C. Firearms
        ▫◻ Part 53. Manufacturers Excise Taxes--Firearms and Ammunition (Refs & Annos)
          ▫◻ Subpart G. Tax Rates
            → **§ 53.61 Imposition and rates of tax.**

(a) Imposition of tax. Section 4181 of the Code imposes a tax on the sale of the following articles by the manufacturer, producer, or importer thereof:

  (1) Pistols;

  (2) Revolvers;

  (3) Firearms (other than pistols and revolvers); and

  (4) Shells and cartridges.

(b) Parts or accessories--

  (1) In general. No tax is imposed by section 4181 of the Code on the sale of parts or accessories of firearms, pistols, revolvers, shells, and cartridges when sold separately or when sold with a complete firearm for use as spare parts or accessories. The tax does attach, however, to sales of completed firearms, pistols, revolvers, shells, and cartridges, and to sale of such articles that, although in knockdown condition, are complete as to all component parts.

  (2) Component parts. Component parts are items that would ordinarily be attached to a firearm during use and, in the ordinary course of trade, are packaged with the firearm at the time of sale by the manufacturer or importer. All component parts for firearms are includible in the price for which the article is sold.

  (3) Nontaxable parts. Parts sold with firearms that duplicate component parts that are not includible in the price for which the article is sold.

  (4) Nontaxable accessories. Items that are not designed to be attached to a firearm during use or that are not, in the ordinary course of trade, provided with the firearm at the time of the sale by the manufacturer or importer are not includible in the price for which the article is sold.

  (5) Examples--

  (i) In general. The following examples are provided as guidelines and are not meant to be all inclusive.

  (ii) Component parts. Component parts include items such as a frame or receiver, breech mechanism, trigger mechanism, barrel, buttstock, forestock, handguard, grips, buttplate, fore end cap, trigger guard, sight or set of sights (iron or optical), sight mount or set of sight mounts, a choke, a flash hider, a muzzle brake, a magazine, a set of sling swivels, and/or an attachable ramrod for muzzle loading firearms when provided by the manufacturer or importer for use with the firearm in the ordinary course of commercial trade. Component parts also include any part provided with the firearm that would affect the tax status of the firearm, such as an attachable shoulder stock.

  (iii) Nontaxable parts. Nontaxable parts include items such as extra barrels, extra sights, optical sights and mounts (in addition to iron sights), spare magazines, spare cylinders, extra choke tubes, and spare pins.

  (iv) Nontaxable accessories. Nontaxable accessories include items such as cleaning equipment, slings, slip on recoil pads (in addition to standard buttplate), tools, gun cases for storage or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

transportation, separate items such as knives, belt buckles, or medallions. Nontaxable accessories also include optional items purchased by the customer at the time of retail sale that do not change the tax classification of the firearm, such as telescopic sights and mounts, recoil pads, slings, sling swivels, chokes, and flash hiders/muzzle brakes of a type not provided by the manufacturer or importer of the firearm in the ordinary course of commercial trade.

(c) Rates of tax. Tax is imposed on the sale of the articles specified in section 4181 of the Code at the rates indicated below.

|     |                                              | Percent |
|-----|----------------------------------------------|---------|
| (1) | Pistols                                      | 10      |
| (2) | Revolvers                                    | 10      |
| (3) | Firearms (other than pistols and revolvers)  | 11      |
| (4) | Shells and cartridges                        | 11      |

(d) Computation of tax. The tax is computed by applying to the price for which the article is sold the applicable rate. For definition of the term "price" see section 4216 of the Code and the regulations contained in subpart J of this part.

(e) Liability for tax. The tax imposed by section 4181 of the Code is payable by the manufacturer, producer, or importer making the sale.

[T.D. ATF–404, 63 FR 52603, Oct. 1, 1998]

SOURCE: 56 FR 303, Jan. 3, 1991; T.D. ATF–365, 60 FR 33670, June 28, 1995; T.D. ATF–487, 68 FR 3747, Jan. 24, 2003; T.D. TTB–62, 72 FR 51711, Sept. 11, 2007, unless otherwise noted.

AUTHORITY: 26 U.S.C. 4181, 4182, 4216–4219, 4221 –4223, 4225, 6001, 6011, 6020, 6021, 6061, 6071, 6081 , 6091, 6101–6104, 6109, 6151, 6155, 6161, 6301–6303 , 6311, 6402, 6404, 6416, 7502, 7805.

