# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 24, 2014          Decided December 23, 2014

No. 13-5228

TRUMPETER SWAN SOCIETY, ET AL.,
APPELLANTS

v.

ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00929)

———

*William J. Snape, III* argued the cause for appellants. With him on the briefs was *Adam F. Keats*.

*Jennifer S. Neumann*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Robert G. Dreher*, Acting Assistant Attorney General, and *J. David Gunter II* and *Justin D. Heminger*, Attorneys.

*Christopher L. Bell* argued the cause for intervenor-appellees. With him on the brief were *Christopher A. Conte*, *Robert N. Steinwurtzel*, *Michael Steven Snarr*, *Thomas Edward Hogan*, and *Anna M. Seidman*. *Roger R. Martella Jr.* entered an appearance.

2

Before: TATEL, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case, 101 environmental groups, invoking section 21 of the Toxic Substances Control Act (TSCA), which allows "any person" to petition the Environmental Protection Agency for a rulemaking proceeding to regulate "chemical substances" that "present an unreasonable risk of injury to health or the environment," filed a petition with EPA asking it to regulate *spent* lead bullets and shot. EPA rejected the petition as "not . . . cognizable" under section 21 on the grounds that it largely duplicated an earlier petition that two of the 101 groups had filed. EPA went on to explain that, even were it to consider the petition, it would deny it on the merits because another provision of TSCA, section 3(2)(B)(v), exempts cartridges and shells from the definition of "chemical substance." The district court held that EPA had authority to classify the petition as non-cognizable under TSCA and dismissed the complaint. Although we disagree with the district court— nothing in section 21 allowed EPA to dismiss this petition as non-cognizable—we nonetheless affirm because the environmental groups have suggested no way in which EPA could regulate *spent* lead bullets and shot without also regulating cartridges and shells—precisely what section 3(2)(B)(v) prohibits.

**I.**

Concerned that "human beings and the environment are being exposed each year to a large number of chemical substances and mixtures," 15 U.S.C. § 2601(a)(1), Congress enacted TSCA, which authorizes EPA to regulate "chemical substance[s]" that it has a "reasonable basis to

3

conclude . . . present[] or will present an unreasonable risk of injury to health or the environment," *id.* § 2605(a). TSCA includes unusually powerful procedures for citizens to force EPA's hand. Section 21 provides that "[a]ny person" may petition the agency to initiate a rulemaking proceeding, *id.* § 2620(a), and requires that "[s]uch petition shall be filed in the principal office of the Administrator and shall set forth the facts which it is claimed establish that it is necessary to issue . . . a rule," *id.* § 2620(b)(1). The statute requires EPA to grant or deny such a petition within 90 days, and if it denies the petition "the Administrator shall publish in the Federal Register the Administrator's reasons for such denial." *Id.* § 2620(b)(3). In such a case, or if EPA fails to act within 90 days, the petitioner may, within 60 days, "commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." *Id.* § 2620(b)(4)(A). "The petitioner," moreover, is "provided an opportunity to have such petition considered by the court in a de novo proceeding." *Id.* § 2620(b)(4)(B). If the petitioner demonstrates by a preponderance of the evidence that "there is a reasonable basis to conclude that the issuance of such a rule or order is necessary to protect health or the environment against an unreasonable risk of injury," the court "shall order the Administrator to initiate the action requested by the petitioner." *Id.* § 2620(b)(4)(B)(ii).

In 2010, prior to the filing of the petition at issue in this case, five environmental groups petitioned EPA pursuant to TSCA section 21 for a rulemaking to prohibit, among other things, the "manufacture, processing and distribution in commerce of lead shot [and] bullets." Petition to the Environmental Protection Agency to Ban Lead Shot, Bullets, and Fishing Sinkers Under the Toxic Substances Control Act 2 (August 3, 2010) ("2010 Petition"). According to those

