ORAL ARGUMENT HEARD ON OCTOBER 24, 2014

**Case No. 13-5228**

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**TRUMPETER SWAN SOCIETY, et al.**
**Appellants,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, et al.**
**Appellees**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**PETITION FOR PANEL REHEARING**

---

William J. Snape, III
   (DC Bar No. 455266)
CENTER FOR BIOLOGICAL
DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: 202-536-9351
Facsimile: 415-436-9683
billsnape@earthlink.net

Adam F. Keats (CA Bar No. 191157)
CENTER FOR BIOLOGICAL
DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: 415-436-9682 x304
Facsimile: 415-436-9683
akeats@biologicaldiversity.org

Dated: February 5, 2015

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ...................................................................... ii

GLOSSARY............................................................................................. iii

STATEMENT OF BASIS FOR REHEARING ..........................................1

ARGUMENT ...........................................................................................3

   A.  Bullets and Shot May Become "Spent" Without Being Contained in a Cartridge or Shell.................................................................................3

   B.  TSCA's Exemption of Cartridges and Shells Cannot be Read as Necessarily Including Bullets and Shot .....................................................................6

   C.  Internal Revenue Code Section 4181 Does Not Support the Exemption of Bullets and Shot.........................................................................................8

CONCLUSION ........................................................................................9

i

# TABLE OF AUTHORITIES

## CASES

*AFL-CIO v. FEC*, 333 F.3d 168, 172 (D.C. Cir. 2003) ...........................................7

*Hartman v. EBSCO Indus.*, 758 F.3d 810, 813 (7th Cir. 2014)................................3

*Palatka v. Savage Arms, Inc*., 535 Fed. App'x. 448, 450 (6th Cir. 2013)............1, 3

## STATUTES

15 U.S.C. § 2601(b)(2)..................................................................................................7

15 U.S.C. § 2602(2)(B)(v) ......................................................................................1, 6

520 Ill. Comp. Stat. 5/2.25 (2014) ..............................................................................4

Ala. Admin. Code r. 220-2-.01 (2014) ........................................................................4

Alaska Admin. Code tit. 5, §§ 85.010–85.075 (2014)................................................4

Ariz. Admin. Code § R12-4-216 (2014);.....................................................................4

Ark. Code R. 002-00-001 (2015)..................................................................................4

Cal. Code Regs. tit. 14, § 364 (2015); .........................................................................4

2 Colo. Code Regs. § 406-9 (2014) .............................................................................4

Conn. Agencies Regs. § 26-86a-6 (2015) ....................................................................4

7 Del. Admin. Code § 704 (2015).................................................................................4

Fla. Stat. § 379.354 (2014)...........................................................................................4

Ga. Comp. R. & Regs. 391-4-2.27 (2014);..................................................................4

Haw. Code R. § 13-123 ( 2014) ...................................................................................4

Idaho Admin. Code R. 13.01.08.250 (2014) ...............................................................4

Ind. Code § 14-22-12-1 (2014) ....................................................................................4

Internal Revenue Code section 4181 ...........................................................................8

Iowa Code § 483a.7 (2014)...........................................................................................4

Kan. Admin. Regs. § 115-4-13 (2014 ..........................................................................4

301 Ky. Admin. Regs. 2:172 (2015).............................................................................4

La. Rev. Stat. 56:103 (2014).........................................................................................4

321 Mass. Code Regs. § 3.02 (2015) ...........................................................................4

Md. Code Ann., Nat. Res. § 10-420 (2014);................................................................4

Me. Rev. Stat. tit. 12, § 11404 (2014) .........................................................................4

Mich. Comp. Laws § 324.43511 (2014).......................................................................4

Minn. Stat. §97b.311 (2014).........................................................................................4

Miss. Code Ann. § 49-7-31 (2014) ..............................................................................4

Mo. Code Regs. Ann. tit. 3, § 10-7.433 (2014) ...........................................................4

29 N.C. Reg. 1307 (Dec. 1, 2014) ...............................................................................4

N.D. Cent. Code § 20.1-03-11 (2013) ..............................................4

N.H. Code Admin. R. Ann. Fis. 301.03 (2014).................................4

N.J. Admin. Code § 7:25-5.23 (2015) ............................................4

N.M. Code R. § 19.31.15.13 (2014) ..............................................4

N.Y. Envtl. Conserv. Law § 11-0701(9) (Consol. 2014) ...................4

163 Neb. Admin. Code § 4 (2014)...................................................4

Nev. Admin. Code § 503.142 (2014)...............................................4

Ohio Admin. Code 1501:31-15-11 (2015) ......................................4

Okla. Admin. Code § 800:25-7-66 (2015).......................................4

Or. Admin. R. 635-065-0625 (2014) ..............................................4

34 Pa. Cons. Stat. § 2709 (2014 ....................................................4

R.I. Code R. 12-080-005 (2014) ....................................................4

S.C. Code. Ann. § 50-11-310 (2014);.............................................4

S.D. Admin. R. 41:06:45:04 (2014);...............................................4

Tenn. Code Ann. § 70-2-201 (2014)...............................................4

Tex. Admin. Code § 65.11 (2014) ..................................................4

Utah Admin. Code § R657-5-10(1) (2014) ......................................5

Utah Code Ann. § 23-19-17.5 (2014) .............................................4

Va. Code Ann. § 29.1-307 (2014)...................................................4