27 C. F. R. § 53.61, 27 CFR § 53.61

Current through January 23, 2014; 79 FR 3740

© 2013 Thomson Reuters.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

c

**Effective:[See Text Amendments]**

Code of Federal Regulations Currentness
   Title 27. Alcohol, Tobacco Products and Firearms
      Chapter I. Alcohol and Tobacco Tax and Trade Bureau, Department of the Treasury (Refs & Annos)
         Subchapter C. Firearms
            Part 53. Manufacturers Excise Taxes--Firearms and Ammunition (Refs & Annos)
               Subpart J. Special Provisions Applicable to Manufacturers Taxes
                  → **§ 53.91 Charges to be included in sale price.**

(a) In general. The "price" for which an article is sold includes the total consideration paid for the article, whether that consideration is in the form of money, services, or other things. However, for purposes of the taxes imposed under chapter 32 of the Code, certain collateral charges made in connection with the sale of a taxable article must be included in the taxable sale price, whereas others may be excluded. Any charge which is required by a manufacturer, producer, or importer to be paid as a condition of its sale of a taxable article and which is not attributable to an expense falling within one of the exclusions provided in section 4216 of the Code or the regulations thereunder is includable in the taxable sale price. It is immaterial for this purpose that the charge may be paid to a person other than the manufacturer, producer, or importer, or that it may be separately billed to the purchaser as a charge earmarked for expenses incurred or to be incurred in his behalf, such as charges for demonstration or display of the article, for sales promotion programs, or otherwise. With respect to the rules relating to exclusion of charges for local advertising of a manufacturer's products, see

section 4216(e) of the Code and § 53.100. In the case of sales on credit, a carrying, finance, or service charge is excludable from the sale price if it is reasonably related to the costs of carrying the deferred portion of the sale price (such as interest on the deferred portion of the sale price, expenses of bookkeeping necessary to keep the records of such sales, and expenses of correspondence and other communication in connection with collection).

(b) Tools and dies. Separate charges for tools and dies used in the manufacture or production of a taxable article are to be included, in whole or in part, in the sale price on which the tax is based. It is immaterial whether the charges for such items are billed in a lump sum or are amortized or allocated to each of the taxable articles. If, at the termination of a contract to manufacture taxable articles, the tools and dies used in production pass to the purchaser, only the amount of depreciation of the tools and dies incurred in production, computed on a "production output" basis, should be included in the sale price. If the purchaser furnishes the tools and dies, the amount of the cost thereof, to the extent that such cost has been depreciated in the production of the taxable articles (computed on a "production output" basis), shall be included in determining the sale price of the articles for purposes of computing the tax.

(c) Charges for warranty. A charge for a warranty of an article which the manufacturer, producer, or importer requires the purchaser to pay in order to obtain the article shall be included in the sale price of the article on which the tax is computed. On the other hand, a charge for a warranty of a taxable article paid at the purchaser's option shall not be included in the sale price for purposes of computing tax thereon.

(d) Charges for coverings, containers, and packing.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Any charge by the manufacturer, producer, or importer for coverings and containers of whatever nature used to pack an article for shipment shall be included as part of the sale price for the purpose of computing the tax, whether or not the charges are identified as such on the invoice or are billed separately. Even though there is an agreement that the manufacturer, producer, or importer will repay all or a portion of the charge for the coverings or containers upon the return thereof, the full charge nevertheless shall be included in the sale price. It is immaterial whether the charge made at the time of sale is more or less than the actual value of the covering or container. See § 53.173(b)(4) for provisions relating to the claiming of a credit or refund in the case of a price readjustment due to the return or repossession of a covering or container. Packing charges are to be included in the sale price whether the charges cover normal packing or special packing services, such as for extra protection of the article or for odd-lot quantities. This rule shall apply whether the packing services are initiated by the manufacturer, producer, or importer or are furnished at the request of the purchaser and whether the packing is performed by the manufacturer, producer, or importer or by another person at his request. If the purchaser supplies packing materials, the fair market value of such materials must be included in the tax base when computing tax liability on the sale of the article.

(e) Taxable and nontaxable articles sold as a unit. Where a taxable article and a nontaxable article are sold by the manufacturer as a unit, the tax attaches to that portion of the manufacturer's sale price of the unit which is properly allocable to the taxable article. Normally, the taxable portion of such a unit may be determined by applying to the manufacturer's sale price of the unit the ratio which the manufacturer's separate sale price of the taxable article bears to the sum of the sale prices of both the taxable and nontaxable articles, if such articles are sold separately by the manufacturer. Where the articles (or either one of them) are not sold separately by the manufacturer and do not have established sale prices, the taxable portion is to be determined from a comparison of the actual costs of the articles to the manufacturer. Thus, if the cost of the taxable article represents four-fifths of the total cost of the complete unit, the tax applies to four-fifths of the price charged by the manufacturer for the unit.

[56 FR 31083, July 9, 1991]

SOURCE: 56 FR 303, Jan. 3, 1991; T.D. ATF–365, 60 FR 33670, June 28, 1995; T.D. ATF–487, 68 FR 3747, Jan. 24, 2003; T.D. TTB–62, 72 FR 51711, Sept. 11, 2007, unless otherwise noted.

AUTHORITY: 26 U.S.C. 4181, 4182, 4216–4219, 4221–4223, 4225, 6001, 6011, 6020, 6021, 6061, 6071, 6081, 6091, 6101–6104, 6109, 6151, 6155, 6161, 6301–6303, 6311, 6402, 6404, 6416, 7502, 7805.