4

environmental groups, "spent lead ammunition," *id.*, poses an "ongoing threat of lead poisoning," *id.* at 7. EPA denied that portion of the petition on the ground that "TSCA does not provide the Agency with authority to address lead shot and bullets as requested . . . due to the exclusion found in TSCA § 3(2)(B)(v)." Letter from Stephen A. Owens, Assistant Administrator, U.S. EPA, to Michael Fry, Director of Conservation Advocacy, American Bird Conservancy (August 27, 2010) ("2010 EPA Letter"). That section exempts from the definition of "chemical substance," and therefore from TSCA's scope, "any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code," 15 U.S.C. § 2602(2)(B)(v), which in turn taxes "[s]hells and cartridges," 26 U.S.C. § 4181. As required by section 21, EPA published this ruling in the Federal Register. *See* Notices: Environmental Protection Agency, Lead in Ammunition and Fishing Sinkers; Disposition of TSCA Section 21 Petition, 75 Fed. Reg. 58,377 (Sep. 24, 2010). Three of the environmental groups, seeking de novo review, filed suit in the U.S. District Court for the District of Columbia but not until after 60 days had passed from publication in the Federal Register of EPA's partial denial of their petition. The district court dismissed the complaint for lack of jurisdiction, *Center for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 94 (D.D.C. 2011), and the environmental groups never appealed.

Six months later, two of the environmental groups, now joined by 99 other organizations, submitted the instant petition concerning "*spent* lead ammunition," this time seeking "regulations that adequately protect wildlife, human health and the environment against the unreasonable risk of injury from bullets and shot containing lead used in hunting and shooting sports." Petition to the Environmental Protection Agency to Regulate Lead Bullets and Shot under the Toxic

5

Substances Control Act (March 13, 2012) ("2012 Petition") at 2, 4 (emphasis added). In response, EPA ruled that because two of the groups had been part of the earlier petition and the two petitions were largely redundant, the 2012 petition did not qualify as a "new petition cognizable under section 21." Letter from James J. Jones, Acting Assistant Administrator, U.S. EPA, to Jeff Miller, Center for Biological Diversity 1 (Apr. 9, 2012) ("2012 EPA Letter"). Moreover, EPA explained, "even if the 2012 submission were considered to be a new or different petition cognizable under section 21 of TSCA," EPA "would deny it for the same reasons it denied the [earlier] petition." *Id.* at 2. EPA did not publish this rejection in the Federal Register. *See id.*

Seeking de novo judicial review pursuant to section 21, seven of the 101 environmental groups, only one of which had participated in the 2010 petition, filed suit, arguing that EPA lacked authority to classify their petition as "not . . . a new petition cognizable under section 21." Amended Complaint 1–3. The district court agreed with EPA and dismissed the complaint for lack of jurisdiction. Motion to Dismiss Hearing Tr. 48 (May 23, 2013). According to the district court, the term "petition"—undefined in TSCA—is ambiguous and "EPA's interpretation is persuasive." *Id.* at 63–66. Given this, the district court found it unnecessary to consider whether EPA has statutory authority to regulate bullets and shot. *Id.* at 48.

The environmental groups now appeal, arguing (1) that EPA lacked authority to treat their petition as "not . . . cognizable under section 21" and (2) that TSCA section 3(2)(B)(v) does not prohibit EPA from regulating spent lead bullets and shot. Addressing these issues in turn, "[w]e review *de novo* the District Court's dismissal of claims

6

for want of subject matter jurisdiction . . . ." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014).

## II.

As in so many of our cases, the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), guides our review of EPA's interpretation of TSCA. "If this court ascertains that Congress has directly spoken to the precise question at issue, then both the court and EPA 'must give effect to the unambiguously expressed intent of Congress.'" *Chemical Manufacturers Association v. EPA*, 859 F.2d 977, 984 (1988) (quoting *Chevron,* 467 U.S. at 842–43) (applying *Chevron* framework to EPA's interpretation of TSCA). Only if the statute is ambiguous do we defer to the agency's reasonable construction. *Id.*

Here, unlike the district court, we see nothing ambiguous about TSCA section 21. That provision allows "[a]ny person" to petition the agency for a rulemaking to regulate a toxic substance. 15 U.S.C. § 2620(a). Critically for our purposes, section 21 requires that a petition satisfy only two requirements: that it be filed in EPA's principal office and that it set forth facts establishing the need for the requested rule. *Id.* § 2620(b)(1). Equally critically, section 21 gives EPA only three options: grant the petition, deny the petition, or take no action at all (which has the same effect as a denial). *Id.* § 2620(b)(3)–(4). Nothing in section 21, however, empowers EPA to declare that a petition, which satisfies the two statutory requirements—both of which EPA acknowledges were met here—is nonetheless "not cognizable." Indeed, allowing EPA to do so would permit it to defeat TSCA's unusually powerful citizen-petition procedures. Take this case, for example. Even though TSCA

7

section 21 gives "any person" the right to "petition" the agency to initiate a toxic-substance rulemaking, EPA has denied that right to the dozens of environmental organizations that were not party to the earlier petition. To be sure, EPA went on to reiterate its 2010 ruling that it lacked statutory authority to regulate bullets and shot, but under its view, as well as that of the district court, the environmental groups would be denied the de novo judicial review guaranteed by TSCA. In other words, according to EPA, its determination in this case that it lacks authority to regulate bullets and shot is immune from the de novo judicial review that TSCA guarantees. This is hardly what Congress intended.