Vt. Stat. Ann. tit. 10, § 37 (2014) ...................................................4

W. Va. Code § 20-2-42r (2014) .....................................................4

Wash. Admin. Code § 232-28-273 (2014);......................................4

Wis. Admin. Code NR § 10-01 (2014);............................................4

040-040-005 Wyo. Code R. § 32 (2014) .........................................4

## RULES

Circuit Rule 35(a).........................................................................1

Federal Rules of Appellate Procedure 40(a)(1)(B),.........................1

## REGULATIONS

27 C.F.R. § 53.11 ....................................................................8, 9

## <u>GLOSSARY</u>

EPA        Environmental Protection Agency

TSCA      Toxic Substances Control Act

## STATEMENT OF BASIS FOR REHEARING

Petitioners Trumpeter Swan Society, *et al*. respectfully petition this Court for a panel rehearing on the merits.[1]  Petitioners seek a panel rehearing because the Court's decision is based upon and inextricably intertwined with a misapprehension of fact. As stated in the Opinion, the Court concluded as follows:

> Given that bullets and shot can become "*spent*" only if they are first contained in a cartridge or shell and then fired from a weapon, petitioners have identified no way in which EPA could regulate spent bullets and shot without also regulating cartridges and shells—precisely what section 3(2)(B)(v) prohibits.

*Trumpeter Swan Society v. Environmental Protection Agency*, 2014 U.S. App. LEXIS 24254 at p. 10 ("Opinion"; emphasis in original).

In fact, bullets and shot can indeed become "spent" without ever being contained in a cartridge or shell.  For example, "muzzleloader" rifles and pistols are weapons in common use today that fire bullets and shot (and thus deposit "spent" bullets and shells in the environment) without the use of cartridges or shells.  *Palatka v. Savage Arms, Inc*., 535 Fed. Appx. 448, 450 (6th Cir. 2013); *see infra* Section C.  The mistake is material, as it forms the basis for the Court's reasoning that the plain language of section 3(2)(B)(v) of the TSCA must be read to apply to bullets and shot.  Opinion at pp. 10–11; 15 U.S.C. § 2602(2)(B)(v) ("TSCA section 3(2)(B)(v)").

Because bullets and shot may in fact become spent and deposited in the environment without ever being contained in cartridges or shells, TSCA's exemption of cartridges and shells must be read as limited to cartridges and shells

---

[1] This Petition is timely pursuant to Circuit Rule 35(a) and Federal Rules of Appellate Procedure 40(a)(1)(B), as Judgment was entered on December 23, 2014, and the Defendant is a United States Agency.

only, and not to bullets and shot as well.  Pursuant to Federal Rules of Appellate Procedure 40, because the Court overlooked and misapprehended facts material to its decision, this petition for rehearing should be granted.  The Court's Opinion should be amended and Petitioners should prevail.

<u>**ARGUMENT**</u>

**A.  Bullets and Shot May Become "Spent" Without Being Contained in a Cartridge or Shell**

Bullets and shot may become "spent" and deposited in the environment without being contained in a cartridge or shell.  Stating otherwise overlooks and misapprehends the technology employed in the commonly-used muzzleloading firearm, which "does not fire the self-contained, pre-loaded cartridges used in modern firearms.  Instead, both the projectile and the expelling charge are manually loaded into the firearm through the open end of the barrel prior to firing."  *Palatka v. Savage Arms, Inc*., 535 Fed. App'x. 448, 450 (6th Cir. 2013); *see What is a Muzzleloader?*, Muzzle-loaders.com (last visited Feb. 4, 2015), http://perma.cc/WSH2-82X2 (permalink to http://www.muzzle-loaders.com/articles/what-is-a-muzzleloader.php).  A decision by the 7th Circuit provides a drawing of a muzzleloader, showing that no cartridge is used to fire the bullet:



*Hartman v. EBSCO Indus*., 758 F.3d 810, 813 (7th Cir. 2014).

Muzzleloaders are widely used, especially by hunters; 49 states have specific seasons for muzzleloader hunting, and most states define muzzleloaders in similar ways.[2]  For example, Connecticut defines muzzleloader as "a rifle or shotgun of at least forty-five caliber, *incapable of firing a self-contained cartridge*, which uses powder, a projectile... and wadding loaded separately at the muzzle end…" Conn. Agencies Regs. § 26-86a-6 (2015) (emphasis added).  Utah similarly defines muzzleloaders permitted for hunting big game as:

> …(a) can be loaded only from the muzzle; …(c) has a single barrel; (d) has a minimum barrel length of 18 inches; (e) is capable of being fired only once without reloading; (f) powder and bullet, or powder,