27 C. F. R. § 53.91, 27 CFR § 53.91

Current through January 23, 2014; 79 FR 3740

© 2013 Thomson Reuters.
END OF DOCUMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

OCT 15 1990

Jesse E. Clark, Clerk
By Deputy: B. Rupords

DR. DAVID G. WALKER,  )
      Plaintiff,  )
  )
v.  )
  )
UNITED STATES ENVIRONMENTAL  )   CIVIL ACTION NO. H-87-3552
PROTECTION AGENCY, LEE M.  )
THOMAS, As Administrator of  )
United States Environmental  )
Protection Agency, and  )
CHARLES L. ELKINS, Director  )
of Office of Toxic Substances  )
of United States  )
Environmental Protection  )
Agency,  )
      Defendants.  )

## MEMORANDUM OPINION

This case is before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiff seeks de novo review of the Environmental Protection Agency's ("EPA") denial of his petition requesting that EPA amend certain regulations. Defendants assert that plaintiff failed to bring this action within the sixty-day time limitation as required by 15 U.S.C. § 2620(b)(4)(A). Alternatively, defendants argue if the Court finds it has jurisdiction, the standard for review is "arbitrary and capricious" and not de novo. The parties have submitted extensive briefs and the motion to dismiss is ripe for decision.

1

The history of this litigation in the administrative agency is undisputed. On March 27, 1987, the EPA received plaintiff's petition requesting that the EPA amend its regulations regarding the definition of toxic chemical polychlorinated biphenyls (PCB). This petition was submitted pursuant to § 2620 of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2620. The EPA denied the petition on June 24, 1987 and published the reasons for the denial in the Federal Register as required by TSCA. Section 2620(b)(4)(A) provides for judicial review of the denial of a petition if an action is commenced within sixty (60) days. It is undisputed that plaintiff did not commence an action for judicial review within sixty days.

Instead, on July 31, 1987, plaintiff attempted to file a second petition seeking the same rule change. By letter dated September 11, 1987, the EPA notified plaintiff of its decision not to accept the petition for consideration. Because the July submission concerned the exact same subject matter as the March petition and sought the exact same action on the part of the EPA, the EPA characterized the July submission as a refiling of the March petition. Plaintiff argues, however, that the July submission was a separate and distinct petition that must be accepted or denied pursuant to § 2620.

TSCA does not contain a definition of "petition." Whether a subsequent submission is sufficiently different from another to qualify as a separate petition rests on the content of

2

each. In making this determination, consideration must be given to the relief sought, the identity of the requesting parties, the temporal relationship between submissions, and the presence of new information. The decision to treat a submission as a petition is within the discretion of the EPA, and 5 U.S.C. § 706, the Administrative Procedure Act, provides that the applicable standard of review of a final agency decision is arbitrary and capricious. The Court may not "substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Plaintiff has failed to provide any basis for a finding that the decision by the EPA not to treat his July submission as a separate petition was arbitrary and capricious. The July submission related to the identical subject matter, the EPA regulations regarding PCB's, and sought identical action on the part of the EPA, an amendment to the definition of toxic chemical PCB. The EPA was well within its discretion in determining that the July submission was not a new petition requiring agency consideration in accordance with § 2620.

The July submission, which was treated as a motion to reconsider the prior agency decision, cannot revive an expired jurisdictional statute of limitations. To hold otherwise would render the statute of limitations meaningless, permitting a plaintiff to circumvent the limitations period by submitting a repetitive request for identical action on an identical issue long after the time period has expired. See Long v. United States

3

**Add. 34**

Department of Defense, 616 F. Supp. 1280 (E.D.N.Y. 1985); Pacyna v. Marsh, 617 F. Supp. 101 (W.D.N.Y. 1984), aff'd 609 F.2d 792 (Fed. Cir. 1986), cert. denied 481 U.S. 1048 (1987).

Having determined that the EPA decision that plaintiff's July submission was not a separate petition should not be disturbed and that the July submission does not renew the running of the sixty-day limitations period, it is clear that the case must be dismissed. "Statutory time limits on petitions for review of agency actions are jurisdictional in nature such that if the challenge is brought after the statutory time limit, we are powerless to review the agency's action." Texas Municipal Power Agency v. EPA, 799 F.2d 173, 174 (5th Cir. 1986). It is undisputed that plaintiff did not file this action within sixty days of the denial of his March petition and, as a result, this Court does not have subject matter jurisdiction. Defendants' motion to dismiss must be granted.

An appropriate order consistent with this memorandum opinion shall be signed this day.

SIGNED this _____ day of October, 1990.

Chief Judge
United States District Court

4

**Add. 35**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

OCT 15 1990

Jesse E. Clark, Clerk
By Deputy: B. Reynolds

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DR. DAVID G. WALKER,          )
          Plaintiff,          )
                              )
v.                            )          CIVIL ACTION NO. H-87-3552
                              )
UNITED STATES ENVIRONMENTAL   )
PROTECTION AGENCY, et al.,    )
          Defendants.         )

## FINAL ORDER

In accordance with the memorandum opinion signed this day, it is hereby

O R D E R E D

that the defendants' motion to dismiss is **GRANTED**.

THIS IS A FINAL ORDER.

SIGNED this _____3rd_____ day of October, 1990.

_____
Chief Judge
United States District Court

**Add. 36**