Notwithstanding TSCA's clarity, EPA insists that it must be able to declare certain petitions non-cognizable because any other reading of TSCA would "render the 60-day limitations period in Section 21 meaningless." Appellees' Br. 23. Specifically, EPA worries that a contrary reading "would particularly burden EPA and the courts because it would encourage petitioners—whether or not they had sought judicial review of an earlier petition—to file successive petitions in the hopes of obtaining favorable *de novo* review." *Id.* Citing the principle that "[a] statute should be construed so that effect is given to all its provisions," *id.* at 21 (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)), EPA argues that it must have authority to define "petition" as excluding repetitive petitions in order to give effect to the 60-day limit. At oral argument, EPA counsel candidly acknowledged that this is the crux of the agency's position in this case.

We have two reactions to this argument. For one thing, it has no applicability to the 99 organizations that were not parties to the 2010 petition. No one can argue they are "successive petition[ers]." Appellees' Br. 23. To be sure, as EPA counsel implied at oral argument, the two 2010

8

petitioners may well have recruited the 99 additional organizations to file a new petition. But TSCA gives "any person" the right to file a petition, and we see no statutory basis for allowing EPA to declare a petition "not cognizable" simply because the agency suspects it was filed at the suggestion of an earlier petitioner.

EPA, moreover, has all the authority it needs to protect its resources in the face of repeat petitioners. If a party files a second petition similar to an earlier one, EPA can summarily deny it, citing the reasons given in its response to the first petition. Indeed, this approach would have consumed considerably fewer agency resources than the one it chose here: it took EPA two pages to explain its creative rejection of the 2012 petition, but only four sentences to deny the 2010 petition on the merits. Nor, contrary to EPA's argument, would denying it the power to dismiss qualifying petitions as non-cognizable impose any unmanageable burden on the courts. If a court, acting pursuant to section 21's de novo judicial review provisions, affirms EPA's denial of a petition on its merits, that decision would be res judicata in any case brought by the same petitioner raising the same issue. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' th[is] . . . doctrine[] protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979))).  In other words, both EPA and the courts have ample authority to protect their resources without undermining the force of TSCA's citizen-petition provisions.

9

**III.**

This, then, brings us to the merits. In the normal TSCA section 21 case, we would review the administrative record to determine whether the environmental groups had, as they claim, demonstrated by a preponderance of the evidence that "there is a reasonable basis to conclude that the issuance of [the requested rule] is necessary to protect health or the environment against an unreasonable risk of injury . . . ." 15 U.S.C. § 2620(b)(4)(B)(ii). Here, however, we face an antecedent issue. According to EPA, TSCA section 3(2)(B)(v) excludes bullets and shot from the definition of "chemical substance." If this is correct, then we would have no reason to consider whether the environmental groups have satisfied section 21's health or environment standard.

The environmental groups urge us not to resolve this antecedent issue, but rather to "remand[] back to the District Court with instructions to order the agency to comply with TSCA's petition provisions and either grant or deny appellants' petition." Appellants' Br. 26. But the question before us is a legal one, our review is de novo, and both the environmental groups and EPA made clear at oral argument that no additional facts are necessary to resolve the matter. *See Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[D]ecisions on questions of law are reviewable *de novo*.") (internal quotation marks omitted). For reasons of judicial efficiency, therefore, we shall proceed to the merits.

Significantly for the issue before us, the environmental groups seek regulation of *spent* bullets and shot. In their petition, they recount numerous harms resulting from the fact that "*spent* lead ammunition is uncontrolled and lead remains widely encountered and distributed in the environment from

10

hunting and sport shooting sources." 2012 Petition at 2 (emphasis added). They repeat this point throughout the petition. *See, e.g., id.* at 20 ("*Spent* lead shotgun pellets on the ground in fields where upland game birds are hunted are also ingested by birds as grit making herbivorous birds as well as carnivorous birds victims of lead poisoning.") (emphasis added); *id.* at 50 ("The most serious exposure is from accidental ingestion of lead shot pellets or lead bullet fragments in [] meat."). In conclusion, they claim to have "set forth the facts establishing the indisputable toxicity of *spent* lead bullets and shotgun pellets," *id.* at 68 (emphasis added), and argue that these facts "support[] the conclusion that the risk is such that lead shot and bullets should be regulated under the Act," *id.* at 69.