[2] *See* Ala. Admin. Code r. 220-2-.01 (2014); Alaska Admin. Code tit. 5, §§ 85.010–85.075 (2014); Ariz. Admin. Code § R12-4-216 (2014); Ark. Code R. 002-00-001 (2015); Cal. Code Regs. tit. 14, § 364 (2015); 2 Colo. Code Regs. § 406-9 (2014); Conn. Agencies Regs. § 26-86a-6 (2015); 7 Del. Admin. Code § 704 (2015); Fla. Stat. § 379.354 (2014); Ga. Comp. R. & Regs. 391-4-2.27 (2014); Haw. Code R. § 13-123 ( 2014); Idaho Admin. Code R. 13.01.08.250 (2014); 520 Ill. Comp. Stat. 5/2.25 (2014); Ind. Code § 14-22-12-1 (2014); Iowa Code § 483a.7 (2014); Kan. Admin. Regs. § 115-4-13 (2014); 301 Ky. Admin. Regs. 2:172 (2015); La. Rev. Stat. 56:103 (2014); Me. Rev. Stat. tit. 12, § 11404 (2014); Md. Code Ann., Nat. Res. § 10-420 (2014); 321 Mass. Code Regs. § 3.02 (2015); Mich. Comp. Laws § 324.43511 (2014); Minn. Stat. §97b.311 (2014); Miss. Code Ann. § 49-7-31 (2014); Mo. Code Regs. Ann. tit. 3, § 10-7.433 (2014); 163 Neb. Admin. Code § 4 (2014); Nev. Admin. Code § 503.142 (2014); N.H. Code Admin. R. Ann. Fis. 301.03 (2014); N.J. Admin. Code § 7:25-5.23 (2015); N.M. Code R. § 19.31.15.13 (2014); N.Y. Envtl. Conserv. Law § 11-0701(9) (Consol. 2014); 29 N.C. Reg. 1307 (Dec. 1, 2014); N.D. Cent. Code § 20.1-03-11 (2013); Ohio Admin. Code 1501:31-15-11 (2015); Okla. Admin. Code § 800:25-7-66 (2015); Or. Admin. R. 635-065-0625 (2014); 34 Pa. Cons. Stat. § 2709 (2014); R.I. Code R. 12-080-005 (2014); S.C. Code. Ann. § 50-11-310 (2014); S.D. Admin. R. 41:06:45:04 (2014); Tenn. Code Ann. § 70-2-201 (2014); Tex. Admin. Code § 65.11 (2014); Utah Code Ann. § 23-19-17.5 (2014); Vt. Stat. Ann. tit. 10, § 37 (2014); Va. Code Ann. § 29.1-307 (2014); Wash. Admin. Code § 232-28-273 (2014); W. Va. Code § 20-2-42r (2014); Wis. Admin. Code NR § 10-01 (2014); 040-040-005 Wyo. Code R. § 32 (2014).

sabot and bullet are not bonded together as one unit for loading; (g) is loaded with black powder or black powder substitute, which must not contain smokeless powder.

Utah Admin. Code § R657-5-10(1) (2014).

The assertion that bullets and shot are always contained in cartridges or shells before being shot from firearms was made by Intervenor-Appellees in their brief before this Court: "CBD is concerned with lead bullets and shot precisely because of their use in cartridges and shells (i.e., bullets and shot have no function other than their use in cartridges and shells)."  Final Joint Brief of Intervenor-Appellees at p. 24-25.  But the assertion was made in the context of an attack on Appellants' position and not as a statement of fact; no authority was cited, provided, or referenced by Intervenor-Appellees.  Appellants did not correct the assertion in their Reply because it was wholly unsupported by Intervenor-Appellees, the quoted language from the Petition said nothing of bullets and shot being functionless without cartridges and shells, and the assertion did not appear relevant to the legal issues of this appeal.  EPA did not make this assertion in its brief.  The assertion was raised again during oral argument, in the form of a question asked several times by the Court.  Counsel for Appellants answered these questions in contradictory ways, at first agreeing with the assertion and later disagreeing, and the question was not asked of other counsel.

Whether the source of the error was Intevenor-Appellees' argument in their brief or Appellants' counsel's contradictory answers does not matter; either or both appear to have led to the Court's factual error in the Opinion.  Because that factual error forms the basis of this Court's analysis and Opinion, the Opinion should be revised.

**B.    TSCA's Exemption of Cartridges and Shells Cannot be Read as Necessarily Including Bullets and Shot**

The Court's interpretation of TSCA rests on the misapprehended fact that bullets and shot must be contained in cartridges and shells if they are to become spent and deposited in the environment.  Opinion at pp. 10-11.  The Court reasoned that because spent bullets and shot must first be contained in cartridges and shells, any regulation of spent bullets and shot necessarily requires the regulation of cartridges and shells, too.  And because TSCA prohibits the regulation of cartridges and shells, the statute must be read to prohibit the regulation of bullets and shot.  *Id.*

In fact, the opposite is true: because spent bullets and shot can be (and are) deposited in the environment without first being contained in a cartridge or a shell, the regulation of spent bullets and shot does not require the regulation of cartridges and shells.  Because TSCA prohibits the regulation of cartridges and shells *only*, while saying nothing about spent bullets and shot, there is no basis to conclude that the statute prohibits the regulation of spent bullets and shot.  15 U.S.C. § 2602(2)(B)(v).

The Court stated that "petitioners have identified no way in which EPA could regulate *spent* bullets and shot without also regulating cartridges and shells—precisely what section 3(2)(B)(v) prohibits."  Opinion at p. 10 (italics in original).  But because some spent bullets and shot are deposited in the environment without ever being contained in a cartridge or shell, EPA clearly *can* regulate bullets and shells without also regulating cartridges and shells.  This plain fact makes clear the plain meaning of the statute: the statute prohibits the regulation of cartridges and shells only, not bullets and shot.  15 U.S.C. § 2602(2)(B)(v).