We agree with EPA that it lacks statutory authority to regulate the type of spent bullets and shot identified in the environmental groups' petition. TSCA section 3(2)(B)(v) unambiguously exempts "article[s] the sale of which [are] subject to the tax imposed by section 4181 of the Internal Revenue Code" from the definition of "chemical substance." Section 4181 is equally unambiguous: it taxes "shells and cartridges." TSCA section 3(2)(B)(v) thus exempts "shells and cartridges" from the definition of "chemical substance." Given that bullets and shot can become "*spent*" only if they are first contained in a cartridge or shell and then fired from a weapon, petitioners have identified no way in which EPA could regulate *spent* bullets and shot without also regulating cartridges and shells—precisely what section 3(2)(B)(v) prohibits. This understanding is reinforced by regulations issued pursuant to I.R.C. section 4181, which define "[s]hells and cartridges" as "[i]nclud[ing] any article consisting of a projectile, explosive, and container that is designed, assembled, and ready for use without further manufacture in firearms, pistols or revolvers." 27 C.F.R. § 53.11. Because

11

bullets and shot are "projectiles," and because *spent* bullets and shot must have been included in an "article"—along with an "explosive" and "container"—"designed, assembled, and ready for use without further manufacture," this regulation makes clear that TSCA section 3(2)(B)(v) exempts *spent* bullets and shot from the definition of "chemical substance."

The environmental groups agree that were they seeking to regulate "shells and cartridges, EPA would be justified in claiming that it lacks the authority to regulate such products." Appellants' Br. 23. According to the environmental groups, however, they seek not regulation of shells and cartridges, but rather the "lead *in* bullets and shot." *Id.* Insisting that "[t]his is not mere semantics to skirt the intention of the law," *id.* at 24, they point to legislative history of TSCA stating that section 3(2)(B)(v) "does not exclude from regulation under the bill chemical components of ammunition which could be hazardous because of their chemical properties," *id.* (quoting H.R. Rep. No 94–1341 at 10). But even if TSCA's legislative history were relevant, this argument does not help the environmental groups. No matter how one characterizes their claim—whether as an effort to regulate cartridges and shells (EPA's view) or as an attempt to regulate the lead in bullets and shot (the environmental groups' view)—their petition seeks the regulation of *spent* lead yet suggests no way in which EPA could regulate *spent* lead without also regulating cartridges and shells.

Finally, the environmental groups point out that under the section 4181 regulations "[n]o tax is imposed by section 4181 . . . on the sale of parts or accessories of . . . shells and cartridges *when sold separately* . . . ." 27 C.F.R. § 53.61(b)(1) (emphasis added). But this would help the environmental groups only if their petition had asked EPA for a rulemaking concerning bullets and shot *sold separately*. True, at oral

12

argument, counsel for the environmental groups insisted that "[a]ll we're trying to regulate are bullets sold separately, whether to a hunter or to a manufacturer of cartridges." Oral Argument Rec. at 54:30–:36. But as explained above, *see supra* at pp. 9–10, in their petition the environmental groups focused only on *spent* bullets and shot and, except for one stray and ambiguous reference (on page 54 of a 69-page petition) to "[s]portsmen who reload rifle and pistol ammunition," 2012 Petition at 54, made no reference at all to bullets and shot sold separately. Nor did the environmental groups give any hint in the district court or in their briefs filed here that they were seeking the regulation of separately sold bullets and shot. The argument is thus triply forfeit. *See Nuclear Energy Institute, Inc. v. EPA*, 373 F.3d 1251, 1290 (D.C. Cir. 2004) ("As a general rule, claims not presented to the agency may not be made for the first time to a reviewing court.") (internal quotation marks omitted); *Figueroa v. District of Columbia Metropolitan Police Department*, 633 F.3d 1129, 1133 n.3 (D.C. Cir. 2011) ("Ordinarily, we do not consider arguments raised for the first time on appeal . . . ."); *Ark Las Vegas Restaurant Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (argument cannot be raised for the first time at oral argument).

## IV.

We therefore affirm the district court's dismissal of the complaint.

*So ordered.*