The Court's dismissal of the legislative history of TSCA was similarly based on its misapprehension of fact regarding bullets and shot, on the one hand, and cartridges and shells on the other. *See* Opinion at p. 11. The Court stated that "even if TSCA's legislative history were relevant, this argument does not help the environmental groups… [T]heir petition seeks the regulation of *spent* lead yet suggests no way in which EPA could regulate *spent* lead without also regulating cartridges and shells." Opinion at p. 11 (italics in original). As stated above, EPA clearly *can* regulate spent lead without also regulating cartridges and shells, since bullets and shot do not need to be contained in cartridges or shells to become spent. The legislative history cited by Appellants clearly supports their argument and should be considered by the Court in determining the plain meaning of TSCA. *AFL-CIO v. FEC*, 333 F.3d 168, 172 (D.C. Cir. 2003) (legislative history is a traditional tool of statutory construction used during step one of a *Chevron* analysis).

This does not mean, however, that spent bullets and shot that are first contained in cartridges or shells should be exempt from TSCA, while bullets and shot that are *not* first contained in cartridges or shells may be regulated. There is nothing in the statute or any associated regulation that suggests that *some* spent bullets and shot deposited in the environment should be subject to TSCA while others are not. Such a distinction would be contrary to the very purpose of TSCA (15 U.S.C. § 2601(b)(2) ["adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment, and to take action with respect to chemical substances and mixtures which are imminent hazards;]), and would require a contorted interpretation of the intent behind the statute's exemption for cartridges and shells.

If TSCA was truly drafted with the intent to protect "traditional ammunition" from regulation, as was argued by the Intervenor-Appellees (*see*

Final Joint Brief of Intervenor-Appellees at p. 35 ("…CBD seeks to force EPA to use TSCA to ban domestically-manufactured traditional ammunition – precisely the outcome Congress intended to prohibit."), why would it protect only some spent bullets and shot, but not others, including those spent bullets and shot used in the most "traditional" of firearms – muzzle-loaders? Such an interpretation defies the plain meaning of the statute.

## C.    Internal Revenue Code Section 4181 Does Not Support the Exemption of Bullets and Shot

The Court cited to regulations issued pursuant to Internal Revenue Code section 4181 for support of its conclusion that TSCA necessarily exempts spent bullets and shot, but this argument was also based on the misapprehension of fact that spent bullets and shot must have been contained in a cartridge or shell before becoming spent. Opinion at pp. 10-11. The regulation defines shells and cartridges as "any article consisting of a projectile, explosive, and container…" 27 C.F.R. § 53.11. The Court concluded that:

> Because bullets and shot are "projectiles," and because *spent* bullets and shot must have been included in an "article"—along with an "explosive" and "container"— … this regulation makes clear that TSCA section 3(2)(B)(v) exempts *spent* bullets and shot from the definition of "chemical substance."

Opinion at pp. 10–11 (italics in original).

Again, because bullets and shot clearly do not have to be included in an "article" in order to be spent and deposited in the environment by means of a firearm, the regulation does not support an interpretation of TSCA that exempts bullets and shot. By definition, the "article" is a "shell" or "cartridge" *only* if it contains each of these three things: a "projectile," an "explosive," and a "container." Clearly, no one would argue that TSCA exempts all containers and

all explosives because containers and explosives are two elements among the three that make up cartridges and shells. For the same reason, TSCA cannot be interpreted to exempt all projectiles – i.e., bullets and shot – simply because projectiles are one element of the three that together constitute cartridges and shells. In sum, Section 53.11 does not change the conclusion that the exemption should be read plainly as applying only to cartridges and shells, not their individual component parts. 27 C.F.R. § 53.11.

## CONCLUSION

The Court based its Opinion on the misapprehended fact that bullets and shot can become spent only if they are first contained in cartridges or shells. Because bullets and shot can and do in fact become spent without having first been contained in cartridges and shells, the Opinion's conclusion that spent bullets and shot are necessarily exempt from TSCA is without support. In fact, the opposite is true: because some bullets and shot can and do become spent without ever having been contained in cartridges and shells, TSCA's exemption for cartridges and shells should not be read so broadly to include bullets and shot. Had Congress intended to exempt bullets and shot from TSCA it would have included such an exemption in the language of the statute; exempting cartridges and shells does not suffice.

For all the foregoing reasons, Petitioners respectfully ask that the Court revise its opinion as requested above and find in favor of Petitioners on the merits of their Petition.

RESPECTFULLY SUBMITTED,

DATED: February 5, 2015        BY: __/s/_____
                                    Adam Keats
                                    Attorney for Appellants

# ADDENDUM


-- Panel Opinion

-- Certificate of Parties

-- Disclosure Statement

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

--------

Argued October 24, 2014          Decided December 23, 2014

No. 13-5228

TRUMPETER SWAN SOCIETY, ET AL.,
APPELLANTS

v.

ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
APPELLEES

--------

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00929)

--------

*William J. Snape*, *III* argued the cause for appellants. With him on the briefs was *Adam F. Keats*.

*Jennifer S. Neumann*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Robert G. Dreher*, Acting Assistant Attorney General, and *J. David Gunter II* and *Justin D. Heminger*, Attorneys.

*Christopher L. Bell* argued the cause for intervenor-appellees. With him on the brief were *Christopher A. Conte*, *Robert N. Steinwurtzel*, *Michael Steven Snarr*, *Thomas Edward Hogan*, and *Anna M. Seidman*. *Roger R. Martella Jr.* entered an appearance.

2

Before: TATEL, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case, 101 environmental groups, invoking section 21 of the Toxic Substances Control Act (TSCA), which allows "any person" to petition the Environmental Protection Agency for a rulemaking proceeding to regulate "chemical substances" that "present an unreasonable risk of injury to health or the environment," filed a petition with EPA asking it to regulate *spent* lead bullets and shot. EPA rejected the petition as "not . . . cognizable" under section 21 on the grounds that it largely duplicated an earlier petition that two of the 101 groups had filed. EPA went on to explain that, even were it to consider the petition, it would deny it on the merits because another provision of TSCA, section 3(2)(B)(v), exempts cartridges and shells from the definition of "chemical substance." The district court held that EPA had authority to classify the petition as non-cognizable under TSCA and dismissed the complaint. Although we disagree with the district court— nothing in section 21 allowed EPA to dismiss this petition as non-cognizable—we nonetheless affirm because the environmental groups have suggested no way in which EPA could regulate *spent* lead bullets and shot without also regulating cartridges and shells—precisely what section 3(2)(B)(v) prohibits.

## I.

Concerned that "human beings and the environment are being exposed each year to a large number of chemical substances and mixtures," 15 U.S.C. § 2601(a)(1), Congress enacted TSCA, which authorizes EPA to regulate "chemical substance[s]" that it has a "reasonable basis to

3

conclude . . . present[] or will present an unreasonable risk of injury to health or the environment," *id.* § 2605(a). TSCA includes unusually powerful procedures for citizens to force EPA's hand. Section 21 provides that "[a]ny person" may petition the agency to initiate a rulemaking proceeding, *id.* § 2620(a), and requires that "[s]uch petition shall be filed in the principal office of the Administrator and shall set forth the facts which it is claimed establish that it is necessary to issue . . . a rule," *id.* § 2620(b)(1). The statute requires EPA to grant or deny such a petition within 90 days, and if it denies the petition "the Administrator shall publish in the Federal Register the Administrator's reasons for such denial." *Id.* § 2620(b)(3). In such a case, or if EPA fails to act within 90 days, the petitioner may, within 60 days, "commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." *Id.* § 2620(b)(4)(A). "The petitioner," moreover, is "provided an opportunity to have such petition considered by the court in a de novo proceeding." *Id.* § 2620(b)(4)(B). If the petitioner demonstrates by a preponderance of the evidence that "there is a reasonable basis to conclude that the issuance of such a rule or order is necessary to protect health or the environment against an unreasonable risk of injury," the court "shall order the Administrator to initiate the action requested by the petitioner." *Id.* § 2620(b)(4)(B)(ii).

In 2010, prior to the filing of the petition at issue in this case, five environmental groups petitioned EPA pursuant to TSCA section 21 for a rulemaking to prohibit, among other things, the "manufacture, processing and distribution in commerce of lead shot [and] bullets." Petition to the Environmental Protection Agency to Ban Lead Shot, Bullets, and Fishing Sinkers Under the Toxic Substances Control Act 2 (August 3, 2010) ("2010 Petition"). According to those

4

environmental groups, "spent lead ammunition," *id.*, poses an "ongoing threat of lead poisoning," *id.* at 7. EPA denied that portion of the petition on the ground that "TSCA does not provide the Agency with authority to address lead shot and bullets as requested . . . due to the exclusion found in TSCA § 3(2)(B)(v)." Letter from Stephen A. Owens, Assistant Administrator, U.S. EPA, to Michael Fry, Director of Conservation Advocacy, American Bird Conservancy (August 27, 2010) ("2010 EPA Letter"). That section exempts from the definition of "chemical substance," and therefore from TSCA's scope, "any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code," 15 U.S.C. § 2602(2)(B)(v), which in turn taxes "[s]hells and cartridges," 26 U.S.C. § 4181. As required by section 21, EPA published this ruling in the Federal Register. *See* Notices: Environmental Protection Agency, Lead in Ammunition and Fishing Sinkers; Disposition of TSCA Section 21 Petition, 75 Fed. Reg. 58,377 (Sep. 24, 2010). Three of the environmental groups, seeking de novo review, filed suit in the U.S. District Court for the District of Columbia but not until after 60 days had passed from publication in the Federal Register of EPA's partial denial of their petition. The district court dismissed the complaint for lack of jurisdiction, *Center for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 94 (D.D.C. 2011), and the environmental groups never appealed.

Six months later, two of the environmental groups, now joined by 99 other organizations, submitted the instant petition concerning "*spent* lead ammunition," this time seeking "regulations that adequately protect wildlife, human health and the environment against the unreasonable risk of injury from bullets and shot containing lead used in hunting and shooting sports." Petition to the Environmental Protection Agency to Regulate Lead Bullets and Shot under the Toxic

5

Substances Control Act (March 13, 2012) ("2012 Petition") at
2, 4 (emphasis added). In response, EPA ruled that because
two of the groups had been part of the earlier petition and the
two petitions were largely redundant, the 2012 petition did not
qualify as a "new petition cognizable under section 21."
Letter from James J. Jones, Acting Assistant Administrator,
U.S. EPA, to Jeff Miller, Center for Biological Diversity 1
(Apr. 9, 2012) ("2012 EPA Letter"). Moreover, EPA
explained, "even if the 2012 submission were considered to
be a new or different petition cognizable under section 21 of
TSCA," EPA "would deny it for the same reasons it denied
the [earlier] petition." *Id.* at 2. EPA did not publish this
rejection in the Federal Register. *See id.*

Seeking de novo judicial review pursuant to section 21,
seven of the 101 environmental groups, only one of which
had participated in the 2010 petition, filed suit, arguing that
EPA lacked authority to classify their petition as "not . . . a
new petition cognizable under section 21." Amended
Complaint 1–3. The district court agreed with EPA and
dismissed the complaint for lack of jurisdiction. Motion to
Dismiss Hearing Tr. 48 (May 23, 2013). According to the
district court, the term "petition"—undefined in TSCA—is
ambiguous and "EPA's interpretation is persuasive." *Id.* at
63–66. Given this, the district court found it unnecessary to
consider whether EPA has statutory authority to regulate
bullets and shot. *Id.* at 48.

The environmental groups now appeal, arguing (1) that
EPA lacked authority to treat their petition as
"not . . . cognizable under section 21" and (2) that TSCA
section 3(2)(B)(v) does not prohibit EPA from regulating
spent lead bullets and shot. Addressing these issues in turn,
"[w]e review *de novo* the District Court's dismissal of claims

6

for want of subject matter jurisdiction . . . ." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014).

## II.

As in so many of our cases, the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), guides our review of EPA's interpretation of TSCA. "If this court ascertains that Congress has directly spoken to the precise question at issue, then both the court and EPA 'must give effect to the unambiguously expressed intent of Congress.'" *Chemical Manufacturers Association v. EPA*, 859 F.2d 977, 984 (1988) (quoting *Chevron,* 467 U.S. at 842–43) (applying *Chevron* framework to EPA's interpretation of TSCA). Only if the statute is ambiguous do we defer to the agency's reasonable construction. *Id.*

Here, unlike the district court, we see nothing ambiguous about TSCA section 21. That provision allows "[a]ny person" to petition the agency for a rulemaking to regulate a toxic substance. 15 U.S.C. § 2620(a). Critically for our purposes, section 21 requires that a petition satisfy only two requirements: that it be filed in EPA's principal office and that it set forth facts establishing the need for the requested rule. *Id.* § 2620(b)(1). Equally critically, section 21 gives EPA only three options: grant the petition, deny the petition, or take no action at all (which has the same effect as a denial). *Id.* § 2620(b)(3)–(4). Nothing in section 21, however, empowers EPA to declare that a petition, which satisfies the two statutory requirements—both of which EPA acknowledges were met here—is nonetheless "not cognizable." Indeed, allowing EPA to do so would permit it to defeat TSCA's unusually powerful citizen-petition procedures. Take this case, for example. Even though TSCA

7

section 21 gives "any person" the right to "petition" the agency to initiate a toxic-substance rulemaking, EPA has denied that right to the dozens of environmental organizations that were not party to the earlier petition. To be sure, EPA went on to reiterate its 2010 ruling that it lacked statutory authority to regulate bullets and shot, but under its view, as well as that of the district court, the environmental groups would be denied the de novo judicial review guaranteed by TSCA. In other words, according to EPA, its determination in this case that it lacks authority to regulate bullets and shot is immune from the de novo judicial review that TSCA guarantees. This is hardly what Congress intended.

Notwithstanding TSCA's clarity, EPA insists that it must be able to declare certain petitions non-cognizable because any other reading of TSCA would "render the 60-day limitations period in Section 21 meaningless." Appellees' Br. 23. Specifically, EPA worries that a contrary reading "would particularly burden EPA and the courts because it would encourage petitioners—whether or not they had sought judicial review of an earlier petition—to file successive petitions in the hopes of obtaining favorable *de novo* review." *Id.* Citing the principle that "[a] statute should be construed so that effect is given to all its provisions," *id.* at 21 (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)), EPA argues that it must have authority to define "petition" as excluding repetitive petitions in order to give effect to the 60-day limit. At oral argument, EPA counsel candidly acknowledged that this is the crux of the agency's position in this case.

We have two reactions to this argument. For one thing, it has no applicability to the 99 organizations that were not parties to the 2010 petition. No one can argue they are "successive petition[ers]." Appellees' Br. 23. To be sure, as EPA counsel implied at oral argument, the two 2010

8

petitioners may well have recruited the 99 additional organizations to file a new petition. But TSCA gives "any person" the right to file a petition, and we see no statutory basis for allowing EPA to declare a petition "not cognizable" simply because the agency suspects it was filed at the suggestion of an earlier petitioner.

EPA, moreover, has all the authority it needs to protect its resources in the face of repeat petitioners. If a party files a second petition similar to an earlier one, EPA can summarily deny it, citing the reasons given in its response to the first petition. Indeed, this approach would have consumed considerably fewer agency resources than the one it chose here: it took EPA two pages to explain its creative rejection of the 2012 petition, but only four sentences to deny the 2010 petition on the merits. Nor, contrary to EPA's argument, would denying it the power to dismiss qualifying petitions as non-cognizable impose any unmanageable burden on the courts. If a court, acting pursuant to section 21's de novo judicial review provisions, affirms EPA's denial of a petition on its merits, that decision would be res judicata in any case brought by the same petitioner raising the same issue. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' th[is] . . . doctrine[] protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979))).  In other words, both EPA and the courts have ample authority to protect their resources without undermining the force of TSCA's citizen-petition provisions.

9

**III.**

This, then, brings us to the merits. In the normal TSCA section 21 case, we would review the administrative record to determine whether the environmental groups had, as they claim, demonstrated by a preponderance of the evidence that "there is a reasonable basis to conclude that the issuance of [the requested rule] is necessary to protect health or the environment against an unreasonable risk of injury . . . ." 15 U.S.C. § 2620(b)(4)(B)(ii). Here, however, we face an antecedent issue. According to EPA, TSCA section 3(2)(B)(v) excludes bullets and shot from the definition of "chemical substance." If this is correct, then we would have no reason to consider whether the environmental groups have satisfied section 21's health or environment standard.

The environmental groups urge us not to resolve this antecedent issue, but rather to "remand[] back to the District Court with instructions to order the agency to comply with TSCA's petition provisions and either grant or deny appellants' petition." Appellants' Br. 26. But the question before us is a legal one, our review is de novo, and both the environmental groups and EPA made clear at oral argument that no additional facts are necessary to resolve the matter. *See Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[D]ecisions on questions of law are reviewable *de novo*.") (internal quotation marks omitted). For reasons of judicial efficiency, therefore, we shall proceed to the merits.

Significantly for the issue before us, the environmental groups seek regulation of *spent* bullets and shot. In their petition, they recount numerous harms resulting from the fact that "*spent* lead ammunition is uncontrolled and lead remains widely encountered and distributed in the environment from

10

hunting and sport shooting sources." 2012 Petition at 2
(emphasis added). They repeat this point throughout the
petition. *See, e.g., id.* at 20 ("*Spent* lead shotgun pellets on
the ground in fields where upland game birds are hunted are also
ingested by birds as grit making herbivorous birds as well as
carnivorous birds victims of lead poisoning.") (emphasis
added); *id.* at 50 ("The most serious exposure is from
accidental ingestion of lead shot pellets or lead bullet
fragments in [] meat."). In conclusion, they claim to have "set
forth the facts establishing the indisputable toxicity of *spent*
lead bullets and shotgun pellets," *id.* at 68 (emphasis added),
and argue that these facts "support[] the conclusion that the
risk is such that lead shot and bullets should be regulated
under the Act," *id.* at 69.

We agree with EPA that it lacks statutory authority to
regulate the type of spent bullets and shot identified in the
environmental groups' petition. TSCA section 3(2)(B)(v)
unambiguously exempts "article[s] the sale of which [are]
subject to the tax imposed by section 4181 of the Internal
Revenue Code" from the definition of "chemical substance."
Section 4181 is equally unambiguous: it taxes "shells and
cartridges." TSCA section 3(2)(B)(v) thus exempts "shells
and cartridges" from the definition of "chemical substance."
Given that bullets and shot can become "*spent*" only if they
are first contained in a cartridge or shell and then fired from a
weapon, petitioners have identified no way in which EPA
could regulate *spent* bullets and shot without also regulating
cartridges and shells—precisely what section 3(2)(B)(v)
prohibits. This understanding is reinforced by regulations
issued pursuant to I.R.C. section 4181, which define "[s]hells
and cartridges" as "[i]nclud[ing] any article consisting of a
projectile, explosive, and container that is designed,
assembled, and ready for use without further manufacture in
firearms, pistols or revolvers." 27 C.F.R. § 53.11. Because

11

bullets and shot are "projectiles," and because *spent* bullets and shot must have been included in an "article"—along with an "explosive" and "container"—"designed, assembled, and ready for use without further manufacture," this regulation makes clear that TSCA section 3(2)(B)(v) exempts *spent* bullets and shot from the definition of "chemical substance."

The environmental groups agree that were they seeking to regulate "shells and cartridges, EPA would be justified in claiming that it lacks the authority to regulate such products." Appellants' Br. 23. According to the environmental groups, however, they seek not regulation of shells and cartridges, but rather the "lead *in* bullets and shot." *Id.* Insisting that "[t]his is not mere semantics to skirt the intention of the law," *id.* at 24, they point to legislative history of TSCA stating that section 3(2)(B)(v) "does not exclude from regulation under the bill chemical components of ammunition which could be hazardous because of their chemical properties," *id.* (quoting H.R. Rep. No 94–1341 at 10). But even if TSCA's legislative history were relevant, this argument does not help the environmental groups. No matter how one characterizes their claim—whether as an effort to regulate cartridges and shells (EPA's view) or as an attempt to regulate the lead in bullets and shot (the environmental groups' view)—their petition seeks the regulation of *spent* lead yet suggests no way in which EPA could regulate *spent* lead without also regulating cartridges and shells.

Finally, the environmental groups point out that under the section 4181 regulations "[n]o tax is imposed by section 4181 . . . on the sale of parts or accessories of . . . shells and cartridges *when sold separately* . . . ." 27 C.F.R. § 53.61(b)(1) (emphasis added). But this would help the environmental groups only if their petition had asked EPA for a rulemaking concerning bullets and shot *sold separately*. True, at oral

12

argument, counsel for the environmental groups insisted that "[a]ll we're trying to regulate are bullets sold separately, whether to a hunter or to a manufacturer of cartridges." Oral Argument Rec. at 54:30–:36. But as explained above, *see supra* at pp. 9–10, in their petition the environmental groups focused only on *spent* bullets and shot and, except for one stray and ambiguous reference (on page 54 of a 69-page petition) to "[s]portsmen who reload rifle and pistol ammunition," 2012 Petition at 54, made no reference at all to bullets and shot sold separately. Nor did the environmental groups give any hint in the district court or in their briefs filed here that they were seeking the regulation of separately sold bullets and shot. The argument is thus triply forfeit. *See Nuclear Energy Institute, Inc. v. EPA*, 373 F.3d 1251, 1290 (D.C. Cir. 2004) ("As a general rule, claims not presented to the agency may not be made for the first time to a reviewing court.") (internal quotation marks omitted); *Figueroa v. District of Columbia Metropolitan Police Department*, 633 F.3d 1129, 1133 n.3 (D.C. Cir. 2011) ("Ordinarily, we do not consider arguments raised for the first time on appeal . . . ."); *Ark Las Vegas Restaurant Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (argument cannot be raised for the first time at oral argument).

**IV.**

We therefore affirm the district court's dismissal of the complaint.

*So ordered.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Plaintiffs-Appellants hereby certify as follows:

**(A)    Parties, Intervenors, and Amici**

The parties, intervenors, and amici appearing before the District Court and all persons who are parties, intervenors, or amici before this Court are as follows:

Appellants:

Trumpeter Swan Society

Cascades Raptor Center

Center for Biological Diversity

Loon Lake Loon Association

Preserve Our Wildlife Organization

Tennessee Ornithological Society

Western Nebraska Resources Council

Appellees (Defendants):

Environmental Protection Agency

Lisa P. Jackson

Appellees (Intervenors):

National Shooting Sports Foundation, Inc.

Association of Battery Recyclers, Inc.

National Rifle Association of America

Safari Club International

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to D.C. Circuit Rule 26.1, counsel for Plaintiffs-Appellants hereby certify as follows:

Appellant The Trumpeter Swan Society has no parent companies and there are no companies with a 10 percent or greater ownership interest in The Trumpeter Swan Society.  The Trumpeter Swan Society is a 501(c)(3) non-profit corporation founded in 1968 and based in Minnesota that works throughout North America to assure the vitality and welfare of wild Trumpeter swans.

Appellant Cascades Raptor Center has no parent companies and there are no companies with a 10 percent or greater ownership interest in Cascades Raptor Center.  Cascades Raptor Center is a non-profit 501(c)(3) nature center and wildlife hospital based in Oregon, specializing in birds of prey (raptors).

Appellant Center for Biological Diversity has no parent companies and there are no companies with a 10 percent or greater ownership interest in Center for Biological Diversity.  Center for Biological Diversity is a non-profit 501(c)(3) corporation that works throughout the United States and the world to protect endangered species and wild places through science, policy, education, citizen activism, and environmental law.

Appellant Loon Lake Loon Association has no parent companies and there are no companies with a 10 percent or greater ownership interest in Loon Lake

Loon Association.  Loon Lake Loon Association is a non-profit 501(c)(3) corporation dedicated to protecting the common loon and other waterbird species, such as the red-necked grebe, at Loon Lake, Washington.

Appellant Preserve Our Wildlife Organization has no parent companies and there are no companies with a 10 percent or greater ownership interest in Preserve Our Wildlife Organization.  Preserve Our Wildlife Organization is a non-profit unincorporated organization based in Sarasota, Florida, that works toward the protection and preservation of all wildlife species and their habitats through the production and distribution of educational DVDs, articles, and other media and through giving educational presentations throughout the U.S.

Appellant Tennessee Ornithological Society has no parent companies and there are no companies with a 10 percent or greater ownership interest in Tennessee Ornithological Society.  Tennessee Ornithological Society is a 501(c)(3) non-profit organization based in Tennessee that seeks to promote the science of ornithology in Tennessee, to publish the results of its investigations, to advocate for the passage and enforcement of wise and judicious laws for bird protection, and to promote bird study and protection.

Appellant Western Nebraska Resources Council has no parent companies and there are no companies with a 10 percent or greater ownership interest in Western Nebraska Resources Council.  Western Nebraska Resources Council is a

501(c)(3) non-profit organization formed in 1983 that is dedicated to preserving the quality of watersheds and native biomes while maintaining a healthy lifestyle in Western Nebraska.

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2015, I electronically transmitted the documents described below to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants listed below.

**Petition for Rehearing**

**For Appellees Environmental Protection Agency and Lisa P. Jackson:**

Jennifer Scheller Neumann            John David Gunter, II
Jennifer.neumann@usdoj.gov           David.Gunter2@usdoj.gov
efile_app.enrd@usdoj.gov             efile_eds.enrd@usdoj.gov

**For Appellees National Shooting Sports Foundation, Inc.:**

Roger R. Martella, Jr.               Christopher L. Bell
rmartella@sidley.com                 cbell@sidley.com

**For Appellees American Battery Recyclers:**

Michael Steven Snarr                 Robert N. Steinwurtzel
msnarr@bakerlaw.com                  rsteinwurtzel@bakerlaw.com

**For Appellees Safari Club International and National Rifle Association, Inc.**

Anna Margo Seidman
aseidman@safariclub.org


DATED: February 5, 2015            BY:  ___/s/_____

                                        Adam Keats